# 25-263

## In the United States Court of Appeals for the Second Circuit

---

In re: RML, LLC,
*Debtor*.

*(Caption continued on inside cover)*

---

On Appeal from the United States Bankruptcy Court
for the Southern District of New York
Case No. 1:22-bk-10784 (The Hon. David S. Jones)

---

**CORRECTED BRIEF OF AMICUS CURIAE
AMERICAN ASSOCIATION FOR JUSTICE IN SUPPORT OF
APPELLANTS AND REVERSAL**

---

Jeffrey R. White
American Association for Justice
777 6th Street, NW
Washington, DC 20001
(202) 944-2839

Deepak Gupta
Matthew W.H. Wessler
Gregory A. Beck
Gupta Wessler LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
deepak@guptawessler.com

May 27, 2025                    *Counsel for Amicus Curiae*

AGATHA BUITRAGO, ANGELINA RASO, CHERIE A. CRAFT, CYNTHIA FISHER, ANNA MARIE GERKEN, GLENDA T. GIROIR, DOROTHY GOODE-EVANS, VERDA HANEY, ELAINE SCHLECHTER, DIANNE TANTILLO, SUSAN SOARES, ANA DELGADO, REBECCA LATTERELL-RICE, CARMEN ALARCON, HOWARD G. ANDOE, KAREN HOW, MARTHA MCRACKEN KING, LORRAINE PERKINS, ROBYN ROSS, BETTY SCOTT, JOHN WANDSNEIDER, JUDY KAY BELL, CERTAIN POST-BANKRUPTCY TALC CLAIMANTS, RENE FLAGG PEREZ, ILONA KLAR, CYNTHIA LOU SMITHERS, WESLEY REED, SUSAN BETTS, CARLA FORSLUND, MARLANE HEARD, ALEKSANDRA HUXLEY, MARILYN MACRON, LOUISE MILFORD, JOSEPHINE NAVARETTA, MAUREEN SEAL, ANGELINA VESSIA-AYOUBI, SHERI ADAMS, SHERYL DOBBS, CHRISTA RUTH MACHADO, ESTATE REPRESENTATIVE OF ESTATE OF BARBARA J. KERSHNER, CHARLENE RAND, JODY VALLEY,
*Appellants,*

V.

RML, LLC, REVLON GROUP HOLDINGS LLC, ELIZABETH ARDEN USC, LLC, BRANDCO ALMAY 2020 LLC, ELIZABETH ARDEN, INC., BRANDCO CHARLIE 2020 LLC, FD MANAGEMENT, INC., REVLON CONSUMER PRODUCTS LLC, BRANDCO CND 2020 LLC, NORTH AMERICA REVSALE INC, OPP PRODUCTS, INC., ALMAY, INC., BRANDCO CURVE 2020 LLC, RDEN MANAGEMENT, INC., BRANDCO ELIZABETH ARDEN 2020 LLC, ART & SCIENCE, LTD., REALISTIC ROUX PROFESSIONAL PRODUCTS INC., ROUX LABORATORIES, INC., BRANDCO GIORGIO BEVERLY HILLS 2020 LLC, REVLON DEVELOPMENT CORP., ROUX PROPERTIES JACKSONVILLE, LLC, BRANDCO HALSTON 2020 LLC, REVLON GOVERNMENT SALES, INC., SINFULCOLORS INC., BRANDCO JEAN NATE 2020 LLC, REVLON INTERNATIONAL CORPORATION, BARI COSMETICS, LTD., PPI TWO CORPORATION, RIROS GROUP INC., BEAUTYGE BRANDS USA INC., ELIZABETH ARDEN (CANADA) LIMITED, BRANDCO PS 2020 LLC, BRANDCO WHITE SHOULDERS 2020 LLC, REVLON CANADA INC., BEAUTYGE USA, INC., CHARLES REVSON INC., BEAUTYGE II, LLC., CREATIVE NAIL DESIGN, INC., CUTEX, INC., DF ENTERPRISES INC, ELIZABETH ARDEN (FINANCING), INC., ELIZABETH ARDEN INVESTMENTS, LLC, ELIZABETH ARDEN NM, LLC, ELIZABETH ARDEN TRAVEL RETAIL, INC., REVLON PROFESSIONAL HOLDING COMPANY LLC, BRANDCO MITCHUM 2020 LLC, REVLON (PUERTO RICO) INC., RIROS CORPORATION, ELIZABETH ARDEN (UK) LTD., BRANDCO MULTICULTURAL GROUP 2020 LLC,
*Debtors-Appellees.*

# **TABLE OF CONTENTS**

Table of authorities ................................................................. ii

Introduction and summary of argument ................................... 1

Interest of amicus curiae ......................................................... 4

Argument ................................................................................. 5

    I.    A bankruptcy court's discharge of future claims must comport with constitutional minimums ................................. 5

    II.    The bankruptcy court's discharge of the claimants' injury claims failed to comport with due process ............................ 9

        A.    The notice failed to alert the claimants that their future claims would be discharged ............................. 10

        B.    The plan provides no post-bankruptcy mechanism for hearing future claimants ...................................... 15

Conclusion ............................................................................. 18

i

.

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................ 4, 14

*Chemetron Corp. v. Jones,*
72 F.3d 341 (3d Cir. 1995) .......................................................12, 16

*City of New York v. New York, New Haven & Hartford Railroad Co.,*
344 U.S. 293 (1953) ..................................................................... 8

*Dow Chemical Co. v. Stephenson,*
539 U.S. 111 (2003) .................................................................... 14

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,*
747 F.3d 145 (2d Cir. 2014) ................................................... 10, 13

*Fogel v. Zell,*
221 F.3d 955 (7th Cir. 2000) ........................................................17

*Hecht v. United Collection Bureau, Inc.,*
691 F.3d 218 (2d Cir. 2012) .........................................................12

*In re A.H. Robins Co.,*
880 F.2d 694 (4th Cir. 1989) ....................................................... 16

*In re Chateaugay Corp.,*
944 F.2d 997 (2d Cir. 1991) ........................................................ 8

*In re Combustion Engineering, Inc.,*
391 F.3d 190 (3d Cir. 2004) ......................................................... 6

*In re Dow Corning Corp.,*
280 F.3d 648 (6th Cir. 2002) .......................................................15

*In re Drexel Burnham Lambert Group, Inc.,*
960 F.2d 285 (2d Cir. 1992) ........................................................ 16

*In re Energy Future Holdings Corp.,*
949 F.3d 806 (3d Cir. 2020) ...............................................*passim*

*In re Forty-Eight Insulations, Inc.*,
    58 B.R. 476 (Bankr. N.D. Ill. 1986) ..................................................... 17

*In re Grossman's Inc.*,
    607 F.3d 114 (3d Cir. 2010) ............................................................ *passim*

*In re Hexcel Corp.*,
    239 B.R. 564 (N.D. Cal. 1999) ................................................................ 13

*In re Imerys Talc America, Inc.*,
    38 F.4th 361 (3d Cir. 2022) ...................................................... 2, 6, 15, 17

*In Re J.T. Thorpe, Inc.*,
    870 F.3d 1121 (9th Cir. 2017) ............................................................... 8, 9

*In re Johns-Manville Corp.*,
    36 B.R. 727 (Bankr. S.D.N.Y. 1984) ........................................................ 5

*In re Johns-Manville Corp.*,
    551 B.R. 104 (S.D.N.Y. 2016) ................................................................ 16

*In re Johns-Manville Corp.*,
    600 F.3d 135 (2d Cir. 2010) ............................................................. 11, 13

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986) ..................................................... 15

*In re Placid Oil Co.*,
    753 F.3d 151 (5th Cir. 2014) ................................................................. 15

*In re RML, LLC*,
    657 B.R. 709 (Bankr. S.D.N.Y. 2023) .................................................... 13

*In re WR Grace & Co.*,
    729 F.3d 332 (3d Cir. 2013) ...................................................... 1, 6, 8, 18

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988) ......................................................... 8, 9, 16

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ................................................................................ 8

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................. 10, 11, 12, 15

.

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...................................................................3, 4

*Stephenson v. Dow Chemical Co.*,
    273 F.3d 249 (2d Cir. 2001).......................................................14

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)...................................................................16

*Truck Insurance Exchange v. Kaiser Gypsum Co., Inc.*,
    602 U.S. 268 (2024)................................................................5, 6

## Statutes

11 U.S.C. § 342 ..........................................................................10

11 U.S.C. § 524 ..................................................................*passim*

11 U.S.C. § 1123 ........................................................................16

11 U.S.C. § 1141........................................................................2, 7

## Other Authorities

Laura B. Bartell,
    *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 Am. Bankr. L.J. 339 (2004).........................13, 14, 17

.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The bankruptcy court in this case approved a Chapter 11 reorganization plan that absolves Revlon of all future liability for its prepetition sale of asbestos-contaminated products. Given the long latency of asbestos-related illnesses, the full extent of the public-health harm that the company caused will not be known for decades. Yet Revlon's plan pays only those victims who had already been diagnosed with an asbestos-related illness at the time of plan approval, cutting off the claims of numerous others who later become sick. As both Congress and the courts have recognized, there is no equitable basis for drawing that distinction between those who have suffered harm already and those who suffer identical harm later. It is arbitrary and deeply unfair for a plan to deny relief to some claimants facing terminal illness while paying all available compensation to others just because they "got sick faster." *In re WR Grace & Co.*, 729 F.3d 332, 341 (3d Cir. 2013).[1]

This potential for inequity in asbestos-related bankruptcies is the precise problem that Congress sought to resolve in 11 U.S.C. § 524(g) by providing bankruptcy courts with a mechanism for handling such claims: "a trust designed to compensate present and future asbestos claimants, coupled with an injunction against future

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no person other than amicus curiae or its counsel contributed money that was intended to fund preparing or submitting the brief.

.

asbestos liability." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 366 (3d Cir. 2022). The bankruptcy court, however, refused to require that mechanism here, instead approving Revlon's plan to set aside nothing for those whom later become ill from the company's products. The court gave no reasons for allowing Revlon to leave future claimants without any path to a remedy for the harms they suffered, other than its view that the Bankruptcy Code did not prohibit that result, The claimants argue that, because this bankruptcy falls within the class of asbestos-related cases covered by section 524(g), the bankruptcy court erred by failing to implement those procedures. The bankruptcy court disagreed, approving Revlon's plan instead under the general discharge provisions set forth in 11 U.S.C. § 1141(d). Regardless of whether section 524(g) is determined to apply, the bankruptcy court erred by approving a plan that lacked adequate due process protections for future claimants.

Any discharge of a claim in bankruptcy must satisfy due process by, at minimum, providing notice and an opportunity to be heard. Section 524(g), where it applies, satisfies that constitutional minimum by providing a series of procedural protections—including the establishment of a trust and appointment of a future-claims representative—that Congress thought constitutionally sufficient for the discharge of future claims. In providing those protections, however, Congress did not authorize bankruptcy courts to dispense with due process protection for bankruptcies in which section 524(g) does not apply. Nor could it. The Supreme

Court has warned of the "serious constitutional concerns that come with any attempt to aggregate individual tort claims" in a way that "compromises Seventh Amendment rights" and the "deep-rooted historic tradition that everyone should have his own day in court." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999). Even assuming that the bankruptcy court could bypass the specific procedures mandated by section 524(g), that would not authorize dispensing with the minimum process that the Constitution requires.

In approving Revlon's plan, the bankruptcy court blew right past those constitutional limits. The only notice that Revlon provided was published for a single day in just three newspapers, making it unlikely that future claimants ever saw it. Even if they did, the notice never mentioned asbestos or the Revlon products that contained it. Most problematically, the notice was incapable of alerting future claimants that their latent claims for asbestos-related injuries would be discharged. Before plan confirmation, the claimants here could not have known that they would eventually become ill from their exposure to asbestos in Revlon products. And by the time they became sick, it was already too late. Even if they had some means to pursue their claims, the bankruptcy court established neither a mechanism for awarding them relief nor a fund from which to pay them.

If companies could so easily dispose of their liability for future claims without compensation in asbestos-related bankruptcies, where section 524(g)'s protections

.

ostensibly apply, there's nothing stopping them from using the same tactic to escape liability in other bankruptcies as well. The rule adopted by the bankruptcy court would thus give all mass-injury defendants (not just those involved with asbestos) a roadmap for exiting the civil justice system and permanently escaping accountability for mass-injury liability to many of the Americans they hurt. The "incentives such a resolution would provide to companies facing tort liability" would "significantly undermine the protections for creditors built into the Bankruptcy Code"—just as in this case. *Ortiz*, 527 U.S. at 860 n.34. This Court should reverse.

## INTEREST OF AMICUS CURIAE

The American Association for Justice is a national, voluntary bar association established in 1946 to strengthen the civil justice system, preserve the right to trial by jury, and protect access to the courts for those who have been wrongfully injured. With members in the United States, Canada, and abroad, AAJ is the world's largest plaintiff trial bar. AAJ members primarily represent plaintiffs in injury actions, employment rights cases, consumer cases, and other civil actions, including civil actions by victims of asbestos-related diseases and other injuries caused by dangerous products. AAJ has participated in cases as amicus curiae concerning asbestos-related litigation, including *Ortiz*, 527 U.S. 815, and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), both of which concerned attempts to effectuate a global settlement of claims by those exposed to asbestos.

4

.

AAJ files this brief to highlight the serious harms the bankruptcy court's decision would have on the civil justice system—harms that extend well beyond the asbestos context. If Revlon's strategy were approved by this Court, it would allow large corporations to leverage Chapter 11 as a means of escaping accountability for a wide range of public harms. AAJ submits this brief to urge the Court to reject this tactic and make clear that a bankruptcy plan cannot sacrifice the constitutional rights of future victims.

## ARGUMENT

## I. A bankruptcy court's discharge of future claims must comport with constitutional minimums.

**A.** "Because of a latency period that may last as long as 40 years for some asbestos related diseases," the claims of those injured by asbestos-containing products "arrive on a long and unpredictable timeline." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 273 (2024). Courts have long recognized the special problems this timeline poses for companies seeking to discharge asbestos liability in bankruptcy. *See, e.g.*, *In re Johns-Manville Corp.*, 36 B.R. 727, 741 (Bankr. S.D.N.Y. 1984). Consumers exposed to a company's asbestos-containing products before the company's bankruptcy may not emerge as new claimants until decades after the company's asbestos liability has already been discharged. Thus, if these "bankruptcy proceedings resolved only existing asbestos liability, companies would face unknown

5

.

future liability and claimants might be unable to recover just because their injuries had not yet manifested." *Truck Ins. Exch.*, 602 U.S. at 273.

Congress in section 524(g) codified "a novel mechanism for dealing with these issues: a trust designed to compensate present and future asbestos claimants, coupled with an injunction against future asbestos liability." *Imerys Talc*, 38 F.4th at 366; *see* 11 U.S.C. §§ 524(g)(1)(B), (2)(B)(i)(I), (II), (IV). "The combination of the trust and injunction"—also called a "channeling injunction"—"allow[s] the debtor to emerge from bankruptcy without the uncertainty of future asbestos liabilities hanging over its head." *Imerys Talc*, 38 F.4th at 366. But Congress did not design section 524(g) solely for the benefit of debtors. Congress was equally concerned that the "large pool of future claimants whose disease has not yet manifested" would "lack the ability to protect their own interests during the bankruptcy proceeding." *WR Grace & Co.*, 729 F.3d at 323. A central purpose of the statute is thus to "protect the due process rights of the[se] future claimants." *Imerys Talc*, 38 F.4th at 367.

To achieve these goals, section 524(g) imposes "many statutory prerequisites" that must be satisfied before a court issues a channeling injunction. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n.45 (3d Cir. 2004). These "safeguards" include creation of a trust that "will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner." 11 U.S.C. § 524(g)(2)(B)(ii)(V). In addition, Congress required bankruptcy courts "to

6

.

determine that the injunction is 'fair and equitable' to future claimants, … to appoint a representative of future claimants' interests, … and to obtain an approval vote from at least three-quarters of asbestos claimants." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 812 (3d Cir. 2020).

**B.** By its plain language, section 524(g) applies to this case because Revlon, "at the time of entry of the order for relief," had "been named as a defendant in … actions seeking recovery for damages allegedly caused by … asbestos-containing products." 11 U.S.C. § 524(g)(2)(B)(i)(I). As the bankruptcy court noted, it is "undisputed," however, that Revlon's plan did "not attempt to employ or satisfy the requirements of 11 U.S.C. § 524(g)." ECF No. 1107 at 7, *In re RML LLC*, No. 22-10784 (Bankr. S.D.N.Y.). "Among other things, the Plan did not appoint a future claims representative, win approval of 75% of the Talc Personal Injury Claim claimants with respect to each debtor, or create a trust compliant with 11 U.S.C. § 524(g)[.]" *Id.*

The court justified this result by purporting to discharge Revlon's asbestos-related liability under the Bankruptcy Code's general discharge provision, 11 U.S.C. § 1141(d), rather than "through … the means established by Section 524(g)." *Id.* at 7–8. But even assuming that the bankruptcy court was right that section 524(g)'s procedures are not mandatory in an asbestos case (a proposition that the claimants dispute), that does not answer the question whether those procedures (or similar ones) are necessary to protect the rights of future claimants here.

7

.

"By enacting § 524(g), Congress took account of the due process implications of discharging future claims of individuals whose injuries were not manifest at the time of the bankruptcy petition" by adopting procedures "specifically tailored to protect the due process rights of future claimants." *In Re J.T. Thorpe, Inc.*, 870 F.3d 1121, 1133 (9th Cir. 2017). In cases where section 524(g) applies, this Court has held these procedures sufficient to satisfy the constitutional minimum necessary to protect the rights of future claimants in asbestos cases. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 640 (2d Cir. 1988). Thus, "as long as a court correctly determines that § 524(g)'s requirements are satisfied, present and future claims can be channeled to a § 524(g) trust without violating due process." *WR Grace & Co.*, 729 F.3d at 323–24.

But while section 524(g) satisfies the due process minimum in asbestos-related bankruptcies, it cannot constitutionally limit or eliminate the requirement of due process in other cases, to which the section doesn't apply. *See, e.g.*, *City of New York v. N.Y., New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296-97 (1953). A "cause of action is a species of property protected by" due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–31 (1982). And that is true even if the claim has not yet arisen at the time of bankruptcy. *See In re Chateaugay Corp.*, 944 F.2d 997, 1003–05 (2d Cir. 1991); *see also In re Grossman's Inc.*, 607 F.3d 114, 127 (3d Cir. 2010) (en banc) (recognizing a protected property interest in asbestos claims). Thus, even in cases not involving section 524(g), a court must still "decide whether discharge of … claims would comport with due

8

.

process, which may invite inquiry into the adequacy of the notice of the claims bar date." *Grossman's*, 607 F.3d at 127.

Long before Congress enacted section 524(g), bankruptcy courts used their inherent powers to fashion similar channeling trusts to protect future claimants. *See, e.g.*, *Kane*, 843 F.2d 636. And the statute's legislative history makes clear that Congress intended section 524(g)'s procedures to "meet the same kind of high standards" as these existing trusts. *Grossman's*, 607 F.3d at 127. In this respect, the "design of the trust system to protect future claimants was a deliberate one that … may have been in some respects constitutionally mandatory." *J.T. Thorpe*, 870 F.3d at 1133.

Thus, whether or not section 524(g) applies, the decision to discharge future claims "cannot be divorced from fundamental principles of due process." *Grossman's*, 607 F.3d at 125. Either way, "the ultimate question remain[s] whether the discharge of latent asbestos claims comport[s] with due process." *Energy Future Holdings*, 949 F.3d at 812–13.

## II. The bankruptcy court's discharge of the claimants' injury claims failed to comport with due process.

Because the claimants here "challenge the post-confirmation process as depriving them of their ability to pursue their asbestos claims, they have asserted a cognizable property interest within the protection of the Due Process Clause." *Id.* at 822. Due process, "at a minimum," requires notice and an opportunity to be heard before a court may discharge those claims in bankruptcy. *Mullane v. Central Hanover*

9

.

*Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). In the bankruptcy context, "discharging the claims of 'unknowable future creditors' implicates due process concerns: namely, that they have been deprived of their property—their claims—without notice of or a hearing regarding the discharge." *Energy Future Holdings*, 949 F.3d at 811–12. The bankruptcy court failed to provide the requisite process here.

### A. The notice failed to alert the claimants that their future claims would be discharged.

Adequate notice is "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality." *Mullane*, 339 U.S. at 314. In a bankruptcy proceeding, notice is required before discharge to give a claimant "a meaningful opportunity to protect his or her claim." *Grossman's*, 607 F.3d at 125–26; *see also* 11 U.S.C. § 342(a) (requiring "such notice as is appropriate … of an order for relief"). Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 313–14. If "the claimant is denied … adequate notice," a "claim cannot be discharged." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014).

**1.** The bankruptcy court held that the claimants here received "constructive notice" in the form of a published notice stating that claims against Revlon—"no matter how remote or contingent" and "including claims for potential unmatured injuries"—would be discharged if not filed by the appropriate bar date. ECF No. 1107

10

.

at 15, 20–21, *In re RML LLC*, No. 22-10784 (Bankr. S.D.N.Y.).  That language, the court wrote, satisfies due process because it "precisely describes the … claims against Revlon." *Id.*

But the boilerplate notice on which the bankruptcy court relied, far from "precisely" describing those claims, says nothing that would have alerted users of Revlon products that the bankruptcy process might affect their rights. Indeed, the notice never mentions talc, asbestos, or the brand names of the products at issue. To understand the significance of the notice, claimants would thus have had to learn from some other source that products they used were made by Revlon and contained asbestos. They would also have had to guess that their use of these products caused an injury that had not yet manifested. And they would have had to predict that this undetectable injury would later develop into an asbestos-related illness and a cause of action against Revlon. The notice was "insufficient to communicate these issues," and a court cannot realistically attribute to the claimants "the sort of prescience that these predictions would have required." *In re Johns-Manville Corp.*, 600 F.3d 135, 157 (2d Cir. 2010). A notice that "does not even name those whose attention it is supposed to attract" cannot be regarded "as more than a feint." *Mullane*, 339 U.S. at 315.

**2.** Revlon made little effort to ensure that even this generic notice would reach those who needed to see it. The notice ran for only one day and appeared in just three newspapers, buried at the back of the business or news section. ECF No. 758,

11

.

*In re Revlon Inc.*, No. 22-10760 (Bankr. S.D.N.Y.). To be sure, publication notice may sometimes suffice to notify unknown creditors when no more effective method is available. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346, 349 (3d Cir. 1995). But, as the Supreme Court wrote in *Mullane*, the notice that due process requires must be "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315. "[P]rocess which is a mere gesture is not due process." *Id.*

Revlon's notice fails that test. This Court has held that publication in a single national newspaper is inadequate to provide notice. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). Revlon's publication in three national newspapers for just a single day is little better and falls far short of other notice plans that courts have found sufficient. *See, e.g.*, *Energy Future Holdings Corp.*, 949 F.3d at 822–23 (holding publication sufficient where notice was posted in "seven consumer magazines, 226 local newspapers, three national newspapers, forty-three Spanish-language newspapers, eleven union publications, and five Internet outlets"); *Chemetron*, 72 F.3d at 348–49 (publication in nine national and local newspapers targeting areas where debtors were exposed to toxins). Indeed, Revlon itself made much more extensive notice efforts for claims related to its hair-relaxer products, including "a digital advertising and social media campaign designed to reach the relevant consumer

.

audience." *In re RML, LLC*, 657 B.R. 709, 722 (Bankr. S.D.N.Y. 2023). Neither Revlon nor the bankruptcy court provided any justification for doing less here.

**3.** Even if future claimants managed to discover Revlon's notice and understand its relevance, they still "could not have anticipated … that [their] … claims … would be enjoined." *Johns-Manville*, 600 F.3d at 158. The question "whether notice comports with due process requirements … often turns on what the debtor or the claimant knew about the claim or, with reasonable diligence, should have known." *DPWN Holdings*, 747 F.3d at 150. Those exposed to asbestos but who have not yet manifested illness cannot know when—if ever—they will develop an asbestos-related illness. *See, e.g.*, *In re Hexcel Corp.*, 239 B.R. 564, 571 (N.D. Cal. 1999) (explaining that publication notice is insufficient "for a potential creditor who had no way of knowing that it may have a claim against the debtor some time in the future"). And a claimant who "cannot recognize that he or she has a claim in a bankruptcy case … cannot make a decision about how to assert that claim." Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 Am. Bankr. L.J. 339, 366 (2004). Thus, when it comes to "future claimants who do not know of their claims," publication notice "is no notice at all." *Id.* at 370.

This problem arises "starkly in the situation presented by persons with asbestos injuries that are not manifested until years or even decades after exposure."

.

*Grossman's*, 607 F.3d at 126. As the Supreme Court explained in *Amchem*, those exposed to asbestos "may not even know of their exposure, or realize the extent of the harm they may incur." 521 U.S. at 628. In *Amchem*, the Court considered certification of a Rule 23(b)(3) class that included those who had been exposed to asbestos but had not manifested any injuries. *Id.* at 602–03. Even assuming that these class members had read and "fully appreciate[d] the significance" of the class notice, the Court noted that "those without current afflictions" would still lack "the information or foresight needed to decide, intelligently, whether" to assert a claim. *Id.* at 628 (recognizing the serious "[i]mpediments to the provision of adequate notice" for those claimants who have "no perceptible asbestos-related disease").

Indeed, as this Court has explained, "*Amchem* indicates that effective notice could likely not *ever* be given to exposure-only class members." *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 261 n.4 (2d Cir. 2001) (emphasis added), *vacated in part*, 539 U.S. 111 (2003). "Such a notice by publication is an exercise in futility as applied to creditors who are not only unknown to the debtor, but are also unknown to themselves." Bartell, *supra*, at 354–55. "Recognizing this, many courts have discharged unknown, future claims … only when constructive notice has been coupled with the appointment of a future-claims representative" and other post-confirmation procedures designed to protect the rights of future claimants. *In re Placid Oil Co.*, 753

14

.

F.3d 151, 162–63 (5th Cir. 2014) (Dennis, J., dissenting); *see, e.g.*, *In re Johns-Manville Corp.*, 68 B.R. 618, 626–27 (Bankr. S.D.N.Y. 1986).

## B. The plan provides no post-bankruptcy mechanism for hearing future claimants.

In addition to its failure to require adequate notice, the reorganization plan approved by the bankruptcy court also failed to provide any mechanism "capable of affording latent claimants a fair opportunity post-confirmation to seek reinstatement of their claims." *Energy Future Holdings*, 949 F.3d at 825. The plan thus additionally violates due process by disposing of the claimants' property interests without providing them an opportunity to be heard. *See Mullane*, 339 U.S. at 313–14.

**1.** Bankruptcy courts have at their disposal a range of mechanisms to address "the due process implications of discharging future claims." *Energy Future Holdings*, 949 F.3d at 812. *First*, as explained above, courts may establish a trust to "protect the due process rights of … future claimants" by serving as a "source of compensation for … claimants after the confirmation of the reorganization plan." *Imerys Talc*, 38 F.4th at 366–67. Section 524(g) authorizes courts in asbestos cases to create such a trust "to pay … present claims and future demands." 11 U.S.C. § 524(g)(2)(B)(ii)(V). But bankruptcy courts have also used their general authority to create similar trusts in a wide variety of non-asbestos cases. *See, e.g.*, *In re Dow Corning Corp.*, 280 F.3d 648, 654–55 (6th Cir. 2002) (silicone implants); *In re Drexel Burnham Lambert Grp., Inc.*, 960

15

.

F.2d 285, 293 (2d Cir. 1992) (securities); *In re A.H. Robins Co.*, 880 F.2d 694, 701–02 (4th Cir. 1989) (Dalkon Shield).

*Second*, bankruptcy courts often protect future claimants' due process rights with "the appointment of a representative to receive notice for and represent [their] interests." *Chemetron*, 212 F.3d at 209–10; *see* 11 U.S.C. § 524(g)(4)(B)(i); *cf. Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (holding that nonparties must receive adequate representation before being bound by a judgment). Without such an appointment "to provide adequate representation to the absent future claim holders, it is doubtful that … injunction provisions binding them would be found to comply with the due process clause." *In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y. 2016).

*Third*, courts can protect future claimants by ensuring that they are "treated identically to the present claimants." *Kane*, 843 F.2d at 640. Again, section 524(g) codifies a mechanism to accomplish this. *See* 11 U.S.C. § 524(g)(4)(B)(ii) (requiring the court to determine whether a channeling injunction "is 'fair and equitable' to future claimants"). But core bankruptcy principles also generally compel this result. *See id.* § 1123(a)(4) (requiring a reorganization plan to "provide the same treatment for each claim or interest of a particular class"). "[A] reorganization plan that fail[s] to account for future asbestos liabilities would be of limited utility to the debtor, and likewise, a reorganization plan that did not address future claimants would fail to

16

.

provide adequately for all parties with an interest in the debtor's assets." *Imerys Talc*, 38 F.4th at 366.

Although "distinctions between different classes of unsecured creditors … may justify providing disparate treatment of … ostensibly 'similar' claims, no such distinction can be found between those who, as a result of debtor's wrongful prepetition conduct, suffer harm that occurs and manifests itself before the bankruptcy filing and those whose otherwise identical harm occurs or manifests itself thereafter." Bartell, *supra*, at 341–42. It would therefore "be highly inequitable to distribute the liquidated assets of the debtor … to the detriment of the potential claimants merely because the potential claimants have not yet manifested an injury." *In re Forty-Eight Insulations, Inc.*, 58 B.R. 476, 477 (Bankr. N.D. Ill. 1986); *see Fogel v. Zell*, 221 F.3d 955, 961 (7th Cir. 2000) (calling this distinction "arbitrary").

**2.** The reorganization plan here adopted none of these post-settlement protections. Although the plan acknowledged the existence of future claims, ECF No. 688 ¶ 6, *In re Revlon Inc.*, No. 22-10760 (Bankr. S.D.N.Y.), it neither created a fund for future claimants nor appointed a future-claims representative to protect their interests. It also failed to treat future and current claimants equitably, paying asbestos claimants who filed their claims before the bar date while leaving future claimants with nothing. *See* Revlon ECF No. 1865 § 6.2. The plan, in short, left the claimants without any means to be heard on their post-settlement claims.

17

.

To hold that the plan violated due process in these circumstances, this Court need not hold that all of section 524(g)'s post-settlement protections are required in every bankruptcy case. *See Energy Future Holdings*, 949 F.3d at 825 (approving a substitute for a trust, but describing the case "as a cautionary tale for debtors attempting to circumvent § 524(g)"). Rather, the inquiry turns on "circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants." *Grossman's*, 607 F.3d at 127–28. But although the appropriate safeguards in each case are "dictated by the particular circumstance," due process ordinarily requires at least some "post-confirmation" opportunity to assert late-arising claims. *Energy Future Holdings*, 949 F.3d at 822. Otherwise, claimants like those here "might not manifest injury until a time when all available compensation had been paid out[.]" *WR Grace & Co.*, 729 F.3d at 341. Because the reorganization plan includes no safeguards for future claimants and makes no provision for compensating them, it fails to satisfy due process.

## CONCLUSION

This Court should reverse the bankruptcy court's enforcement order.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA
MATTHEW W.H. WESSLER
GREGORY A. BECK
GUPTA WESSLER LLP
2001 K Street, NW

18

.

Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

JEFFREY R. WHITE
AMERICAN ASSOCIATION FOR
JUSTICE
777 6th Street, NW
Washington, DC 20001
(202) 944-2839

May 27, 2025                          *Counsel for Amicus Curiae*

.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Local Rule 32.1(a)(4) because this brief contains 4,425 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

May 27, 2025                                 _/s/ Deepak Gupta_
                                             Deepak Gupta

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the ACMS system. All participants are registered ACMS users and will be served by the ACMS system.

*/s/ Deepak Gupta*
Deepak Gupta