# 25-263

## In the United States Court of Appeals
## for the Second Circuit

---

IN RE: RML, LLC,
DEBTOR

*(caption continued on inside cover)*

---

*ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT*
*FOR THE SOUTHERN DISTRICT OF NEW YORK (NO. 22-10784)*
*(THE HONORABLE DAVID S. JONES, J.)*

---

## FINAL BRIEF OF APPELLEES

---

ROBERT A. BRITTON
PAUL A. PATERSON
KATHLEEN H. PIERRE
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
JAMES DURLING
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*
*kshanmugam@paulweiss.com*

AGATHA BUITRAGO, ANGELINA RASO, CHERIE A. CRAFT, CYNTHIA
FISHER, ANNA MARIE GERKEN, GLENDA T. GIROIR, DOROTHY GOODE-
EVANS, VERDA HANEY, ELAINE SCHLECHTER, DIANNE TANTILLO, SUSAN
SOARES, ANA DELGADO, REBECCA LATTERELL-RICE, CARMEN
ALARCON, HOWARD G. ANDOE, KAREN HOW, MARTHA MCRACKEN
KING, LORRAINE PERKINS, ROBYN ROSS, BETTY SCOTT, JOHN
WANDSNEIDER, JUDY KAY BELL, RENE FLAGG PEREZ, ILONA
KLAR, CYNTHIA LOU SMITHERS, WESLEY REED, SUSAN BETTS, CARLA
FORSLUND, MARLANE HEARD, ALEKSANDRA HUXLEY, MARILYN
MACRON, LOUISE MILFORD, JOSEPHINE NAVARETTA, MAUREEN
SEAL, ANGELINA VESSIA-AYOUBI, SHERI ADAMS, SHERYL
DOBBS, CHRISTA RUTH MACHADO, ESTATE REPRESENTATIVE OF ESTATE
OF BARBARA J. KERSHNER, CHARLENE RAND, JODY VALLEY,
APPELLANTS

*v.*

RML, LLC, REVLON GROUP HOLDINGS LLC, ELIZABETH ARDEN USC,
LLC, BRANDCO ALMAY 2020 LLC, ELIZABETH ARDEN, INC., BRANDCO
CHARLIE 2020 LLC, FD MANAGEMENT, INC., REVLON CONSUMER
PRODUCTS LLC, BRANDCO CND 2020 LLC, NORTH AMERICA REVSALE
INC., OPP PRODUCTS, INC., ALMAY, INC., BRANDCO CURVE 2020 LLC, RDEN
MANAGEMENT, INC., BRANDCO ELIZABETH ARDEN 2020 LLC, ART &
SCIENCE, LTD., REALISTIC ROUX PROFESSIONAL PRODUCTS INC., ROUX
LABORATORIES, INC., BRANDCO GIORGIO BEVERLY HILLS 2020
LLC, REVLON DEVELOPMENT CORP., ROUX PROPERTIES JACKSONVILLE,
LLC, BRANDCO HALSTON 2020 LLC, REVLON GOVERNMENT SALES,
INC., SINFULCOLORS INC., BRANDCO JEAN NATE 2020 LLC, REVLON
INTERNATIONAL CORPORATION, BARI COSMETICS, LTD., PPI TWO
CORPORATION, RIROS GROUP INC., BEAUTYGE BRANDS USA,
INC., ELIZABETH ARDEN (CANADA) LIMITED, BRANDCO PS 2020
LLC, BRANDCO WHITE SHOULDERS 2020 LLC, REVLON CANADA
INC., BEAUTYGE USA, INC., CHARLES REVSON INC., BEAUTYGE II,
LLC, CREATIVE NAIL DESIGN, INC., CUTEX, INC., DF ENTERPRISES,
INC., ELIZABETH ARDEN (FINANCING), INC., ELIZABETH ARDEN
INVESTMENTS, LLC, ELIZABETH ARDEN NM, LLC, ELIZABETH ARDEN
TRAVEL RETAIL, INC., REVLON PROFESSIONAL HOLDING COMPANY
LLC, BRANDCO MITCHUM 2020 LLC, REVLON (PUERTO RICO) INC., RIROS
CORPORATION, ELIZABETH ARDEN (UK) LTD., BRANDCO MULTICULTURAL
GROUP 2020 LLC,
DEBTORS-APPELLEES

## CORPORATE DISCLOSURE STATEMENT

Appellee Revlon Group Holdings LLC has no parent corporation, and no publicly held company holds a 10% or greater ownership interest in it.

Appellees RML, LLC; Revlon Consumer Products LLC; Revlon Development Corp.; North America Revsale Inc.; OPP Products, Inc.; Almay, Inc.; PPI Two Corporation; Revlon Professional Holding Company LLC; Riros Corporation; Revlon Government Sales, Inc.; Beautyge U.S.A., Inc.; Charles Revson Inc.; Cutex, Inc.; SinfulColors Inc.; Bari Cosmetics, Ltd.; Riros Group Inc.; Elizabeth Arden USC, LLC; FD Management, Inc.; Revlon International Corporation; RDEN Management, Inc.; Elizabeth Arden (Financing), Inc.; Elizabeth Arden, Inc.; Elizabeth Arden Investments, LLC; Elizabeth Arden NM, LLC; Elizabeth Arden Travel Retail, Inc.; DF Enterprises, Inc.; Revlon (Puerto Rico) Inc.; Revlon Canada Inc.; Elizabeth Arden (Canada) Limited; Elizabeth Arden (UK) Ltd.; Roux Laboratories, Inc.; Art & Science, Ltd.; Realistic Roux Professional Products Inc.; Beautyge Brands USA, Inc.; Roux Properties Jacksonville, LLC; Creative Nail Design, Inc.; Beautyge I[*]; BrandCo Almay 2020 LLC; BrandCo Charlie 2020 LLC; BrandCo CND 2020 LLC; BrandCo Curve 2020 LLC; BrandCo Elizabeth Arden 2020 LLC; BrandCo Giorgio Beverly Hills 2020 LLC; BrandCo Halston 2020 LLC;

_____

[*] Although Beautyge I is not listed in the case caption, it was a party to the proceedings below and should be named as an appellee in this appeal.

(i)

BrandCo Jean Nate 2020 LLC; BrandCo Mitchum 2020 LLC; BrandCo Multicultural Group 2020 LLC; BrandCo PS 2020 LLC; BrandCo White Shoulders 2020 LLC; and Beautyge II, LLC, are wholly owned indirect subsidiaries of Revlon Group Holdings LLC.

# TABLE OF CONTENTS

Page

Introduction ........................................................................................1

Statement of the case .........................................................................2

    A.    Legal background ......................................................... 2

    B.    Factual background ..........................................................7

    C.    Procedural history .......................................................11

Summary of argument ......................................................................13

Argument ...........................................................................................16

I.    The bankruptcy court correctly held that claims involving undiagnosed asbestos-related injuries may be discharged without using the procedures in Section 524(g) .......................16

    A.    Section 524(g) does not override the Bankruptcy Code's general discharge provisions .............................................16

    B.    Claimants' contrary arguments lack merit ...................21

II.    The bankruptcy court correctly held that the bankruptcy plan satisfied due process ....................................................29

    A.    The notice in this case satisfied due process .................30

    B.    Due process does not require debtors to use the procedures in Section 524(g) ....................................38

Conclusion ..........................................................................................49

iii

# TABLE OF AUTHORITIES

## CASES

Page

*Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591 (1997) ..................................45

*Amdura Corp.*, *In re*, 170 B.R. 445 (D. Colo. 1994) ...........................................33

*Arciniaga* v. *General Motors Corp.*, 460 F.3d 231 (2d Cir. 2006) ....................19

*Barton* v. *Barr*, 590 U.S. 222 (2020)...................................................................26

*Brooks Fashion Stores, Inc.*, *In re*, 124 B.R. 436 (Bankr. S.D.N.Y. 1991) .....35

*Central Virginia Community College* v. *Katz*, 546 U.S. 356 (2006) ..................4

*Chateaugay Corp.*, *In re*, No. 86-11270,
    2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009)........................................23

*Chemetron Corp.* v. *Jones*, 72 F.3d 341 (3d Cir. 1995) ......................................30

*Chemtura Corp.*, *In re*, No. 09-11233,
    2016 WL 11651714 (Bankr. S.D.N.Y. Nov. 23, 2016)........................32, 33, 39

*Conway Hospital, Inc.* v. *Lehman Brothers Holdings Inc.*,
    531 B.R. 339 (S.D.N.Y. 2015)..........................................................................32

*Dahlin* v. *Lyondell Chemical Co.*, 881 F.3d 599 (8th Cir. 2018)...........32, 39, 46

*Ditech Holding Corp.*, *In re*, No. 24-1106,
    2025 WL 783639 (2d Cir. Mar. 12, 2025) ......................................................34

*DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014) ............................................................................30

*Eagle-Picher Industries, Inc.* v. *Liberty Mutual Insurance Co.*,
    682 F.2d 12 (1st Cir. 1982) ..............................................................................45

*Ellis* v. *Westinghouse Electric Co.*, 11 F.4th 221 (3d Cir. 2021).........................3

iv

Page

Cases—continued:

*Energy Future Holdings Corp.*, *In re*:

    619 B.R. 99 (Bankr. D. Del. 2020) ...................................................41

    949 F.3d 806 (3d Cir. 2020) ....................................................... 41-43

*Enron Corp.*, *In re*, 419 F.3d 115 (2d Cir. 2005)....................................40

*Envirodyne Industries, Inc.*, *In re*, 214 B.R. 338 (N.D. Ill. 1997)...................33

*Federal Communications Commission* v. *Consumers' Research*, 145 S. Ct. 2482 (2025) .............................................................46

*Federal Communications Commission* v. *NextWave Personal Communications Inc.*, 537 U.S. 293 (2003) .................................4, 18

*Grossman's Inc.*, *In re*, 607 F.3d 114 (3d Cir. 2010) ................................4, 22, 23

*Haaland* v. *Brackeen*, 599 U.S. 255 (2023) ...........................................47

*Hallahan*, *In re*, 936 F.2d 1496 (7th Cir. 1991) ...................................39

*Hansberry* v. *Lee*, 311 U.S. 32 (1940) ...................................................44

*Harrington* v. *Purdue Pharma L.P.*, 603 U.S. 204 (2024).......................*passim*

*Hecht* v. *United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012)............35

*Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U.S. 63 (2019)............28

*Henson* v. *Santander Consumer USA Inc.*, 582 U.S. 79 (2017).......................28

*Hood* v. *Ryobi America Corp.*, 181 F.3d 608 (4th Cir. 1999) ............................36

*Husky International Electronics, Inc.* v. *Ritz*, 578 U.S. 355 (2016) ...............26

*Jamesway Corp.*, *In re*, No. 95-44821, 1997 WL 327105 (Bankr. S.D.N.Y. June 12, 1997) ........................................33

Page

Cases—continued:

*Johns-Manville Corp.*, *In re*:

    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988) ........................................5

    600 F.3d 135 (2d Cir. 2010) ...............................................................34

    551 B.R. 104 (S.D.N.Y. 2016)..............................................................44

    No. 20-3693, 2022 WL 4487889 (2d Cir. Sept. 28, 2022) ....................4, 22, 44

*Jones* v. *United States*, 121 F.3d 1327 (9th Cir. 1997)........................................38

*Lac du Flambeau Band of Lake Superior Chippewa Indians* v. *Coughlin*, 599 U.S. 382 (2023) ..........................................................4

*Lamie* v. *United States Trustee*, 540 U.S. 526 (2004).........................................26

*Law* v. *Siegel*, 571 U.S. 415 (2014) .......................................................18

*Motors Liquidation Co.*, *In re*, 829 F.3d 135 (2d Cir. 2016) ....................*passim*

*Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...........................................................................30, 36, 40

*National Association of Home Builders* v. *Defenders of Wildlife*, 551 U.S. 644 (2007).............................................................................18

*Nissan Motor Corp. Antitrust Litigation*, *In re*, 552 F.2d 1088 (5th Cir. 1977)...........................................................36

*Nordlicht*, *In re*, 115 F.4th 90 (2d Cir. 2024) ...............................................39

*Penn Central Transportation Co.*, *In re*, 771 F.2d 762 (3d Cir. 1985) ......32, 46

*Philadelphia Newspapers, LLC*, *In re*, 599 F.3d 298 (3d Cir. 2010) ..............27

*Piazza*, *In re*, 719 F.3d 1253 (11th Cir. 2013) ...............................................27

*Placid Oil Co.*, *In re*, 753 F.3d 151 (5th Cir. 2014)...................................*passim*

Page

Cases—continued:

*Plant Insulation Co.*, *In re*, 734 F.3d 900 (9th Cir. 2013) .................................20

*Purdue Pharma L.P.*, *In re*, 69 F.4th 45 (2d Cir. 2023),
  *rev'd on other grounds*, 603 U.S. 204 (2024) ....................................................36

*Quigley Co.*, *In re*, 676 F.3d 45 (2d Cir. 2012) ........................................20

*RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*,
  566 U.S. 639 (2012) ....................................................................27

*Ransom* v. *FIA Card Services, N.A.*, 562 U.S. 61 (2011) .............................17

*Rudisill* v. *McDonough*, 601 U.S. 294 (2024) ........................................17

*Stephenson* v. *Dow Chemical Co.*, 273 F.3d 249 (2d Cir. 2001),
  *vacated in part*, 539 U.S. 111 (2003) ...........................................34

*SVB Financial Group*, *In re*, 660 B.R. 60 (Bankr. S.D.N.Y. 2024) ...........31, 35

*Truck Insurance Exchange* v. *Kaiser Gypsum Co.*,
  602 U.S. 268 (2024) ....................................................................28

*Vancouver Women's Health Collective Society*
  v. *A.H. Robins Co.*, 820 F.2d 1359 (4th Cir. 1987) ..............................37

*W.R. Grace & Co.*, *In re*, 729 F.3d 311 (3d Cir. 2013) ............................20

*Walters* v. *Reno*, 145 F.3d 1032 (9th Cir. 1998) ................................36

## CONSTITUTION, STATUTES, AND RULES

U.S. Const. Amend. VII ...............................................................39

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 ..............5

Bankruptcy Code, 11 U.S.C.:

  § 101(5) .................................................................4, 8, 20, 22

  § 101(12) .................................................................................4

Page

Statutes and rules—continued:

§ 524 ...............................................................................17, 19

§ 524 note ......................................................................6, 18, 27

§ 524(a) .........................................................................4, 5, 29

§ 524(a) (1982) ...............................................................18

§ 524(b) ..........................................................................18

§ 524(g) ..........................................................................*passim*

§ 524(g)(1) ......................................................................5, 17, 26

§ 524(g)(1)(A) ..................................................................5, 12

§ 524(g)(2)(B)(i) ...............................................................6

§ 524(g)(2)(B)(i)(I) ...........................................................6, 17

§ 524(g)(2)(B)(i)(II) ..........................................................6

§ 524(g)(2)(B)(i)(III) .........................................................6

§ 524(g)(2)(B)(ii)(I) ..........................................................6

§ 524(g)(2)(B)(ii)(IV) .........................................................6

§ 524(g)(4) ......................................................................5

§ 524(g)(4)(B) ..................................................................6

§ 524(g)(5) ......................................................................5, 20, 26

§ 524(h) ..........................................................................5, 6, 24

§ 1121 ............................................................................2

§ 1123 ............................................................................3

Page

Statutes and rules—continued:

§ 1125 ........................................................................................3

§ 1129 ........................................................................................3

§ 1129(a) ....................................................................................3

§ 1129(b) ....................................................................................3

§ 1141(d) ..............................................................................10, 29

§ 1141(d) (1982) .......................................................................18

§ 1141(d)(1)(A) ..........................................................................3

§ 1141(d)(2) ..............................................................................18

§ 1141(d)(3) ..............................................................................18

§ 1141(d)(4) ..............................................................................18

§ 1141(d)(5) ..............................................................................18

§ 1141(d)(6) ..............................................................................18

28 U.S.C. § 1158(d)(2) ...............................................................13

Fed. R. Bankr. P. 3003(c)(3) ......................................................40

Fed. R. Bankr. P. 9006(b)(1) ......................................................40

Fed. R. Civ. P. 23(a)(4) ..............................................................44

## MISCELLANEOUS

*Black's Law Dictionary* (7th ed. 1999)......................................17

*Collier on Bankruptcy* (16th ed. 2025)...........................20, 44, 45

140 Cong. Rec. 27,692 (1994) ................................................7, 19

Page

Miscellaneous—continued:

140 Cong. Rec. 28,358 (1994) ..................................................19

H.R. Rep. No. 835, 103d Cong., 2d Sess. (1994) .............................................5, 19

*Webster's Third New International Dictionary* (2002)....................................17

## INTRODUCTION

The bankruptcy proceedings in this case were unremarkable with respect to claimants' interests as unknown creditors. An experienced bankruptcy judge approved a standard publication notice that was placed in two national American newspapers and one national Canadian newspaper. The notices provided the customary advisory that debtors had declared bankruptcy and set forth the procedures for filing a timely proof of claim. When claimants did not file proofs of claim in the bankruptcy, their claims were discharged by the confirmation order under the ordinary operation of the Bankruptcy Code.

Claimants build their appeal around the principle that, because their claims are potential causes of action for asbestos-related injuries that were allegedly undiagnosed at the time of the bankruptcy proceedings, both the Bankruptcy Code and the Constitution mandate special and elaborate procedures before their claims could be discharged. Those arguments fail for the reasons given by the bankruptcy court in its well-reasoned decision.

Claimants first argue that the Bankruptcy Code requires debtors to use the elaborate procedures in 11 U.S.C. § 524(g)—rather than the general procedures set out elsewhere in the Code—to discharge claims involving undiagnosed asbestos-related injuries. But both the plain text and broader context of Section 524(g) make clear that the provision merely supplements the Bankruptcy Code's other provisions governing the discharge of claims and does not

override or limit those provisions. Claimants point to nothing in the Code that suggests that Section 524(g) establishes the exclusive or mandatory procedure for discharging asbestos-related claims.

Claimants separately argue that the bankruptcy plan violated due process because debtors provided insufficient notice and failed to use the procedures in Section 524(g). But courts have long recognized that publication notice of the kind provided in this case satisfies due process for claimants whose identities were unknown to debtors at the time of the bankruptcy proceedings. And even assuming that debtors' pre-confirmation notice was insufficient on its own, claimants may also avail themselves of additional, post-confirmation process by seeking to establish excusable neglect for failing to submit timely claims. Claimants' contrary arguments lack any support in precedent and risk destabilizing the bankruptcy system far beyond the specific context of asbestos-related claims.

The bankruptcy court correctly granted debtors' motion to enforce the plan injunction. Its judgment should be affirmed.

## STATEMENT OF THE CASE

### A. Legal Background

1. Chapter 11 of the Bankruptcy Code sets forth procedures through which a debtor may work with its creditors to develop a reorganization plan governing the distribution of the debtor's assets. *See, e.g.*, 11 U.S.C. §§ 1121,

1123, 1129. As a part of that process, the debtor provides notice to its creditors of the proceedings and the deadline for filing proofs of claim—known as the "bar date"—either through direct notices to known creditors or through publication in public sources. *See, e.g., In re Motors Liquidation Co.*, 829 F.3d 135, 158-159, 168 (2d Cir. 2016). The imposition of a bar date helps to ensure that the bankruptcy system's "promise of a fresh start is not illusory, as claims not filed and addressed in the bankruptcy cannot be asserted later against the reorganized debtor." *Ellis* v. *Westinghouse Electric Co.*, 11 F.4th 221, 232 (3d Cir. 2021). After the bar date has passed, the affected creditors vote on the plan of reorganization, and the bankruptcy court decides whether to confirm the plan based on various requirements, such as whether the plan was proposed "in good faith" and whether it is "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. §§ 1125, 1129(a)-(b).

Once the bankruptcy court confirms the plan, the confirmation "discharges the debtor from any debt that arose before the date of such confirmation" (subject to limited exceptions not applicable here). 11 U.S.C. § 1141 (d)(1)(A). "That discharge not only releases or voids any past or future judgments on the discharged debt; it also operates as an injunction prohibiting creditors from attempting to collect or to recover the debt." *Harrington* v.

3

*Purdue Pharma L.P.*, 603 U.S. 204, 215 (2024) (internal quotation marks, citation, and alterations omitted); *see* 11 U.S.C. § 524(a).

The Bankruptcy Code broadly defines a "debt" as a "liability on a claim," with the word "claim" defined to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5), (12); *see Federal Communications Commission* v. *NextWave Personal Communications Inc.*, 537 U.S. 293, 302-303 (2003). Those broad provisions likewise help to effectuate the Code's goal of offering debtors a "'fresh start' by releasing [them] from further liability for old debts," *Central Virginia Community College* v. *Katz*, 546 U.S. 356, 363-364 (2006), "in an orderly and centralized fashion," *Lac du Flambeau Band of Lake Superior Chippewa Indians* v. *Coughlin*, 599 U.S. 382, 390 (2023) (internal quotation marks and citation omitted). This Court and others have held that a "claim" arises, *inter alia*, when "an individual is exposed pre-petition to a product or other conduct giving rise to an injury," even if the injury does not "manifest[] [until] after the reorganization." *In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010) (en banc); *see, e.g., Motors Liquidation*, 829 F.3d at 156-157; *In re Johns-Manville Corp.*, No. 20-3693, 2022 WL 4487889, at *3 (2d Cir. Sept. 28, 2022).

2.     In 1994, following a wave of asbestos-related litigation, Congress amended the Bankruptcy Code by adding two new subsections on "Supplemental Injunctions" in asbestos-related reorganizations. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111(a), 108 Stat. 4113-4117. Section 524(g) authorizes a bankruptcy court in a Chapter 11 case to issue an injunction to "supplement the injunctive effect of a discharge" under Section 524(a). 11 U.S.C. § 524(g)(1)(A). Under Section 524(g), the bankruptcy court may discharge not only "claims" against the debtor, but also future "demands" for payment that arise out of similar conduct or events but do not qualify as "claims" under the Bankruptcy Code. 11 U.S.C. § 524(g)(1), (g)(5). Section 524(g) also authorizes the bankruptcy court to enjoin claims and demands brought against certain third parties who have not themselves declared bankruptcy. 11 U.S.C. § 524(g)(4); *Harrington*, 603 U.S. at 222. Section 524(h), in turn, authorizes "injunction[s] of the kind described" in Section 524(g) but "issued before" the 1994 amendment. Congress modeled those statutory provisions on the prior bankruptcy proceedings involving the Johns-Manville Corporation. *See* H.R. Rep. No. 835, 103d Cong., 2d Sess. 40-41 (1994); *see also In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988).

Section 524(g) imposes specific requirements and procedures before a bankruptcy court may issue a supplemental injunction. Among other things,

the debtor must establish that it has been named as a defendant in an asbestos-related lawsuit and is likely to be subject to "substantial future demands for payment" for similar conduct or events. 11 U.S.C. § 524(g)(2)(B)(i)(I), (ii)(I). The statute requires the creation of a trust to cover the debtor's liabilities for asbestos-related claims and demands. 11 U.S.C. § 524(g)(2)(B)(i). The trust must be funded by the debtor and own a majority of the voting shares of the debtor or its affiliates. 11 U.S.C. § 524(g)(2)(B)(i)(II)-(III). The statute also provides for the appointment of an individual to represent the interests of those who may later assert demands against the debtor (sometimes called a future claims representative). 11 U.S.C. § 524(g)(4)(B). The bankruptcy plan must further establish a class of claimants with asbestos-related claims to be addressed by the trust, and 75% of the class's voting members must vote in favor of the bankruptcy plan. 11 U.S.C. § 524(g)(2)(B)(ii)(IV).

Congress also enacted a rule of construction in connection with Section 524(g). It provides that "[n]othing in [Section 524(g) or (h)], or in the amendments made by [those provisions], shall be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of reorganization." 11 U.S.C. § 524 note. As one member of Congress confirmed, "the special rule being devised for the

asbestos claim trust/injunction mechanism is not intended to alter any author-ity bankruptcy courts may already have to issue injunctions in connection with a plan of reorganization." 140 Cong. Rec. 27,692 (1994) (Rep. Brooks).

## B.    Factual Background

1.    Revlon is a global leader in the beauty industry. *See In re Revlon, Inc.*, No. 22-10760, Dkt. 30, at 3 (Bankr. S.D.N.Y.). When the COVID-19 pan-demic began, Revlon experienced a decline in sales because of the collapse in demand for certain cosmetic products. *See id.* at 34; Revlon Dkt. 1728, at 6-7. The company immediately launched strategic initiatives to increase demand, cut costs, and manage liquidity. *See* Revlon Dkt. 30, at 37-42; Revlon Dkt. 1728, at 7. Despite the initial success of those business-optimization efforts, however, global supply-chain disruptions and labor shortages continued to af-fect liquidity by late spring 2022. *See* Revlon Dkt. 1728, at 7-8. In June 2022, Revlon and its affiliated entities (collectively, "debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. *See* J.A. 145, 149-150.

The bankruptcy court subsequently entered a standard bar-date order, establishing the date by which claimants were required to file proofs of claim in order to share in any distributions from debtors' estates. *See* J.A. 173-174.

Although the order set October 24, 2022, as the general bar date for non-governmental claimants asserting pre-petition claims, the order extended the deadline for certain claimants asserting "personal injury claim[s] arising from a disease allegedly caused by the exposure to cosmetic talc allegedly contained in the [d]ebtors' products." J.A. 172-173. Those claims would be considered timely if filed before plan confirmation, as long as the relevant disease was diagnosed "by a licensed medical doctor for the first time" after the debtors' filing of the petitions. *Id.* As is typical, the bar-date order further stated that any claim not filed by the applicable bar date would be "forever barred, estopped[,] and enjoined," so as to provide debtors with a fresh start "from any and all indebtedness or liability with respect to [those] [c]laim[s]." J.A. 186.

After receiving approval from the bankruptcy court on the notice to be used, debtors directly mailed notices to known creditors. *See* J.A. 182-183. Debtors also published notice of the bar date in the national editions of the New York Times and USA Today in the United States on September 22, 2022, and the national edition of the Globe and Mail in Canada on September 23, 2022. *See* J.A. 184-185, 211. In relevant part, the notice stated:

> [E]ach person or entity . . . that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) that arose, or is deemed to have arisen, prior to the [p]etition [d]ate . . . no matter how remote or contingent such right to payment or equitable remedy may be (including claims for potential unmatured injuries) . . . **MUST FILE A PROOF OF CLAIM** . . . .

8

J.A. 208.

The notice identified October 24, 2022, as the general bar date by which claims must be filed and noted the "limited exception[]" for alleged talc claims "set forth" in the bar-date order. J.A. 208. The notice also explained the procedures for properly filing a proof of claim. *See* J.A. 208-209. In bold and capital typeface, the notice further warned that "any person or entity that is required to file a proof of claim . . . but that fails to do so properly by the applicable bar date, shall be forever barred, estopped[,] and enjoined from . . . asserting such claim against the debtors and their estates." J.A. 209 (emphasis omitted). In subsequent notices published in the same newspapers on later dates, debtors reiterated that the reorganization plan, if confirmed, "shall bind all [h]olders of [c]laims." J.A. 671-672, 683.

After publication of the notices, numerous individuals timely filed claims based on alleged exposure to asbestos-contaminated talc purportedly contained in debtors' products. *See* Revlon Dkt. 1710, at 36. The vast majority of those individuals ultimately voted in favor of the bankruptcy plan, and two served on the creditors' committee that helped negotiate the details of the plan. *See id.*; J.A. 1400.

2. Just days before the general bar date, researchers at the National Institutes of Health published a study suggesting that the use of hair-straightening and hair-relaxing products was potentially correlated with an increased

9

risk of certain diseases. *See In re RML, LLC*, No. 22-10784, Dkt. 1067, at 12 (Bankr. S.D.N.Y.)  In light of the novelty of the study, and ensuing complaints made in debtors' Chapter 11 cases from law firms specializing in representing personal-injury plaintiffs, debtors decided to publish notice of a supplemental bar date for hair-straightening and hair-relaxing claims in the same newspapers and on the internet. *See* J.A. 655; RML Dkt. 238, at 2-3.  The notice approved by the bankruptcy court explained that individuals asserting claims arising from debtors' "chemical hair straightening or relaxing products"—including products marketed under brands listed in the notice—needed to file a proof of claim by the supplemental bar date of April 11, 2023.  J.A. 667-668.

3.    On April 3, 2023, the bankruptcy court confirmed the debtors' third amended joint plan of reorganization. *See* J.A. 781.  The plan and confirmation order provided that, pursuant to Section 1141(d) of the Bankruptcy Code, "distributions, rights, and treatment" in the plan "shall be in complete satisfaction, discharge, and release . . . of [c]laims, [i]nterests, and [c]auses of [a]ction of any nature whatsoever . . . whether known or unknown . . . [and] whether or not . . . . a [p]roof of [c]laim based upon such debt or right [was] [f]iled."  J.A. 757, 883-884.  The plan and confirmation order "permanently enjoin[ed]" all entities holding claims discharged under the plan from "commencing or continuing in any manner any action or other proceeding of any kind" on account of such claims after the plan became effective.  J.A. 759,

889 (boldface omitted).  The plan took effect on May 2, 2023, and debtors emerged from bankruptcy.  *See* J.A. 1127.

### C.    Procedural History

1.    Claimants are individuals who allege that they were exposed to debtors' products before the filing of the bankruptcy petitions and that those products purportedly contained asbestos-contaminated talc.  J.A. 1337; RML Dkt. 1051-1, at 1-2; S.A. 2.  They further allege that they were not "diagnosed" with the relevant illness before the plan's effective date.  RML Dkt. 1051, at 1; J.A. 1368-1369.  Although claimants have asserted at times that they did not "manifest" any asbestos-related injuries before the effective date, *see*, *e.g.*, Br. 16; RML Dkt. 1051, at 1, they have not established that they lacked any relevant symptoms before that date.

Soon after the bankruptcy plan's effective date, claimants began filing lawsuits against debtors in state courts nationwide based on alleged pre-petition exposure to asbestos-contaminated talc.  *See* J.A. 1346-1355.  At the time of the underlying proceedings in this case, approximately 70 such actions were pending.  *See* J.A. 1328-1329.

Debtors moved to enforce the discharge and injunction provisions of the plan and confirmation order, explaining that enforcement was "critical to [their] reorganization process."  *See* J.A. 1325.  Claimants opposed the motion on two principal grounds.  *See* RML Dkt. 1051.  *First*, claimants argued that

11

the discharge and injunction provisions were unenforceable because the plan did not discharge their asbestos-related claims pursuant to the purportedly "mandatory" procedures set forth in Section 524(g). *See id.* at 6-9. *Second*, claimants argued that the discharge violated their due-process rights, primarily because they received only a "[v]ague publication notice[]" that did not "describe the nature of claims being discharged." *See id.* at 9-18.

2. After a hearing, the bankruptcy court granted the motion to enforce the plan's discharge and injunction provisions. *See* S.A. 1, 24.

The bankruptcy court first addressed claimants' argument based on Section 524(g). The court held that the statute's "plain language" and statutory context make clear that the Bankruptcy Code "allows but does not require" use of the procedures in Section 524(g) to discharge asbestos-related claims. S.A. 3, 10-13. Among other things, the court emphasized that Section 524(g) "refers to itself as available 'to supplement the injunctive effect of a discharge under this section,' thus suggesting that the Code's separate discharge provisions remain applicable and are 'supplemented'—not disturbed or eliminated—by the additional relief that Section 524(g) authorizes." S.A. 11 (quoting 11 U.S.C. § 524(g)(1)(A)). The court further reasoned that Section 524(g) "uses unmistakably permissive or optional language," and nothing in the statutory text or context indicates that the provision is the "exclusive or

12

mandatory way debtors must treat claims that stem from asbestos exposure." *Id.*

The bankruptcy court also held that the notice provided by debtors met the "recognized requirements of due process." S.A. 3, 14-23. As a preliminary matter, the court noted that claimants had admitted that they are "unknown creditors for purposes of due process" and thus "at most had the right to publication notice." S.A. 16-17. The court proceeded to conclude that the publication notice in this case—which "described the claims covered in broad terms that clearly encompassed [claimants' claims]"—was "[e]ffective and sufficient notice" for due process purposes. S.A. 19. The court further observed that "well-reasoned precedent" from other courts supported its decision and that claimants had not cited any contrary authority. S.A. 17-23.

3.   Claimants moved to certify the bankruptcy court's decision for direct appeal under 28 U.S.C. § 158(d)(2). *See* J.A. 1515. The bankruptcy court granted the certification, *see* J.A. 1575, and this Court subsequently accepted it, *see* C.A. No. 24-2843, Dkt. 28, at 1.

## SUMMARY OF ARGUMENT

Claimants raise two challenges to the bankruptcy plan's discharge and injunction provisions. *First*, claimants argue that the Bankruptcy Code requires debtors to use the extensive procedures in 11 U.S.C. § 524(g)—rather than the general discharge authorities contained in the Code—to discharge

claims involving undiagnosed asbestos-related injuries. *Second*, claimants argue that the bankruptcy plan violated due process because debtors provided insufficient notice and failed to use the procedures in Section 524(g). Both arguments lack merit. The bankruptcy court's order enforcing the plan's discharge and injunction provisions should be affirmed.

I. The bankruptcy court correctly held that claims involving undiagnosed asbestos-related injuries may be discharged using the Code's general discharge procedures, rather than the special procedures in Section 524(g). By its plain terms, Section 524(g) provides optional procedures that supplement those elsewhere in the Code. Nothing in the statute suggests that it is the exclusive or mandatory means in Chapter 11 for discharging asbestos-related claims. Section 524(g)'s statutory context and history reinforce that reading, especially because Congress enacted a rule of construction stating that Section 524(g) should not be read to "modify, impair, or supersede" other authorities in the Code. And that reading also makes practical sense, because Section 524(g) comes with both costs and benefits for debtors.

Claimants' contrary interpretation rests primarily on the flawed premise that bankruptcy courts would lack the authority to enjoin claims involving undiagnosed asbestos-related injuries absent Section 524(g). But claimants offer no support for that view, and it is plainly incorrect given that they con-

14

cede that their injuries qualify as "claims" under the Bankruptcy Code. Claimants' remaining arguments likewise lack merit and ignore key components of Section 524(g) and its surrounding context.

II.     The bankruptcy court also correctly held that the bankruptcy plan satisfied due process. Debtors published notice of the bankruptcy proceedings in several national publications, and those notices clearly described the broad scope of the plan and the need for potential creditors to file proofs of claim in the proceedings. Courts have long recognized that such notice satisfies due process for individuals, such as claimants, who were "unknown" at the time of the bankruptcy proceedings. Although claimants quibble with various aspects of the notice, their arguments conflict with decisions from courts around the country as well as common sense.

In any event, in addition to the due process provided by the notice itself, claimants also have access to post-confirmation process in that they may seek to establish excusable neglect so as to be allowed to file claims in the bankruptcy proceedings. That additional process readily resolves claimants' facial challenge to the bankruptcy plan and shows that any due-process objection may be addressed through an as-applied challenge in the post-confirmation proceedings. Claimants' contrary assertion that debtors are constitutionally required to comply with all or some of the procedures in Section 524(g) lacks

support in precedent, raises numerous line-drawing problems, and risks systemic disruptions to the bankruptcy system.

## ARGUMENT

## I. THE BANKRUPTCY COURT CORRECTLY HELD THAT CLAIMS INVOLVING UNDIAGNOSED ASBESTOS-RELATED INJURIES MAY BE DISCHARGED WITHOUT USING THE PROCEDURES IN SECTION 524(g)

Claimants first argue that the Bankruptcy Code requires debtors to use the procedures in Section 524(g)—rather than the Code's general discharge procedures—to discharge claims involving undiagnosed asbestos-related injuries. But as the bankruptcy court correctly held, nothing in Section 524(g) or the rest of the Bankruptcy Code indicates that the statute provides the exclusive means for discharging such claims. Claimants offer no persuasive argument to the contrary.

### A. Section 524(g) Does Not Override The Bankruptcy Code's General Discharge Provisions

The statutory text, context, and history all demonstrate that Section 524(g) creates an optional procedure for obtaining certain additional relief beyond an ordinary discharge from asbestos-related liabilities. That interpretation makes practical sense, because the additional benefits provided by a supplemental injunction under Section 524(g) come with additional costs for the debtor. The bankruptcy court correctly adopted that interpretation, and its order should be affirmed.

16

1.  The "interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." *Ransom* v. *FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011) (internal quotation marks and citation omitted). Section 524(g) states in relevant part that "a court that enters an order confirming a plan of reorganization under [C]hapter 11 *may* issue, in connection with such order, an injunction in accordance with this subsection *to supplement* the injunctive effect of a discharge under" Section 524 with respect to certain claims and demands relating to asbestos exposure. 11 U.S.C. § 524(g)(1) (emphases added); *see* 11 U.S.C. § 524(g)(2)(B)(i)(I).

The plain language of that provision makes clear that Section 524(g) merely "supplement[s]"—that is, "add[s] something to"—the general discharge provisions of the Bankruptcy Code; it does not "disturb[] or eliminate[]" those provisions. *Webster's Third New International Dictionary* 2297 (2002); S.A. 10-11; *see, e.g.*, *Black's Law Dictionary* 1452 (7th ed. 1999). Section 524(g) also uses "unmistakably permissive or optional language"—stating that a court "may" issue an injunction—and it does not otherwise prohibit courts from enjoining claims involving undiagnosed asbestos-related injuries. S.A. 11; *see, e.g.*, *Rudisill* v. *McDonough*, 601 U.S. 294, 310 (2024). As the bankruptcy court explained, nothing in the text of Section 524(g) states that it establishes the "exclusive or mandatory" process in the Bankruptcy Code for resolving such claims. S.A. 11.

17

2.     Statutory context bolsters that straightforward reading.   When Congress enacted Section 524(g), it included a "[r]ule of [c]onstruction" stating that the provision shall not "be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of reorganization."  11 U.S.C. 524 note.  But construing Section 524(g) to establish the exclusive process for discharging claims involving undiagnosed asbestos-related injuries would plainly "modify, impair, or supersede . . . other authorit[ies]" conferred on bankruptcy courts to discharge such claims.  That is especially clear given that the other authorities long predate the enactment of Section 524(g).  *See* 11 U.S.C. §§ 524(a), 1141(d) (1982).  Indeed, even absent Congress's express rule of construction, the presumption against implied repeals would counsel against interpreting Section 524(g) as limiting preexisting authorities under the Code.  *See*, *e.g.*, *National Association of Home Builders* v. *Defenders of Wildlife*, 551 U.S. 644, 662 (2007).

What is more, the Bankruptcy Code already contains various exceptions to, and limitations on, a bankruptcy court's authority to discharge debts.  *See*, *e.g.*, 11 U.S.C. §§ 524(b), 1141(d)(2)-(6).  But none of those provisions refers to Section 524(g) or asbestos-related claims.  Those detailed provisions "confirm[] that courts are not authorized to create additional exceptions."  *Law* v. *Siegel*, 571 U.S. 415, 424 (2014); *see also Federal Communications Commission* v. *NextWave Personal Communications Inc.*, 537 U.S. 293, 303 (2003).

18

3.     Because the language of Section 524(g) is clear, this Court need not consider its legislative history.  *See*, *e.g.*, *Arciniaga* v. *General Motors Corp.*, 460 F.3d 231, 236 (2d Cir. 2006).  But to the extent that the Court does, the history reinforces that the statute merely provides optional procedures that supplement other procedures set out in the Bankruptcy Code.  For example, the House Report accompanying the 1994 legislation noted that the "asbestos trust/injunction mechanism established in the bill [was] *available* for use by any asbestos company facing a similarly overwhelming liability."  H.R. Rep. No. 835, 103d Cong., 2d Sess. 41 (1994) (emphasis added).  Members of Congress further explained that Section 524(g) was meant "to supplement the existing injunctive effect of Section 524 of the Code in asbestos-related Chapter 11 reorganizations," 140 Cong. Rec. 28,358 (1994) (Sen. Heflin), and was "not intended to alter any authority bankruptcy courts may already have to issue injunctions in connection with a plan of reorganization," 140 Cong. Rec. 27,692 (1994) (Rep. Brooks).  There is no evidence that Congress viewed Section 524(g) as establishing the exclusive or mandatory process in Chapter 11 for discharging asbestos-related claims.

4.     It makes sense that Congress would not require debtors to comply with Section 524(g) in cases involving asbestos-related liability, because compliance with Section 524(g) comes with both costs and benefits for debtors.  The provision contains "extensive" and "special" requirements—such as the

19

creation of a trust with specific funding and voting requirements and a showing of the threat posed by future potential asbestos-related suits—that debtors in the midst of bankruptcy proceedings might find challenging to satisfy. *See In re Plant Insulation Co.*, 734 F.3d 900, 906 (9th Cir. 2013); *In re Quigley Co.*, 676 F.3d 45, 59 & n.16 (2d Cir. 2012).

At the same time, Section 524(g) offers at least two distinct benefits for debtors by allowing them to obtain broader relief against asbestos-related claims than would otherwise be available under the other provisions of the Bankruptcy Code. *First*, the provision allows debtors to obtain injunctions that cover not only "claims," *see* 11 U.S.C. § 101(5), but also future "demands" from those first exposed to asbestos *after* the bankruptcy proceedings, *see* 11 U.S.C. § 524(g)(5); *In re W.R. Grace & Co.*, 729 F.3d 311, 321-323 (3d Cir. 2013); 4 *Collier on Bankruptcy* ¶ 524.07, at 524-69 to -70 (16th ed. 2025); *cf. In re Motors Liquidation Co.*, 829 F.3d 135, 157-158 (2d Cir. 2016) (holding that causes of action based on post-petition conduct and contacts do not qualify as "claims" under the Bankruptcy Code). *Second*, Section 524(g) is unique in that it "authorize[s] courts to enjoin claims against third parties" who have not themselves declared bankruptcy "without [the creditor's] consent." *Harrington* v. *Purdue Pharma L.P.*, 603 U.S. 204, 222 (2024); 4 *Collier on Bankruptcy* ¶ 524.07, at 524-69. As the Supreme Court recently made clear, bankruptcy

20

courts lack the authority to enjoin such third-party claims under the Code's general discharge provisions. *See Harrington*, 603 U.S. at 222.

Correctly understood, therefore, Section 524(g) provides a debtor in bankruptcy proceedings with a choice. A debtor can seek to cut off all future liability for asbestos-related claims for itself and related third parties—including demands arising from post-confirmation exposure to the debtor's products—but the debtor must provide the additional safeguards that Congress mandated as a condition of such broad relief. Nothing in Section 524(g) or the broader Bankruptcy Code suggests that a debtor that does not need the additional benefits provided by that provision must nevertheless take on the additional costs it imposes.

### B. Claimants' Contrary Arguments Lack Merit

Claimants argue that Section 524(g) establishes the exclusive and required process in Chapter 11 to address claims involving undiagnosed asbestos-related injuries. *See* Br. of Appellants 21-39. But they have no meaningful response to many of the arguments mentioned above, and the arguments they do make are unavailing.

1.   The central flaw with claimants' position is that it rests on a faulty premise: namely, that bankruptcy courts would lack the statutory authority to enjoin claims involving undiagnosed asbestos-related injuries absent Section 524(g). That premise runs throughout claimants' brief—right from the

question presented to the final paragraph addressing Section 524(g). *See, e.g.*, Br. 4, 39. Indeed, claimants' sole response to the problem that their reading of Section 524(g) would "modify, impair, or supersede" other authorities conferred by the Bankruptcy Code is to say that it "begs the question and assumes that courts possessed this authority before § 524(g)'s enactment." Br. 39. Claimants go so far as to call the possibility of courts having such authority "unthinkable." Br. 11, 39. But claimants provide no support for their position, and it is plainly incorrect.

It is undisputed that the Bankruptcy Code's general discharge provisions have long authorized bankruptcy courts to discharge "claims," broadly defined. *See* pp. 3-4, *supra*. Claimants do not dispute that they hold "claims" under the Bankruptcy Code, because alleged pre-petition exposure to asbestos satisfies the Code's definition of a "claim" even if a claimant had not yet been diagnosed or manifested injuries at the time of the bankruptcy. *See, e.g.*, Br. of Appellants 16, 21-39; S.A. 2, 9-10; J.A. 1571; *see also In re Johns-Manville Corp.*, No. 20-3693, 2022 WL 4487889, at *3 (2d Cir. Sept. 28, 2022); *In re Grossman's Inc.*, 607 F.3d 114, 122-126 (3d Cir. 2010) (en banc). That is because the Bankruptcy Code expansively defines the term "claim" to include even "unliquidated," "contingent," and "unmatured" rights to payment. 11 U.S.C. § 101(5). It necessarily follows that a bankruptcy court may use the general discharge provisions to discharge asbestos-related "claims," unless

some statute creates an "exception" to those provisions. *See* S.A. 2-3. Claimants provide no authority or meaningful explanation for their contrary interpretation, under which a court would have lacked the authority to discharge claims involving undiagnosed asbestos-related injuries before the enactment of Section 524(g).

In reality, even claimants do not appear to believe fully in their position. At other points in their brief, they argue that Section 524(g) "*override[s]* the more general discharge provisions in the Bankruptcy Code" and creates an "*exception* to the [C]ode's general rules." Br. 24-25 (emphasis added; citation omitted). But as already explained, *see* p. 18, such an argument runs headlong into Section 524(g)'s rule of construction by reading the statute as "modify[ing], impair[ing], or supersed[ing]" other authorities conferred by the Bankruptcy Code.

Precedent confirms what the foregoing logic demands. Numerous courts have recognized that the Bankruptcy Code's general discharge provisions can apply to claims involving undiagnosed asbestos-related injuries where Section 524(g)'s requirements could not be satisfied—for example, where the debtor had not yet been named in an asbestos-related lawsuit. *See, e.g., In re Placid Oil Co.*, 753 F.3d 151, 153, 158 n.7 (5th Cir. 2014); *Grossman's*, 607 F.3d at 122, 125, 127 n.13; *In re Chateaugay Corp.*, No. 86-11270, 2009 WL

367490, at \*5-\*6 (Bankr. S.D.N.Y. Jan. 14, 2009). Claimants attempt to distinguish those decisions by suggesting that Section 524(g) provides the exclusive means for discharging asbestos-related liability only where the debtor is aware that some asbestos-related claims have already been filed against it. *See* Br. 30 n.9. But claimants offer no support for that distinction. The Bankruptcy Code broadly allows a bankruptcy court to discharge "claims," and claimants identify nothing in the Code to suggest that a bankruptcy court's discharge authority turns on whether the debtor is aware that a general category of claims against it exists. Such a view also would conflict with numerous decisions recognizing that courts may use the Code's general discharge provisions to discharge claims from "unknown" creditors. *See* pp. 30-31, 32-33, *infra*.

In passing, claimants suggest (Br. 31) that Section 524(h) may indicate that Congress was uncertain as to whether bankruptcy courts had the authority to discharge asbestos-related claims before the enactment of Section 524(g). But that provision reflects the fact that Section 524(g) codifies *other* "novel and extraordinary power[s]" that go beyond the general discharge provisions—namely, the power to discharge both "claims against third parties without claimants' consent" and interests that do not qualify as "claims" under the Bankruptcy Code. *Harrington*, 603 U.S. at 222; pp. 20-21, *supra*. There is no indication that Congress doubted the authority of bankruptcy courts to

24

enjoin ordinary "claims" against the debtors themselves, and any such doubt would have been unfounded.

In sum, claimants have no response to the fact that their reading of Section 524(g) would "modify, impair, or supersede" other authorities conferred by the Bankruptcy Code.  This Court should reject their argument for that reason alone.

2.    Claimants' other textual arguments fare little better.  Claimants argue that Section 524(g)'s use of the word "may" is best read as "limit[ing] the circumstances" under which a bankruptcy court "can grant . . . relief" and as "confer[ring] optionality on bankruptcy courts—not debtors."  Br. 27-30, 35-36.  But even on that reading, Section 524(g) limits only the circumstances under which a court may grant the specific type of relief *authorized by that provision*.  For example, a bankruptcy court may discharge asbestos-related claims against third parties, and future asbestos-related "demands," only when the debtor complies with the procedures in Section 524(g).  *See* pp. 20-21, *supra*.  That is correct as far as it goes, but it does not show that Section 524(g) limits the circumstances under which a court may discharge standard asbestos-related claims against a debtor pursuant to *other provisions* of the Bankruptcy Code.

Claimants also argue that, if bankruptcy courts already had the authority to discharge asbestos-related claims based on undiagnosed illnesses before

Congress enacted Section 524(g), then Section 524(g) would be a "nullity" and "pure superfluity." Br. 25, 36-39. But in so arguing, claimants entirely ignore that Section 524(g) authorizes the discharge of not only "claims" that exist at the time of filing, but also future "demands"—which includes future causes of action arising from post-confirmation exposure to the debtor's preexisting asbestos-containing products. *See* 11 U.S.C. § 524(g)(1), (g)(5); pp. 20-21, *supra*. Confusingly, claimants also dismiss the ability to discharge claims against third parties under Section 524(g) as an "optional component" of the statute. Br. 37-38. Regardless, those two aspects of Section 524(g) show that Section 524(g) and the general discharge provisions are "meaningfully different," even if they contain some overlap. *Husky International Electronics, Inc.* v. *Ritz*, 578 U.S. 355, 364 (2016). And even if Section 524(g) were somewhat redundant of preexisting Code provisions, that is not dispositive, because "[s]ometimes the better overall reading of the statute contains some redundancy." *Barton* v. *Barr*, 590 U.S. 222, 239 (2020) (citation omitted); *see, e.g.*, *Lamie* v. *United States Trustee*, 540 U.S. 526, 536 (2004).

Claimants invoke the canon of construction that specific provisions often control over more general ones, arguing that the "specific asbestos provisions" in Section 524(g) should "override the more general discharge provisions in the Bankruptcy Code." Br. 24-25, 38. But as their own authority recognizes,

that canon "is not an absolute rule" and "can be overcome by textual indications that point in the other direction." *RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U.S. 639, 646-647 (2012). Here, Section 524(g)'s own rule of construction emphatically points in the other direction by making clear that Section 524(g) should *not* be read to "override" other authorities in the Bankruptcy Code. *See* 11 U.S.C. 524 note. The same is true of the rest of Section 524(g)'s text, context, and history, foreclosing any application of the specific/general canon of construction in this case. *See, e.g.*, *In re Piazza*, 719 F.3d 1253, 1267-1268 (11th Cir. 2013); *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 307 (3d Cir. 2010); pp. 16-19, *supra*.

3. Claimants next cite snippets of Section 524(g)'s legislative history. *See* Br. 31-33. There is no need for the Court to consider legislative history here because the statutory text is clear. *See* p. 19, *supra*. In any event, the limited legislative history cited by claimants says nothing about whether Section 524(g) is mandatory or exclusive. Notably, claimants repeatedly provide their own gloss on that history by adding phrases such as "only if" and "must" that appear nowhere in the history itself. *See* Br. 32. And to the extent the history favors either side here, it favors debtors. *See* p. 19, *supra*.

4. Finally as to Section 524(g), claimants invoke the statute's alleged purpose and more general policy concerns. *See* Br. 26-27, 33-35. But as the

Supreme Court has frequently reiterated, no statute "pursues its stated purpose at all costs," making it "quite mistaken to assume . . . that whatever might appear to further the statute's primary objective must be the law." *Henson* v. *Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (internal quotation marks, citations, and alterations omitted). Courts thus have no authority to "rewrite" a statute based on purported "policy concern[s]." *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019).

What is more, the Bankruptcy Code seeks "a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate" for all creditors. *Truck Insurance Exchange* v. *Kaiser Gypsum Co.*, 602 U.S. 268, 272 (2024) (citation omitted). In enacting Section 524(g) as an optional mechanism, Congress simply recognized that sometimes those interests would not be served by requiring debtors to spend their limited time and resources complying with the provision's elaborate procedures.

Claimants are incorrect to assert that the bankruptcy plan in this case did not "treat future and current claimants equitably." Br. 34-35. The bankruptcy court found in approving the plan that it generally provided for the same treatment of each claim or interest within a class, including claims involving asbestos-related injuries. *See* J.A. 699, 711. And even if claimants

28

were correct, their policy complaints provide no basis to depart from the plain meaning of the Bankruptcy Code.

*    *    *    *    *

Section 524(g) provides one option for debtors to address claims involving asbestos-related injuries. The general discharge provisions in Sections 524(a) and 1141(d) provide another. The bankruptcy court correctly concluded that nothing in Section 524(g) "override[s] or defeat[s] a debtor's ability to secure a discharge of asbestos-related liabilities as against the debtor under th[ose] more general provisions." S.A. 13 (emphasis omitted).

## II. THE BANKRUPTCY COURT CORRECTLY HELD THAT THE BANKRUPTCY PLAN SATISFIED DUE PROCESS

Claimants further argue that the bankruptcy plan violated due process by discharging their claims without providing sufficient notice or otherwise protecting their interests. Specifically, they contend that the notice provided in this case was inadequate, primarily because it failed to mention "talc" or "asbestos"; and that due process categorically prohibits the discharge of claims involving undiagnosed asbestos-related injuries outside the procedures set out in Section 524(g). The bankruptcy court held that the plan satisfied due process, recognizing that claimants' arguments could have "systemic" and "profound effects on well-established bankruptcy practices and on the effectiveness of discharge orders." J.A. 1572-1573. That holding was correct and should be affirmed.

29

## A.    The Notice In This Case Satisfied Due Process

To begin with, claimants, joined by their amici, argue that the particular notice provided in this case was insufficient to satisfy due process. *See* Br. of Appellants 44-48; AAJ Br. 10-15; FCR Br. 13-19, 22-24. It is undisputed that claimants were "unknown" creditors entitled only to publication notice and that debtors published notice of both the bar date and confirmation hearing in several national newspapers. As the bankruptcy court held, those notices plainly satisfy due process, and claimants' contrary arguments lack merit.

1.    To discharge claims in bankruptcy, a debtor must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Motors Liquidation*, 829 F.3d at 158 (quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In determining the type of notice required, courts have long distinguished between "known" and "unknown" creditors. *See, e.g., DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014); *Chemetron Corp.* v. *Jones*, 72 F.3d 341, 345 (3d Cir. 1995). Although known (or reasonably ascertainable) creditors are entitled to actual notice, unknown creditors are entitled at most to constructive notice—for instance, through publication in national newspapers. *See, e.g., Motors Liquidation*, 829 F.3d at 146, 159; *Chemetron*, 72 F.3d

30

at 348-349; *In re SVB Financial Group*, 660 B.R. 60, 85 (Bankr. S.D.N.Y. 2024).

Claimants do not dispute that they were unknown creditors. *See* Br. 44-48; J.A. 1416; S.A. 16-17. They also do not contest the nature of the notice provided in this case. With the bankruptcy court's approval, debtors published notice of the bar date in the national editions of the New York Times and USA Today in the United States and the national edition of the Globe and Mail in Canada. *See* J.A. 184-185. Those notices explained the broad scope of the bankruptcy plan and the need to file proofs of claim. *See* J.A. 208-209. In addition, their "plain language"—which covered all persons holding claims "no matter how remote or contingent such right to payment or equitable remedy may be (including claims for potential unmatured injuries)"—"clearly encompassed" claims involving undiagnosed asbestos-related injuries. *See* S.A. 19-21. Debtors also subsequently published notice of the confirmation hearing in the same newspapers; those notices reiterated that the reorganization plan would bind all holders of claims. *See* J.A. 671-672, 683. As the bankruptcy court correctly explained, the notice provided in this case readily satisfied due process. *See* S.A. 14-23.

2.    Claimants primarily argue (Br. 47-48) that the notices were inadequate because they did not specifically refer to claims based on "talc," "asbestos," or the particular brands at issue. But neither claimants nor their

amici cite any decision holding that a bankruptcy notice must refer to specific claims in order to satisfy due process, and there are numerous decisions to the contrary.

For example, in *Placid Oil*, *supra*, a family challenged the notice provided by a bankruptcy plan when the affected family member was not diagnosed with asbestos-related lung cancer until 15 years after plan confirmation. *See* 753 F.3d at 153. Among other things, the family argued that the publication notice of the bar date was insufficient as a matter of due process because it did not specifically "mention[] potential asbestos claims." *Id.* at 158. The Fifth Circuit rejected that argument, explaining that it had "never required bar date notices to contain information about specific potential claims" and that it would not "articulate a new rule that would require more specific notice for unknown, potential asbestos claimants." *Id.*

Other courts of appeals—as well as numerous district and bankruptcy courts—have likewise held that bankruptcy notices need not describe the "character" or "nature" of particular claims, even if the claimant would not have known about the claims at the time of the bankruptcy proceedings. *See, e.g., Dahlin* v. *Lyondell Chemical Co.*, 881 F.3d 599, 602, 605 (8th Cir. 2018); *In re Penn Central Transportation Co.*, 771 F.2d 762, 767-769 (3d Cir. 1985); *In re Chemtura Corp.*, No. 09-11233, 2016 WL 11651714, *14-*15 (Bankr. S.D.N.Y. Nov. 23, 2016); *Conway Hospital, Inc.* v. *Lehman Brothers Holdings*

*Inc.*, 531 B.R. 339, 344 (S.D.N.Y. 2015); *In re Jamesway Corp.*, No. 95-44821, 1997 WL 327105, at \*9 (Bankr. S.D.N.Y. June 12, 1997); *In re Envirodyne Industries, Inc.*, 214 B.R. 338, 349 (N.D. Ill. 1997); *In re Amdura Corp.*, 170 B.R. 445, 452-453 (D. Colo. 1994). Instead, it suffices for the notice to contain broad language that places the parties "on notice of the opportunity to assert claims (and even potential claims)" against the debtor. *Chemtura*, 2016 WL 11651714, at \*15. As the bankruptcy court here concluded, the notices in this case readily clear that bar. *See* S.A. 21.

In challenging the notice provided, claimants conspicuously ignore those decisions, even though many of them were previously cited by the bankruptcy court and debtors. *See*, *e.g.*, S.A. 17-19; C.A. No. 24-2843, Dkt. 16.1, at 16-17. Meanwhile, one of their amici attempts to distinguish some of the decisions on the ground that the debtors in those cases "had no reason to know that future claimants existed at the time of plan confirmation." FCR Br. 14-17. In those decisions, however, the debtors had reason to know of potential claims, even if they did not have reason to know of the particular claims at issue. *See Placid Oil*, 753 F.3d at 153, 157; *Chemtura*, 2016 WL 11651714, at \*12-\*13. In any event, amici do not point to anything in the decisions indicating that the debtors' lack of knowledge of the claims had any bearing on the appropriate *contents* of the notices. The debtor's knowledge affected at most whether the

creditors were "known" or "unknown," and it is undisputed in this case that claimants were unknown.

Claimants and their amici also fail to cite any decisions counseling a different outcome. *See* Br. of Appellants 44-48; AAJ Br. 10-15; FCR Br. 13-19, 22-24. Instead, they cite a fact-bound decision holding that, "[u]nder the unique circumstances of [the] case," an insurer received insufficient notice of bankruptcy proceedings where (as even the opposing party acknowledged) the claims were "unimaginable" at the time of the original proceedings. *In re Johns-Manville Corp.*, 600 F.3d 135, 151, 157 (2d Cir. 2010); *see* S.A. 20-21. Claimants and their amici also cite decisions questioning whether sufficient notice can ever be provided to asbestos claimants whose injuries have not yet manifested. *See, e.g., Stephenson* v. *Dow Chemical Co.*, 273 F.3d 249, 261 n.8 (2d Cir. 2001), *vacated in part*, 539 U.S. 111 (2003). But none of those decisions comes close to holding that a bankruptcy notice must identify the particular claims at issue in order to satisfy due process.

3.     In passing, claimants and one of their amici suggest that the notice was published in too few publications or for too few days. *See* Br. of Appellants 48; AAJ Br. 10-12. But both the notice of the bar date and the notice of the confirmation hearing were published in three national publications, and courts have frequently found that similar amounts of notice were sufficient for due process purposes. *See, e.g., In re Ditech Holding Corp.*, No. 24-1106, 2025 WL

34

783639, at *2 (2d Cir. Mar. 12, 2025) (two publications for one day); *Placid Oil*, 753 F.3d at 153, 158 (one publication for three days); *SVB Financial Group*, 660 B.R. at 69, 85 (two publications for one day); *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 438, 445 (Bankr. S.D.N.Y. 1991) (three publications for one day each). Claimants cite a decision in the class-action context holding that a "single notice published in a single publication" failed to satisfy due process where no class members even "responded to the notice." *Hecht* v. *United Collection Bureau, Inc.*, 691 F.3d 218, 224-225 (2d Cir. 2012). But even assuming that the Court adopted a blanket rule there that a single notice published for a single day is inadequate, debtors provided more notice in this case, and numerous parties asserting talc-related claims proceeded to submit proofs of claim in the bankruptcy proceedings. *See* p. 9, *supra*.

Claimants and their amici offer even less support for their stray assertion that the notices were allegedly placed in "obscure locations"—that is, at the end of the news or business sections of the relevant newspapers. Br. of Appellants 48; AAJ Br. 11. They cite no authority for the proposition that such placement raises constitutional concerns, much less explain where they believe the notices should have been placed. There is no reason to think that the Constitution imposes such micromanagement on the bankruptcy process.

4.     Claimants' proposed notice requirements not only conflict with precedent but also make little practical sense. After all, claimants themselves

argue that notice to individuals with undiagnosed asbestos-related injuries is "impossible" or at a minimum requires "extraordinary efforts." Br. 41; *see also* pp. 43-44, *infra*. To the extent that claimants wanted the notices simply to mention the words "talc" or "asbestos," or to be published in a few more newspapers, they do not explain how that would have provided meaningfully more notice to such claimants. And to the extent that claimants wanted the notices to include elaborate descriptions of potential claims, or to be published through a top-of-the-line advertising campaign, they do not explain how or why the Constitution would mandate such "extraordinary efforts." To the contrary, the Supreme Court has long rejected the notion that "extended" efforts must be made to provide notice to unknown creditors "in the name of due process." *Mullane*, 339 U.S. at 317-318.

Importantly, claimants' proposed requirements would impose real costs of their own. For example, courts have often noted concerns about legal notices being too "dense," "voluminous," or "legalistic," which can lead to reader confusion. *See, e.g.*, *In re Purdue Pharma L.P.*, 69 F.4th 45, 83 (2d Cir. 2023), *rev'd on other grounds*, 603 U.S. 204; *Hood* v. *Ryobi America Corp.*, 181 F.3d 608, 611 (4th Cir. 1999); *Walters* v. *Reno*, 145 F.3d 1032, 1038, 1042 (9th Cir. 1998); *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104 (5th Cir. 1977). But taking claimants' view to its logical endpoint, debtors would be required to create voluminous notices with detailed descriptions not only of

undiagnosed asbestos-related injuries, but also of *any other* claims involving injuries that have not been recognized by the time of the bankruptcy. Such a regime would likely do more to undermine due process in bankruptcy proceedings than to promote it.

In addition, the resources of a bankruptcy estate are "always limited," so courts have long recognized that bankruptcy judges must use their discretion to balance the "needs of notification of potential claimants with the interest of existing creditors and claimants . . . when deciding how much to spend on notification." *Vancouver Women's Health Collective Society* v. *A.H. Robins Co.*, 820 F.2d 1359, 1364 (4th Cir. 1987). Claimants' proposed approach would disrupt that balance, requiring debtors to engage in "extraordinary" and costly notice efforts—such as identifying every possible group of individuals with unknown claims and paying for an elaborate notice regime—even if the benefits of the additional notice are unclear. Neither precedent nor common sense supports that result.

5. Finally as to the notices, claimants and one of their amici point to the additional notice provided for certain hair-straightener and hair-relaxer claimants. *See* Br. of Appellants 48; AAJ Br. 12-13. But debtors provided that additional notice because of the novelty of the claims at issue and the fact that a study about them was published days before the bar date. *See* RML Dkt. 1067, at 12. By contrast, claimants themselves have argued here that the

harms associated with asbestos in general—and the allegations concerning talc products in particular—have long been known. *See, e.g.*, Br. of Appellants 6-9, 12-13. And as the bankruptcy court recognized in any event, the additional notice "exceed[ed] the minimum requirements of due process." 657 B.R. 709, 721 (Bankr. S.D.N.Y. 2023). The fact that a party "go[es] beyond the requirements of due process" in particular circumstances "does not alter [the] due process analysis" in general. *Jones* v. *United States*, 121 F.3d 1327, 1332 (9th Cir. 1997).

The bankruptcy court correctly held that the notice in this case satisfied due process. That holding should be upheld.

## B. Due Process Does Not Require Debtors To Use The Procedures In Section 524(g)

Claimants and their amici also argue that due process categorically prohibits the discharge of claims involving undiagnosed asbestos-related injuries unless the debtor uses at least some of the procedures in Section 524(g). *See* Br. of Appellants 41-44; AAJ Br. 15-18; FCR Br. 6-12, 19-24. But the pre-confirmation notice and post-confirmation process provided to claimants foreclose their categorical challenge. Any contrary holding would have drastic implications for the bankruptcy system more generally.[*]

---

[*] In a two-sentence parenthetical, claimants assert that discharging their claims would violate their right to a jury trial. Br. 41. That argument is forfeited because claimants did not raise it below or adequately brief it on appeal.

1.     Claimants received publication notice before confirmation of the bankruptcy plan, and they may avail themselves of additional process even after confirmation by seeking to establish excusable neglect for their late-filed claims.  Claimants cite no authority clearly holding that such procedures are insufficient to satisfy due process.

a.     As already explained, *see* pp. 30-38, debtors provided constitutionally sufficient notice through publication of the bar date and confirmation hearing in several national newspapers.  In cases involving unmanifested or undiagnosed injuries from asbestos or other toxins, courts have recognized that such pre-confirmation notice can satisfy due process.  *See*, *e.g.*, *Placid Oil*, 753 F.3d at 153, 158; *Dahlin*, 881 F.3d at 602, 604, 607; *Chemtura*, 2016 WL 11651714, at *13-*15.

Claimants and their amici argue that pre-confirmation notice cannot suffice for individuals with undiagnosed asbestos-related injuries because, even if those individuals had read the notices, they would not have appreciated their significance.  *See* Br. of Appellants 41-42; AAJ Br. 13-15.  As a preliminary

---

*See In re Nordlicht*, 115 F.4th 90, 114 (2d Cir. 2024).  In any event, claimants fail to cite any support for their assertion that bankruptcy courts violate the Seventh Amendment when they discharge legal claims through the bankruptcy process. *Cf. In re Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991) (noting that a "bankruptcy discharge and questions concerning the dischargeability of certain debts[] involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity" (citation omitted)).

matter, the premise of that argument is questionable: for example, there is little reason to think that claimants who knew that they used debtors' products, knew that others had filed lawsuits against debtors based on alleged asbestos contamination, and read notices that debtors had entered bankruptcy would fail to appreciate the significance of those notices. That alone should dispose of their categorical challenge.

In any event, the Supreme Court has long held that due process is not a categorical bar to "a final decree foreclosing" the rights of "unknown" persons even if the "means of notification" is "probably futile." *Mullane*, 339 U.S. at 317. That is so "[h]owever great the odds" that the notice will "reach the eyes of such unknown parties." *Id.* In many (if not all) bankruptcy cases, individuals have their claims discharged even where they never actually read, let alone appreciated, notice of the bankruptcy proceedings. Claimants provide no reason why they should be treated differently for purposes of due process.

b. Even assuming that pre-confirmation notice is alone insufficient to satisfy due process, claimants also have access to post-confirmation process. In particular, under Bankruptcy Rules 3003(c)(3) and 9006(b)(1), they may seek to file their claims after the bar date by showing "excusable neglect." *See In re Enron Corp.*, 419 F.3d 115, 121-123 (2d Cir. 2005); *see also* RML Dkt. 1067, at 16; J.A. 1382-1383, 1400, 1412-1413. The Third Circuit has relied on such post-confirmation procedures to reject a facial due-process challenge to

40

a confirmation order brought by individuals with unmanifested asbestos-related injuries. *See In re Energy Future Holdings Corp*, 949 F.3d 806, 822-825 (2020). And the availability of those procedures shows that any due-process objection is better resolved through an as-applied challenge in the post-confirmation process during which individuals may argue, based on their particular circumstances, that they can establish excusable neglect or will otherwise be deprived of due process. *See id*. at 823-824 & n.10; *see also*, *e.g.*, *RML*, 657 B.R. at 720-729; *In re Energy Future Holdings Corp.*, 619 B.R. 99, 108-119 (Bankr. D. Del. 2020).

Claimants notably bury their discussion of the Third Circuit's decision in *Energy Future Holdings* in a footnote, arguing that it is "far from clear" that such post-confirmation process is sufficient where the system "established for paying asbestos claims is of only limited duration" and "not funded adequately." Br. 36 n.10. But claimants do not explain how the bankruptcy plan provides too little time or funding to pay adequate compensation to those entitled to it. Nor do they contend that, if they had pursued the post-confirmation pathway rather than this collateral litigation, their claims would not have been paid if they ultimately prevailed on the merits. In any event, if those purported problems were to arise, the bankruptcy court would be able to address them at that time. There is no basis to hold that the bankruptcy plan

categorically fails to provide due process to individuals with undiagnosed asbestos-related injuries.

Claimants also suggest that the Third Circuit did not fully resolve the constitutional issue, because the court held that it was statutorily barred from determining whether the debtor was required to establish the equivalent of a Section 524(g) trust. Br. 36 n.10 (quoting *Energy Future Holdings*, 949 F.3d at 821). But the Third Circuit nevertheless concluded that the combination of pre-confirmation notice and post-confirmation process satisfied due process. *Energy Future Holdings*, 949 F.3d at 822-825. And the court expressed skepticism that the claimants were entitled to further "predeprivation process," because, at the time of the bankruptcy proceedings, they were "unknown . . . even to themselves." *Id.* at 821 n.9 (internal quotation marks and citation omitted).

Amici's additional arguments are no more persuasive. One amicus brief asserts that the bankruptcy plan in this case provides "no post-bankruptcy mechanism for hearing future claimants" and repeatedly cites *Energy Future Holdings*. *See* AAJ Br. 15-18. But that brief omits any discussion of the very post-confirmation process described at length in the Third Circuit's decision. *See id.* The other amicus brief seeks to distinguish *Energy Future Holdings* on the ground that the debtor in that case provided more pre-confirmation notice and included more detail in its bankruptcy plan on the filing of late claims

42

than the plan here. *See* FCR Br. 17-19. But insofar as that debtor provided meaningfully more notice, it went well beyond the constitutional minimum. *See* pp. 37-38, *supra.* And to the extent that any meaningful differences arise between the post-confirmation process in this case and the post-confirmation process provided in *Energy Future Holdings*, those differences could be addressed if or when they arise.

2.   Claimants and their amici further argue that debtors were required to use at least some of the procedures in Section 524(g) in order to satisfy due process. *See* Br. of Appellants 41-44; AAJ Br. 15-18; FCR Br. 6-12, 19-24. But as this Court recently recognized, there is no authority holding that the appointment of a future claims representative (or any of the other procedures in Section 524(g)) is "necessary to comport with constitutional due process." *Johns-Manville*, 2022 WL 4487889, at *3 (emphasis omitted).

Claimants and their amici primarily rely on cases noting the difficulties of providing notice to individuals with unknown injuries. *See, e.g.*, Br. of Appellants 42-43; AAJ Br. 13-16; FCR Br. 7-9, 13. But those cases at most spoke to the issue in dicta and did not attempt to resolve the question presented here. *See Placid Oil*, 753 F.3d at 158 n.9; S.A. 22. Claimants also cite a district-court decision that opined that, "[w]ithout the appointment of [a future claims representative] to provide adequate representation to the absent future claim holders, it is doubtful that the injunction provisions binding them would be

found to comply with the due process clause." *In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y. 2016) (quoting 4 *Collier on Bankruptcy* ¶ 524.07). But again, that statement was dictum, and the cited treatise provides no meaningful authority to substantiate the court's doubt. 4 *Collier on Bankruptcy* ¶ 524.07 at 524-72 n.27 (citing, *inter alia*, *Hansberry* v. *Lee*, 311 U.S. 32 (1940), and Fed. R. Civ. P. 23(a)(4)).

Taking a different tack, one amicus lodges the accusation that debtors engaged in an "intentional effort to deprive future talc claimants of their rights without providing them any meaningful notice or representation." FCR Br. 22. That is baseless. An experienced bankruptcy judge supervised the entire course of the bankruptcy proceedings and subsequently found that debtors had satisfied their legal obligations to provide notice to claimants, without ever suggesting that any misconduct had occurred. As the bankruptcy court noted, moreover, debtors chose the form of notice used in this case because, "in [their] judgment, publication in widely read national newspapers [was] likely to reach the largest possible audience of creditors that may not otherwise have notice of these Chapter 11 [c]ases." S.A. 5.

3.    Beyond lacking support in precedent, claimants' due-process challenge also raises several unanswered questions and line-drawing problems. Those concerns likewise weigh against the novel rule of constitutional law they propose.

44

*First*, claimants do not explain if (or why) the absence of a medical "diagnosis" before the bankruptcy plan's effective date should be the relevant line separating claims that can be discharged in bankruptcy after publication notice and those that cannot. On the one hand, that line would exempt from discharge individuals who had "perceptible asbestos-related disease" before their formal diagnosis. *See* Br. of Appellants 42 (quoting *Amchem Products, Inc.*, v. *Windsor*, 521 U.S. 591, 628 (1997)); *see also Eagle-Picher Industries, Inc.* v. *Liberty Mutual Insurance Co.*, 682 F.2d 12, 24 (1st Cir. 1982). But such individuals could be well positioned to read a bankruptcy notice and understand its significance in light of their symptoms. On the other hand, using diagnosis as the line separating dischargeable from nondischargeable claims might exclude individuals who did not "appreciate the significance" of the notice or who otherwise lacked the "'information or foresight' necessary to make an intelligent decision about [their] claim[s]," even after their formal diagnosis. *See* Br. of Appellants 42 (quoting *Amchem*, 521 U.S. at 628). But if that view were correct, it would drastically expand the scope of claimants' proposed constitutional requirements, with significant implications for the bankruptcy system more generally. *See* pp. 47-48, *infra*.

*Second*, although claimants argue (Br. 1) that asbestos-related injuries are "different," they do not explain why the Constitution would distinguish between asbestos-related injuries and any other type of private injury. There

45

are many other contexts in which individuals will have claims involving unknown injuries at the time of the bankruptcy—for example, claims involving other environmental toxins that have not yet caused a perceptible injury or been diagnosed, *see, e.g., Dahlin*, 881 F.3d at 602-603; those involving defective products that have not yet broken down, *see, e.g., Motors Liquidation*, 829 F.3d at 157; or those involving numerous other forms of conduct in which the claim is "unknown" to the creditor at the time of the bankruptcy proceedings, *see, e.g., Penn Central Transportation Co.*, 771 F.2d at 766-767 (antitrust conspiracy). Claimants do not offer any reason why those various other unknown claims should be treated differently, and their own amici argue that the same constitutional requirements are "no less significant in other tort bankruptcies." FCR Br. 5. At bottom, claimants' asbestos-is-different argument appears to be "proposed only as an artificial method for limiting the effects of a holding in [their] favor." *Federal Communications Commission* v. *Consumers' Research*, 145 S. Ct. 2482, 2499 (2025).

*Third*, claimants do not explain what procedures—in Section 524(g) or otherwise—are required to satisfy due process. The question they present asks whether due process requires debtors "to take separate measures . . . *such as* creating a trust with funding for future claimants and appointing a future claims representative." Br. 4 (emphasis added). But claimants nowhere clarify what debtors must do to satisfy the minimum of due process, other than

46

comply with Section 524(g). *See, e.g.*, Br. 41-43. Their amici double down on that ambiguity, noting that the Court "need not hold that all of [S]ection 524(g)'s post-settlement protections are required in every bankruptcy case." AAJ Br. 18. But amici do not explain what procedures are required or why the procedures in this particular case fell short, beyond misstating that debtors' bankruptcy plan "includes no safeguards for future claimants." *Id.* As explained above, that is incorrect, *see* pp. 38-43, and both claimants' and amici's failure to propose a coherent theory is another reason to reject their position, *cf. Haaland* v. *Brackeen*, 599 U.S. 255, 279-280 (2023).

4. As the bankruptcy court noted, adopting claimants' view of due process could have "systemic" and "profound effects on well-established bankruptcy practices and on the effectiveness of discharge orders in this and future Chapter 11 cases." J.A. 1572-1573. Although Congress enacted Section 524(g) in the early 1990s to address asbestos-related injuries, claimants now appear to argue that due process has *always* required debtors to use all (or some) of the procedures in that statute whenever they want to discharge *any* claims involving unknown injuries that could arise after confirmation. Such a holding would fundamentally disrupt the bankruptcy system, transforming optional statutory procedures into mandatory rules of constitutional law across a wide (and ill-defined) array of cases. And those additional procedures would increase the time, costs, and burdens of bankruptcy—at the expense of debtors

and creditors alike. Neither Congress nor the judiciary has seen fit to mandate those procedures in asbestos-related or any other bankruptcy cases. There is no reason for this Court to be the first to do so.

## CONCLUSION

The bankruptcy court's order granting debtors' motion to enforce the plan injunction should be affirmed.

Respectfully submitted,

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM
WILLIAM T. MARKS
JAMES DURLING
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  2001 K Street, N.W.
  Washington, DC 20006
  (202) 223-7300
  kshanmugam@paulweiss.com

ROBERT A. BRITTON
PAUL A. PATERSON
KATHLEEN H. PIERRE
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  1285 Avenue of the Americas
  New York, NY 10019

SEPTEMBER 26, 2025

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for debtors and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 32.1(a)(4), that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 10,933 words.

SEPTEMBER 26, 2025

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM