# 25-263

## United States Court of Appeals
### for the
### Second Circuit

In Re: RML, LLC,

*Debtor.*

*(caption continued on inside cover)*

On Appeal from the Bankruptcy Court for the Southern District of New York
No. 1:22-bk-10784 (Hon. David S. Jones)

**[FINAL] BRIEF AND SPECIAL APPENDIX FOR APPELLANTS**

Kevin C. Maclay
James P. Wehner
Todd E. Phillips
Lucas H. Self
Ariel K. Hayes
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Ave., N.W.
8th Floor
Washington, D.C. 20036
(202) 862-5000

David C. Frederick
Kathleen W Hickey
Jared M. Stehle
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Appellants*

September 26, 2025

AGATHA BUITRAGO; ANGELINA RASO; CHERIE A. CRAFT; CYNTHIA FISHER; ANNA MARIE GERKEN; GLENDA THERESA GIROIR; DOROTHY GOODE-EVANS; VERDA HANEY; ELAINE SCHLECHTER; DIANNE TANTILLO; SUSAN SOARES; ANA DELGADO; REBECCA LATTERELL-RICE; CARMEN ALARCON; HOWARD G. ANDOE; KAREN HOW; MARTHA MCCRACKEN KING; LORRAINE PERKINS; ROBYN ROSS; BETTY SCOTT; JOHN WANDSNEIDER; JUDY KAY BELL; RENEE FLAGG PEREZ; ILONA KLAR; CYNTHIA SMITHERS; WESLEY REED; SUSAN BETTS; CARLA FORSLUND; MARLANE HEARD; ALEKSANDRA HUXLEY; MARILYN MACRON; LOUISE MILFORD; JOSEPHINE NAVARETTA; MAUREEN SEAL; ANGELINA VESSIA-AYOUBI; SHERI ADAMS; SHERYL DOBBS; CHRISTA RUTH MACHADO, Estate Representative of ESTATE OF BARBARA J. KERSHNER; CHARLENE E. RAND; JODY VALLEY,

*Appellants*,

– v. –

RML, LLC; REVLON GROUP HOLDINGS LLC; ELIZABETH ARDEN USC, LLC; BRANDCO ALMAY 2020 LLC; ELIZABETH ARDEN, INC.; BRANDCO CHARLIE 2020 LLC; FD MANAGEMENT, INC.; REVLON CONSUMER PRODUCTS LLC; BRANDCO CND 2020 LLC; NORTH AMERICA REVSALE INC.; OPP PRODUCTS, INC.; ALMAY, INC.; BRANDCO CURVE 2020 LLC; RDEN MANAGEMENT, INC.; BRANDCO ELIZABETH ARDEN 2020 LLC; ART & SCIENCE, LTD.; REALISTIC ROUX PROFESSIONAL PRODUCTS INC.; ROUX LABORATORIES, INC.; BRANDCO GIORGIO BEVERLY HILLS 2020 LLC; REVLON DEVELOPMENT CORP.; ROUX PROPERTIES JACKSONVILLE, LLC; BRANDCO HALSTON 2020 LLC; REVLON GOVERNMENT SALES, INC.; SINFULCOLORS INC.; BRANDCO JEAN NATE 2020 LLC; REVLON INTERNATIONAL CORPORATION; BARI COSMETICS, LTD.; PPI TWO CORPORATION; RIROS GROUP INC.; BEAUTYGE BRANDS USA, INC.; ELIZABETH ARDEN (CANADA) LIMITED; BRANDCO PS 2020 LLC; BRANDCO WHITE SHOULDERS 2020 LLC; REVLON CANADA INC.; BEAUTYGE USA, INC.; CHARLES REVSON INC.; BEAUTYGE II, LLC; CREATIVE NAIL DESIGN, INC.; CUTEX, INC.; DF ENTERPRISES, INC.; ELIZABETH ARDEN (FINANCING), INC.; ELIZABETH ARDEN INVESTMENTS, LLC; ELIZABETH ARDEN NM, LLC; ELIZABETH ARDEN TRAVEL RETAIL, INC.; REVLON PROFESSIONAL HOLDING COMPANY LLC; BRANDCO MITCHUM 2020 LLC; REVLON (PUERTO RICO) INC.; RIROS CORPORATION; ELIZABETH ARDEN (UK) LTD.; BRANDCO MULTICULTURAL GROUP 2020 LLC,

*Debtors-Appellees*.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants are individuals with personal injury claims based on disease caused by asbestos-contaminated talc for which Revlon, Inc. or one or more of the above-captioned appellees are responsible.  Claimants are not subject to the disclosure provisions of Rule 26.1.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .......................................................i

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ...........................................................................1

STATEMENT OF JURISDICTION.............................................................3

ISSUES FOR PRESENTED FOR REVIEW ...................................................4

STATEMENT OF THE CASE................................................................5

I.    The Bankruptcy Code Treats Future Asbestos Liability
      Uniquely.........................................................................5

      A.    General Discharge Provisions Under The Bankruptcy
            Code.......................................................................5

      B.    The Rise Of Asbestos Liability .........................................6

      C.    Enactment Of § 524(g)-(h) ..............................................9

II.   Revlon's Bankruptcy Proceedings.............................................12

      A.    Revlon's Pre-Bankruptcy Asbestos Liability........................12

      B.    Revlon's Notice Program ..............................................13

      C.    Revlon's Final Reorganization Plan...................................15

III.  Claimants' Asbestos Lawsuits................................................16

SUMMARY OF ARGUMENT ................................................................18

STANDARD OF REVIEW ..................................................................21

ARGUMENT ...............................................................................21

I.    Section 524(g) Provides The Exclusive Mechanism For Chapter 11 Reorganizing Debtors To Enjoin Future Asbestos Liability ...................21

    A.    The Code's Text And Structure Permit Discharging Future Asbestos Claims Only Pursuant To § 524(g)'s Process ...............................................................................................22

        1.    Section 524(g)'s text sets out a comprehensive and specific scheme for future asbestos claims ...............................22

        2.    Section 524(g)'s presence in the Code's discharge provision establishes its exclusivity.........................................26

        3.    Section 524(h) confirms § 524(g)'s role as the exclusive discharge provision for future asbestos claims .......................................................................................31

    B.    Congress Intended § 524(g) To Govern The Discharge Of Future Asbestos Claims ..................................................31

    C.    Congress Intended § 524(g) To Advance Important Policy Objectives In Protecting Future Claimants ..............................33

    D.    The Bankruptcy Court Misinterpreted § 524(g) ................................35

        1.    The word "may" empowers courts, not debtors ......................35

        2.    Section 524(a) confers additional discharge authority not present in the general discharge provisions .......................................................................................38

II.    Due Process Requires A Mechanism To Protect Future Claimants' Rights Beyond The General Discharge Provisions....................39

    A.    Future Claimants Have A Due Process Right To Vindicate Their Claims ............................................................................39

    B.    General Discharge Provisions Do Not Satisfy Due Process For Future Claimants ..............................................41

III.   Even If Revlon Could Discharge Future Asbestos Liability
Without § 524(g), Revlon's Notice Program Did Not Satisfy
Due Process ...................................................................................44

      A.   Due Process Requires Adequate Notice To All Creditors .................45

      B.   Revlon's Notice To Future Asbestos Claimants Was
Insufficient ...............................................................................47

CONCLUSION .................................................................................49

CERTIFICATE OF COMPLIANCE

SPECIAL APPENDIX

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)....................................1, 7, 42

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999)...........................................................................5

*Celotex Corp.*, *In re*, 204 B.R. 586 (Bankr. M.D. Fla. 1996).................................12

*Chateaugay Corp.*, *In re*:

944 F.2d 997 (2d Cir. 1991) ..........................................................40

2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009) .........................30

*Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995) .........................................45

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024 (9th Cir. 2022) ................................................................ 27-28

*Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35 (1977) ...............................28, 29

*Combustion Eng'g, Inc.*, *In re*, 391 F.3d 190 (3d Cir. 2004) ...........................36, 43

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004) ......................26, 28

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000)............................................................................27

*D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204 (1932)...............................25, 26

*Dana Corp.*, *In re*, 2008 WL 11404248 (S.D.N.Y. Sept. 30, 2008)..................29, 30

*DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935 (10th Cir. 2005) ......................................................21

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014)............................................................................45

*Eagle-Picher Indus., Inc.*, *In re*, 203 B.R. 256 (S.D. Ohio 1996) ...........................12

*Energy Future Holdings Corp.*, *In re*, 949 F.3d 806 (3d Cir. 2020) ......................36

*Fed.-Mogul Glob. Inc.*, *In re*, 684 F.3d 355 (3d Cir. 2012)...............................31, 32

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ..........................................................21

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008)...................................................................................................................26

*Flintkote Co.*, *In re*, 486 B.R. 99 (Bankr. D. Del. 2012), *aff'd*, 526 B.R. 515 (D. Del. 2014) ...............................................................12

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996)...............................42

*Grossman's, Inc.*, *In re*, 607 F.3d 114 (3d Cir. 2010) ............................................41

*Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ........................5, 6, 25, 39

*Hecht v. United Collection Bur., Inc.*, 691 F.3d 218 (2d Cir. 2012) ......................46

*Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021) .....................................21

*Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651 (2006)...................................................................................................................33

*Imerys Talc Am., Inc.*, *In re*, 38 F.4th 361 (3d Cir. 2022) ...........................7, 8, 33

*J.A. Jones, Inc.*, *In re*, 492 F.3d 242 (4th Cir. 2007) ..............................................45

*Johns-Manville Corp.*, *In re*:

    36 B.R. 727 (Bankr. S.D.N.Y. 1984) ...................................................................7

    36 B.R. 743 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985)......................................................................................8

    57 B.R. 680 (Bankr. S.D.N.Y. 1986) ...................................................................7

    68 B.R. 618 (Bankr. S.D.N.Y. 1986) ...................................................................8

600 F.3d 135 (2d Cir. 2010) .......................................................46

551 B.R. 104 (S.D.N.Y. 2016) .....................................................43

2019 WL 5965205 (S.D.N.Y. Nov. 13, 2019) ...............................34

2022 WL 4487889 (2d Cir. Sept. 28, 2022) ..................................44

*Jones v. Chemetron Corp.*, 212 F.3d 199 (3d Cir. 2000) ......................45

*Kaiser Gypsum Co.*, *In re*, 135 F.4th 185 (4th Cir. 2025) ................. 23-24

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ..........7, 8, 9, 10, 27, 34

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ............................25

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) .....................................20, 40

*Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) ............................22

*Momentum Mfg. Corp.*, *In re*, 25 F.3d 1132 (2d Cir. 1994) ....................................30

*Motors Liquidation Co.*, *In re*, 829 F.3d 135 (2d Cir. 2016).....................................5

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)........................................ 20, 40, 44, 45, 46, 47, 48

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .......................................................1

*Placid Oil Co.*, *In re*, 753 F.3d 151 (5th Cir. 2014) .................................................30

*Quigley Co.*, *In re*:

346 B.R. 647 (Bankr. S.D.N.Y. 2006) ...........................................6

676 F.3d 45 (2d Cir. 2012) ...........................................................11

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012).......................................................................18, 24, 25, 26

*RML, LLC*, *In re*, 657 B.R 709 (Bankr. S.D.N.Y. 2023)...................................15, 48

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ........................................................21

*SGL Carbon Corp.*, *In re*, 200 F.3d 154 (3d Cir. 1999) ........................................10

*Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001), *aff'd in relevant part, rev'd in part*, 539 U.S. 111 (2003)............................43

*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004)................................6

*Toibb v. Radloff*, 501 U.S. 157 (1991) ............................................................5, 33

*Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024) ...................25, 26, 34

*United States v. Chase*, 135 U.S. 255 (1890) ............................................38

*United States v. Nolan*, 136 F.3d 265 (2d Cir. 1998) ............................................21

*United States v. Rodgers*, 461 U.S. 677 (1983) ........................................28

*W. Asbestos Co.*, *In re*, 2021 WL 4156247 (Bankr. N.D. Cal. Sept. 13, 2021), *aff'd sub nom. In re W. Asbestos Settlement Tr.*, 2022 WL 4372359 (N.D. Cal. Sept. 21, 2022)............................12

*W.R. Grace & Co.*, *In re*, 13 F.4th 279 (3d Cir. 2021) ............................................12

*Waterman S.S. Corp.*, *In re*, 141 B.R. 552, 559 (Bankr. S.D.N.Y. 1992), *vacated and remanded, aff'd in relevant part*, 157 B.R. 220 (S.D.N.Y. 1993).................................................. 46-47

*Yoo v. United States*, 43 F.4th 64 (2d Cir. 2022)......................................27

## STATUTES AND REGULATIONS

U.S. Const. amend. V................................................................39

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111, 108 Stat. 4106 ............................................................31

Bankruptcy Code, 11 U.S.C. §§ 101-1330:

§ 341(a) .................................................................................5

§ 502(b)(9) ............................................................................5

§ 521(a)(1) ............................................................................5

§ 521(a)(1)(B)(iii) ..................................................................5

§ 524 ................................................................................26, 27

§ 524(a) ............................................................................25, 37

§ 524(a)(1) ............................................................................6

§ 524(a)(2) ............................................................................6

§ 524(g) ..........................................................................*passim*

§ 524(g)(1)(A) ......................................................19, 22, 23, 37

§ 524(g)(1)(B) .......................................................................10

§ 524(g)(2)(B) ..........................................................19, 22, 23

§ 524(g)(2)(B)(i)(I) ....................................................11, 23, 24

§ 524(g)(2)(B)(i)(II) ........................................................11, 23

§ 524(g)(2)(B)(i)(III)(bb) .....................................................34

§ 524(g)(2)(B)(i)(IV) .......................................................11, 23

§ 524(g)(2)(B)(ii)(III) ......................................................11, 34

§ 524(g)(2)(B)(ii)(IV)(bb) ...............................................23, 43

§ 524(g)(2)(B)(ii)(V) .............................................................43

§ 524(g)(4)(B) .......................................................................19

§ 524(g)(4)(B)(i) ................................................................11, 23, 34, 43

§ 524(g)(4)(B)(ii) ..............................................................11, 23, 37, 40

§ 524(h) .................................................................................9, 11, 31

§ 524(h)(1)(B) ..................................................................................31

§ 541(a) .............................................................................................5

§ 1125 ...............................................................................................6

§ 1129(a) ...........................................................................................6

§ 1129(b) ...........................................................................................6

§ 1141(a) ...........................................................................................6

§ 1141(d) .........................................................................................19

§ 1141(d)(1) ......................................................................................6

12 U.S.C. § 94 ...................................................................................28

28 U.SC.:

§ 157(a) .............................................................................................3

§ 158(d) .............................................................................................4

§ 158(d)(2) .........................................................................................4

§ 158(d)(2)(B) ...................................................................................3

§ 1334(a) ...........................................................................................3

§ 1411(a) .........................................................................................41

Fed. R. Civ. P. 23 .............................................................................42

Bankr. R. 3003(c)(3) ........................................................................36

## LEGISLATIVE MATERIALS

140 Cong. Rec. S4523 (daily ed. Apr. 20, 1994) ...................................... 33

140 Cong. Rec. 27692 (1994) ............................................................... 9, 10

140 Cong. Rec. 28358 (1994) ...................................................................... 9

H.R. Rep. No. 103-835, *reprinted in* 1994 U.S.C.C.A.N. 3340
    (1994) .......................................................................... 9, 10, 31, 32, 33

S. Rep. No. 95-989 (1978) ...................................................................... 10

## OTHER AUTHORITIES

4 *Collier on Bankruptcy* (16th ed. 2025) .............................................. 43

Michael A. Francus, *Designing Designer Bankruptcy*,
    102 Tex. L. Rev. 1205 (2024) ........................................................ 12

Denise Gellene, *Revlon Buys Several Fragrance Brands*, L.A.
    Times (June 17, 1987) ................................................................... 47

## **INTRODUCTION**

A confirmation of a debtor's plan of reorganization under chapter 11 of the Bankruptcy Code, and the resulting injunction, ordinarily confirm that the creditors have obtained the most value they can receive from a debtor's estate in exchange for finality as to claims against the debtor. The basic bargain of debtor finality versus creditor maximization of value, however, raises special problems when applied to debtors whose products contained asbestos. The long latency of asbestos-related harms means that numerous individuals will have claims that could not be known until years after a debtor is discharged from bankruptcy. Discharging a potential future claimant's claims in a bankruptcy raises substantial notice and due process problems that the Supreme Court has long recognized. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847 n.23, 860 n.34 (1999). For these reasons, reorganizations involving asbestos liabilities are different, and the Bankruptcy Code treats them differently.

In this case, Revlon chose to omit a critical detail in its plan of reorganization: provision for future claimants who had been exposed to asbestos from Revlon's products but whose illnesses did not manifest before the bankruptcy ended. Only after Plan confirmation did some future claimants with asbestos claims ("Claimants") emerge to bring lawsuits against Revlon, because it was only

after confirmation that these victims learned they had a claim. But the court below treated the Plan's confirmation and the resulting discharge as an irrevocable event that snuffed out the Claimants' lawsuits notwithstanding: (1) the existence of a specific statutory provision to protect future claimants harmed by asbestos in 11 U.S.C. § 524(g); (2) no process for the future claimants to have raised their potential claims against Revlon before the alleged discharge occurred; and (3) the absence of any mention of "talc," "asbestos," or any specific Revlon product containing such dangers in the notice Revlon purported to give through publication.

Each of those errors warrants reversal. The Bankruptcy Court erred in disregarding § 524(g) because Revlon's Plan of Reorganization did not provide an alternative provision protecting the creditor rights of future claimants. Though dozens of asbestos debtors have satisfied § 524(g)'s requirements over the 30 years since its enactment, Revlon chose instead to bypass all these protections and declare a total release from all future claims. The resulting violation of the Code led to the Plan violating the due process rights of future claimants who had no means to assert their claims in the bankruptcy. The Plan also violated due process by failing to give adequate notice to the future claimants. Claimants could not reasonably assert a claim in this bankruptcy because their asbestos exposure had not manifested into a disease, and the notice provided no information sufficient to

2

apprise them that they needed to do so. Accordingly, the judgment should be reversed and the case remanded to enable Claimants an opportunity to litigate their claims.

### STATEMENT OF JURISDICTION

This appeal arises from the chapter 11 bankruptcy reorganization of Revlon, Inc. and its affiliated debtors (collectively, "Revlon") pending before the United States Bankruptcy Court for the Southern District of New York (Jones, J.). The Bankruptcy Court had subject-matter jurisdiction over Revlon's bankruptcy cases in accordance with 28 U.S.C. §§ 157(a) and 1334(a).[1]

On August 12, 2024, the Bankruptcy Court granted Revlon's motion to enjoin the Claimants from continuing their asbestos-talc personal injury claims against Revlon.[2] On August 26, 2024, Claimants filed a timely notice of appeal[3] and subsequently moved to certify a direct appeal to this Court under 28 U.S.C. § 158(d)(2)(B).[4] On September 23, 2024, the Bankruptcy Court granted

---

[1] Citations to *In re Revlon Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.), appear as "*Revlon* ECF No. __." Citations to *In re RML LLC*, No. 22-10784 (DSJ) (Bankr. S.D.N.Y.), appear as "Bankr. ECF No. __."

[2] *See* Decision on Reorganized Debtors' Second Omnibus Motion To Enforce the Plan Injunction ("Bankruptcy Decision"), Bankr. ECF No. 1107 (SA1-23).

[3] Bankr. ECF No. 1125 (JA1472-74).

[4] Bankr. ECF No. 1137 (JA1515-37).

Claimants' request for certification under 28 U.S.C. § 158(d)(2).[5] On October 23, 2024, Claimants sought certification for this Court of a direct appeal,[6] which this Court granted on February 4, 2025. Accordingly, jurisdiction is proper under 28 U.S.C. § 158(d).

## ISSUES PRESENTED FOR REVIEW

1. Whether 11 U.S.C. § 524(g), the only provision of the Bankruptcy Code that authorizes the release of future asbestos-related claims, supplies the exclusive statutory mechanism for a debtor to discharge known future asbestos liabilities through a chapter 11 bankruptcy reorganization.

2. Whether due process requires debtors in a chapter 11 bankruptcy reorganization to take separate measures beyond those set out in the general discharge provisions to protect the rights of future asbestos claimants—such as creating a trust with funding for future claimants and appointing a future claims representative—for the debtor to discharge future asbestos liability.

3. Whether the notice provided by Revlon provided asbestos-talc claimants whose diseases had not manifested before the Plan took effect with

---

[5] Decision and Order Granting Motion for Certification of Direct Appeal, Bankr. ECF No. 1155 at 3, 5 (JA1572, 1574).

[6] *Certain Post-Bankruptcy Talc Claimants v. RML, LLC*, No. 24-02843 (2d Cir. 2024), ECF No. 1.

sufficient due process to make the discharge of their claims effective in a chapter 11 bankruptcy reorganization.

**STATEMENT OF THE CASE**

**I.      The Bankruptcy Code Treats Future Asbestos Liability Uniquely**

**A.      General Discharge Provisions Under The Bankruptcy Code**

Chapter 11 of the Bankruptcy Code aims to "preserv[e] going concerns and maximiz[e] property available to satisfy creditors." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (citing *Toibb v. Radloff*, 501 U.S. 157, 163 (1991)).  Chapter 11 cases begin with the filing of a bankruptcy petition and disclosures of the details of a debtor's financial condition. 11 U.S.C. § 521(a)(1).  The filing of a bankruptcy petition "creates an estate" of the debtor's assets, including "all [its] legal or equitable interests." *Id.* § 541(a).

The debtor then "work[s] with its creditors to develop a reorganization plan governing the distribution of the estate's assets." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 214 (2024).  Debtors generally provide creditors with notice of the case and a deadline to file claims, also known as the "bar date." *See* 11 U.S.C. §§ 341(a), 521(a)(1)(B)(iii), 502(b)(9).  Bankruptcy courts may issue a "bar date order" that sets both the bar date and the manner of notice for certain creditors that their claims will soon be barred if they do not file a proof of claim by that date. *See In re Motors Liquidation Co.*, 829 F.3d 135, 168 (2d Cir. 2016); *see also*

5

*Revlon* ECF No. 688 ("Bar Date Order") (JA171-87). A bar date need not apply to all creditors. *See*, *e.g.*, *In re Quigley Co.*, 346 B.R. 647, 651 (Bankr. S.D.N.Y. 2006) (noting that "the Court ordered the Asbestos [personal injury] Claimants holding un-liquidated claims *not* to file proofs of claim in [the] bankruptcy").

Ultimately, the plan of reorganization is voted on by affected creditors. 11 U.S.C. § 1125. A bankruptcy court shall confirm a plan of reorganization only if it complies with certain requirements under the Code, including that at least one class of impaired creditors votes to accept the reorganization plan, and that the bankruptcy court finds the plan is "fair and equitable" with respect to the other impaired classes. *See id.* § 1129(a)-(b).

Once confirmed, the plan generally "discharges the debtor from any debt that arose before" that point. *Id.* § 1141(d)(1). The confirmed plan typically "binds the debtor and its creditors going forward—even those who did not assent to the plan." *Harrington*, 603 U.S. at 214 (citing § 1141(a)). The discharge also usually "operat[es] as an injunction . . . prohibit[ing] creditors from attempting to collect or to recover the debt." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) (citing 11 U.S.C. § 524(a)(1), (2)).

### B. The Rise Of Asbestos Liability

The rise of asbestos-related disease threw a wrench into the chapter 11 scheme. Asbestos-related harms have a long latency period, meaning they may not

6

manifest for decades after exposure.  Because of that latency period, "a continuing stream of claims can be expected" for debtors facing asbestos liability.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997).

Asbestos-driven bankruptcies therefore created difficulties for both debtors and future creditors.  "[A] reorganization plan that failed to account for future asbestos liabilities would be of limited utility to the debtor, and likewise, a reorganization plan that did not address future claimants would fail to provide adequately for all parties with an interest in the debtor's assets."  *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 366 (3d Cir. 2022).  But as originally enacted, the Code's general discharge provisions did not account for debtors with a long tail of future liabilities from asbestos harms that had not yet manifested.

A landmark case came in 1982, with the bankruptcy of a prominent asbestos manufacturer, the Johns-Manville Corporation.  By then, Johns-Manville was a "financially besieged enterprise in desperate need of reorganization of its crushing debt, both present and future."  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) (citing *In re Johns-Manville Corp.*, 36 B.R. 727, 741 (Bankr. S.D.N.Y. 1984)); *see also In re Johns-Manville Corp.*, 57 B.R. 680, 682 (Bankr. S.D.N.Y. 1986).

That bankruptcy was haunted by the specter of future claimants whose exposure to Johns-Manville's products occurred before the filing (or

"prepetition"), but who "may be unaware of their entitlement to recourse against Manville due to the latency period of . . . asbestos related diseases." *In re Johns-Manville Corp.*, 36 B.R. 743, 745 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985). To the *Manville* court, "[i]t [wa]s abundantly clear that the Manville reorganization [would] have to be accountable to future asbestos claimants whose compelling interest must be safeguarded." *Id.* at 744.

This thorny problem inspired a solution. The *Manville* "reorganization process introduced a novel mechanism for dealing with these issues: a trust designed to compensate present and future asbestos claimants, coupled with an injunction against future asbestos liability." *Imerys Talc*, 38 F.4th at 366; *see also Kane*, 843 F.2d 636. "The combination of the trust and injunction allowed the debtor to emerge from bankruptcy without the uncertainty of future asbestos liabilities hanging over its head, while ensuring claimants would not be prejudiced just because they had not yet manifested injuries at the time of the bankruptcy." *Imerys Talc*, 38 F.4th at 366.

In particular, the channeling injunction protected "due process" rights of future claimants: "those parties, who by an accident of their disease cannot even speak in their own interest." *In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986). The result was a trust that Manville paid into both immediately and over time (including up to 20% of its yearly profits) to satisfy present and

future asbestos creditors, in exchange for the channeling injunction's valuable benefits.  *See Kane*, 843 F.2d at 640, 649-50.

Still, the legality of a bankruptcy plan barring future claimants from pursuing claims against the reorganized Manville remained in doubt.  This uncertainty so clouded the bankruptcy that "the securities of these reorganized companies" remained "discounted because of . . . fear of unknown asbestos liabilities."  140 Cong. Rec. 28358 (1994) (statement of Sen. Brown).

### C.     Enactment Of § 524(g)-(h)

 Congress recognized "lingering uncertainty" that followed the *Manville* reorganization and "remain[ed] concerned that full consideration be accorded to the interests of future claimants, who, by definition, do not have their own voice." H.R. Rep. No. 103-835, at 40, *reprinted in* 1994 U.S.C.C.A.N. 3340 (1994). Congress enacted 11 U.S.C. § 524(g)-(h) of the Bankruptcy Code in 1994 to address the problems posed by asbestos-driven bankruptcies.  It therefore "modeled" § 524(g) after the *Manville* plan, so that all entities facing known future asbestos liabilities could seek relief through bankruptcy.  140 Cong. Rec. 27692 (1994).

Section 524(g) codified the *Manville* bankruptcy court's careful solution to the challenge of equitably allocating Manville's limited, inadequate funds among present and future claimants.  This section made the Manville trust/injunction

9

mechanism "available for use by any asbestos company facing a similarly overwhelming liability." H.R. Rep. No. 103-835, at 40-41; *see also Kane*, 843 F.2d at 640 (purpose of Manville Trust is to satisfy personal injury asbestos liability while also allowing Manville to maximize its value for creditors by continuing as a going concern in the face of "crippling" lawsuits); S. Rep. No. 95-989, at 9 (1978), *cited in In re SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999) (chapter 11 is intended to deal "with the reorganization of a financially distressed enterprise").

Congress intended the new provisions of the Code to establish the legality of "asbestos trust/injunction mechanisms that meet the same kind of high standards with respect to regard for the rights of claimants, present and future, as displayed in" *Manville*. 140 Cong. Rec. 27692. As Congress explained, the *Manville* structure protects the rights of future claimants, because the "bankruptcy court appointed a special representative for the future claimants" and the "special representative was centrally involved in formulating the plan and negotiating support for it among the other creditors." H.R. Rep. No. 103-835, at 40.

Like in *Manville*, § 524(g) authorizes a bankruptcy court to issue a "channeling injunction" that ends asbestos litigation (present and future) against the reorganized debtor, but only on certain conditions. *See* 11 U.S.C. § 524(g)(1)(B). The debtor must establish and (at least partly) fund a trust that

10

assumes its asbestos liabilities, and the debtor must propose a bankruptcy plan empowering the trust "to pay claims and demands." *Id.* § 524(g)(2)(B)(i)(I), (II), (IV). The conditions also include protections for future claimants due to the long latency of asbestos-related illness, including the appointment of a representative to advance their interests and a supermajority voting rule calling for the approval of 75% of current asbestos claimants. *Id.* § 524(g)(4)(B)(i), (ii); *see also id.* § 524(g)(2)(B)(ii)(III). The debtor must also show that a bankruptcy without the channeling injunction for future claims "is likely to threaten the plan's purpose to deal equitably with claims and future demands." *Id.* § 524(g)(2)(B)(ii)(III).

A company that emerges from bankruptcy under a § 524(g) plan benefits from an injunction channeling all past *and* future asbestos lawsuits against the reorganized company to the trust instead. *In re Quigley Co.*, 676 F.3d 45, 48 (2d Cir. 2012) ("Section 524(g) authorizes bankruptcy courts . . . to enter . . . an injunction channeling certain classes of claims to a trust set up in accordance with the plan."). This result was unthinkable before *Manville* and § 524(g). As a companion to § 524(g), Congress also enacted § 524(h), protecting "reliance interests" in asbestos-related channeling injunctions and trusts like *Manville*, established before § 524(g) was enacted. Under § 524(h), an asbestos trust and channeling injunction established prior to § 524(g)'s enactment enjoys the same statutory protections as those granted under § 524(g). *See* 11 U.S.C. § 524(h).

11

Since the enactment of § 524(g) more than 30 years ago, many companies facing overwhelming current and future asbestos liabilities have qualified for a channeling injunction under this statutory mechanism. *See, e.g., In re W.R. Grace & Co.*, 13 F.4th 279 (3d Cir. 2021); *In re W. Asbestos Co.*, 2021 WL 4156247 (Bankr. N.D. Cal. Sept. 13, 2021), *aff'd sub nom. In re W. Asbestos Settlement Tr.*, 2022 WL 4372359 (N.D. Cal. Sept. 21, 2022); *In re Celotex Corp.*, 204 B.R. 586 (Bankr. M.D. Fla. 1996); *In re Flintkote Co.*, 486 B.R. 99, 124 (Bankr. D. Del. 2012), *aff'd*, 526 B.R. 515 (D. Del. 2014); *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 281 (S.D. Ohio 1996). "[D]ozens of asbestos bankruptcies [have] used § 524(g), and tens of billions of dollars of assets [have been] placed in Manville Model trusts to compensate tort victims," both present and future. Michael A. Francus, *Designing Designer Bankruptcy*, 102 Tex. L. Rev. 1205, 1209 (2024).

## II.   Revlon's Bankruptcy Proceedings

### A.   Revlon's Pre-Bankruptcy Asbestos Liability

When Revlon filed for bankruptcy in 2022, it knew it faced liability from its sale of cosmetic talc products that contained asbestos. Revlon faced personal injury claims "relating to 'Jean Nate' branded products," including body powder containing asbestos-contaminated talc.[7] Revlon's initial petition disclosed millions

---

[7] Disclosure Statement for First Amended Joint Plan of Reorganization of Revlon, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code ("Disclosure Statement"), *Revlon* ECF No. 1511 § V.R at 47 (JA293).

of dollars of settled but unpaid asbestos-talc claims related to these products.[8] Revlon's eventual Disclosure Statement estimated these asbestos liabilities to total between $50 and $150 million. *See* Disclosure Statement at 6, § I.C (JA252).

Revlon also disclosed that it faced liability for non-asbestos claims related to other products, such as hair relaxers allegedly linked to increased risks of uterine cancer. *See id.* § V.R at 47 (JA293). Revlon sought to discharge all current and future liability from both asbestos and hair relaxer claims through its chapter 11 bankruptcy. *See id.* § XII.A at 179 (JA425).

### B. Revlon's Notice Program

Although Revlon intended to discharge its future asbestos liability, Revlon opted to ignore the only mechanism provided by Congress to do that. To start, Revlon sought a generic bar date order and notice that swept in future asbestos claims with nearly all other claims. Revlon's general Bar Date provided no exception for future asbestos claimants—they, like other creditors, had to "properly file a Proof of Claim on or before the applicable Bar Date." Bar Date Order at 2 (JA172). The Bar Date Order, however, acknowledged Revlon's future talc asbestos liability, providing that claimants could file a "timely" proof of claim after the Bar Date but prior to the confirmation date "*provided* that such disease

---

[8] Voluntary Petition for Non-Individuals Filing Bankruptcy (Bankr. S.D.N.Y. June 15, 2022) at 11. *Revlon* ECF No. 1 (JA155).

13

was diagnosed by a licensed medical doctor for the first time after the Petition Date." *Id.* at 3 (JA173). The Bar Date Order made no provision for talc claims that arose after confirmation.

In September 2022, Revlon published a general bar date notice ("Notice") in three publications to purportedly apprise unknown creditors of the bar date: in the business section of the *New York Times* and *USA Today*, and in the back of the news section of the *Globe and Mail*. *Revlon* ECF No. 758 (JA211-22). Each Notice ran in each paper for one day. *See id.* Unknown creditors necessarily include future claimants who do not yet know they have suffered asbestos-related harms from Revlon's products.

Revlon did not tailor the Notice to reach the many consumers who may have suffered exposure to its asbestos-contaminated talc products. *See* Notice. The Notice did not mention talc products at all. *See id.* It did not mention asbestos. *See id.* It did not mention brands associated with those asbestos-contaminated talc claims—such as Jean Nate, *see id.*—even though Revlon knew these brand names well. It employed no informative graphics, included no images of those products, and eschewed use of bold, large typeface. *See* Notice. Nothing about the Notice suggested that the bankruptcy might affect a user of Revlon's talc products at all.

By contrast, Revlon gave special treatment to claims related to its hair relaxer products. For these claims only, Revlon established a separate bar date and

an elaborate, extensive notice program. Order (I) Establishing Supplemental Deadline for Submitting Hair Straightening Proofs of Claim, (II) Approving the Notice Thereof, and (III) Granting Related Relief, *Revlon* ECF No. 1574 at 2 (JA650). Unlike for asbestos claims, the hair relaxer notice "included a digital advertising and social media campaign designed to reach the relevant consumer audience," even using "the Facebook and Instagram social media platforms for notice messages that would be automatically translated into Spanish" for certain readers. *In re RML, LLC*, 657 B.R 709, 722 (Bankr. S.D.N.Y. 2023). Revlon also published notice of the specific hair relaxer bar date in the national editions of the *New York Times* and *USA Today*, and the national edition of the *Globe and Mail* in Canada. The bankruptcy court found that Revlon's special hair-relaxer notice campaign "was seen by 17,000 users." *Id.*

### C. Revlon's Final Reorganization Plan

Like its notice program, Revlon's final Plan did not account for future asbestos claimants. Instead, the Plan established a small settlement fund earmarked only for *current* talc personal injury claims. *Revlon* ECF No. 1860 at 71 (JA983). By design, that fund has a limited duration; it pays current talc claims filed by the bar date and then is dissolved. *See Revlon* ECF No. 1865 § 6.2(b) (JA1076). That fund sets aside millions for already-filed talc asbestos claims. *See* Disclosure Statement § XII.A at 179 (Risk Factors) (JA425).

15

While the Plan acknowledged that future claims existed, it did not include a future claims representative or seek to meet any of § 524(g)'s criteria to address future claims. This was so even though Revlon disclosed as a risk factor that claimants "may assert in the future certain liability claims . . . related to the presence of talc in certain products." *Id.* They also kept their insurance policies in place to cover future talc personal injury claims that "may not be discharged under the Plan." *Id.* § V.R. at 48 (JA294).

The Bankruptcy Court confirmed the Plan on April 3, 2023. *Revlon* ECF No. 1746 (JA685-781). The effective date ("Effective Date") of the Plan was May 2, 2023. *Revlon* ECF No. 1869 (JA1126-29).

## II. Claimants' Asbestos Lawsuits

Claimants suffer from asbestos-caused cancer that arose from prepetition product use but manifested only after the Effective Date of the bankruptcy (which, by definition, is after confirmation). *See* Bankr. ECF No. 1064 (JA1368-72). Each Claimant filed an individual tort lawsuit against Revlon after becoming aware of his or her asbestos-related injury. *See* Bankr. ECF No. 1051. Revlon moved in June 2024 to enforce the Plan's discharge and injunction provisions against Claimants. *See* Bankr. ECF No. 960 (JA1318-34). It sought an order requiring Claimants to dismiss their claims against Revlon within 14 days, threatening Claimants with sanctions if they did not drop the claims. *See id.* at 2 (JA1322).

Claimants argued that the Plan's discharge and injunction are not enforceable against them. *See* Bankr. ECF No. 1051 at 6. They raised three main arguments. First, § 524(g) represents the exclusive provision for addressing and resolving future asbestos claims through a chapter 11 reorganization. *Id.* Revlon chose not to deploy that tool, so it cannot enjoy its benefits. Second, due process requires that future asbestos claimants contemplated by § 524(g) could not have their claims discharged or enjoined through the Code's general discharge provisions. *Id.* at 6-9. Third, even if § 524(g) did not provide the exclusive mechanism to grant such a release in a chapter 11 reorganization, Revlon's generic notice program did not satisfy due process as to future asbestos claimants. *Id.* at 9-18.

The Bankruptcy Court granted Revlon's enforcement motion. *See* Bankruptcy Decision (SA1-23); Bankr. ECF No. 1110 ("Enforcement Order") (SA24-38). The Bankruptcy Court concluded that § 524(g) is optional, and debtors need not comply with § 524(g) to discharge their asbestos-related claims under a chapter 11 plan of reorganization. Bankruptcy Decision at 11 (SA11). The Bankruptcy Court further held that general discharge provisions in the Code can discharge future asbestos claims. *Id.* The Bankruptcy Court also held that the law entitled Claimants only to publication notice, and the Reorganized Debtors'

17

publication satisfied due process despite not being tailored, and despite the absence of any talc- or asbestos-specific language. *Id.* at 14, 23 (SA14, 23).

This appeal followed.

## SUMMARY OF ARGUMENT

Only § 524(g) of the Bankruptcy Code authorizes a discharge of future asbestos claims, and only if its requirements are satisfied. That statute—and that statute alone—permits a reorganizing chapter 11 debtor overwhelmed by asbestos liabilities to channel future asbestos claims to a distributing trust. Congress enacted § 524(g) to address the unique due process concerns posed by latent asbestos injuries. This specific statutory scheme provides the exclusive roadmap for any debtor seeking to shed future asbestos liability through bankruptcy reorganization. Because Revlon did not follow that path, it may not enjoin Claimants' asbestos claims.

The text and structure of the Code compel this conclusion. Section 524(g) sets out a "comprehensive scheme" targeted specifically at future asbestos liability. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). The provision applies only to a debtor "which at the time of entry of the order for relief has been named as a defendant" for asbestos exposure and authorizes relief from future asbestos claims only upon strict conditions: the formation of a trust, appointment of a future claimants' representative, approval by a 75 percent vote of

18

current claimants, and a judicial finding that the outcome is "fair and equitable" to future claimants. *See* 11 U.S.C. § 524(g)(2)(B), (g)(4)(B).

A court "may" issue an injunction discharging future asbestos liability only if a debtor satisfies these conditions. *Id.* § 524(g)(1)(A). The statute's permissive phrasing governs only the exercise of judicial discretion after the debtor meets these conditions—the statutory price of releasing claims held by individuals who have not yet fallen ill with asbestos-related diseases. It does not allow a debtor to sidestep those conditions altogether. Legislative history surrounding the enactment of § 524(g) confirms this reading.

The Bankruptcy Court's contrary reasoning is flawed. It mistook the permissive "may" in § 524(g) as a license to disregard the statute entirely. It relied on § 1141(d)'s general discharge language while ignoring § 524(g)'s tailored rules for asbestos liability—precisely the inversion the general/specific canon forbids. And it gave no meaningful weight to the fact that Revlon's plan omitted all of § 524(g)'s required protections for future claimants: no § 524(g) trust, no future claims representative, and no finding that the Plan would deal equitably with future claimants. The result is a discharge that wrongly purports to bind people who had no notice and no process for adjudicating their interests, which leaves Congress's vision for future asbestos claimants by the wayside.

19

That result also contravenes due process. Future asbestos claimants hold property interests in their state-law tort claims, and courts cannot extinguish those interests without due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982). Those fundamental protections explain why Congress built § 524(g) the way it did. Without a statutory mechanism to protect their rights in the chapter 11 process, future claimants sit defenseless—unrepresented, unheard, and cut off from remedies before their rights are known or have even ripened. By refusing to follow the only path Congress set out to discharge future asbestos claims, Revlon reorganized, but it cannot sacrifice the due process rights of those who were not yet before the court.

Even if it were possible to sidestep § 524(g) while complying with due process for future claimants, the Reorganized Debtors made no real effort to do so. Their perfunctory publication notice failed even the most basic test of fairness, precisely the sort of "mere gesture" that cannot stand in for due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). Revlon's notice program said nothing of asbestos, talc, or the products at issue, and was not tailored to reach the relevant group of victims. It also provided no clue that future personal injury claims might be discharged. These omissions rendered the notice ineffective for its most critical audience—people who did not yet know they were injured.

20

This Court should reverse.

## STANDARD OF REVIEW

This Court's "review of the bankruptcy court's order, which involves a pure question of law, is *de novo*." *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 600 (2d Cir. 2021). Questions of law include "matter[s] of statutory interpretation," such as whether chapter 11 debtors must follow the requirements of § 524(g) to release future asbestos claims. *United States v. Nolan*, 136 F.3d 265, 271 (2d Cir. 1998). The question whether publication notice provides sufficient due process likewise garners *de novo* review. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186 (10th Cir. 2002) ("Due process issues, which call for legal conclusions, are subject to *de novo* review.") (citation omitted); *cf. Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) ("[W]hether a particular class action notice program satisfies the requirements of . . . the Due Process Clause is a legal determination we review *de novo*.") (quoting *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005)).

## ARGUMENT

### I. Section 524(g) Provides The Exclusive Mechanism For Chapter 11 Reorganizing Debtors To Enjoin Future Asbestos Liability

Chapter 11 provides only one option for debtors to enjoin future asbestos claims: § 524(g). The text and structure of chapter 11's discharge provisions confirm that § 524(g) provides the exclusive mechanism for a debtor to obtain this

relief.  Legislative history substantiates that Congress codified the *Manville* plan as the exclusive means to address future asbestos liabilities.  The contrary outcome— allowing companies to discharge major asbestos liability through general discharge provisions that do not account for those claims—would render § 524(g) useless and undermine the purposes of the Bankruptcy Code.  Taken together, these points establish § 524(g) as the sole roadmap to address these claims in a chapter 11 reorganization.  The Bankruptcy Court erred in its contrary reading of § 524(g).

### A. The Code's Text And Structure Permit Discharging Future Asbestos Claims Only Pursuant To § 524(g)'s Process

#### 1. Section 524(g)'s text sets out a comprehensive and specific scheme for future asbestos claims

The text of § 524(g) sets out a specific statutory scheme for chapter 11 reorganizations that seek to discharge future asbestos claims.  Under § 524(g)(1)(A), a bankruptcy court "may issue, in connection with [a confirmation] order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge" of other claims.  Section 524(g)(2)(b) allows a court to issue such an injunction when certain "requirements of this subparagraph" are met.  In other words, a court may "authorize[] releases in asbestos cases" under § 524(g) only "*when specified conditions are satisfied*."  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (emphasis added).

Section 524(g)(2)(B) lists those specific conditions.  The debtor must have "been named as a defendant" in a personal injury, wrongful death, or property damage case involving asbestos.  11 U.S.C. § 524(g)(2)(B)(i)(I).  The debtor must establish and (at least partly) fund a trust that assumes its asbestos liabilities, and the debtor must propose a bankruptcy plan empowering the trust "to pay claims and demands."  *Id.* § 524(g)(2)(B)(i)(I), (II), (IV).  The plan creating the trust must win approval from "at least 75 percent of those voting."  *Id.* § 524(g)(2)(B)(ii)(IV)(bb).  The bankruptcy court must "appoint[] a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands."  *Id.* § 524(g)(4)(B)(i).  The court must also determine that imposing the injunction on future claimants would be "fair and equitable with respect to the persons that might subsequently assert such demands."  *Id.* § 524(g)(4)(B)(ii).

Even if a bankruptcy satisfies all these conditions, the bankruptcy court need not grant § 524(g)'s extraordinary relief.  A court "*may* issue" an "injunction" under § 524(g)(1)(A), if the debtor does right by future claimants.  Or a court may decide in its own equitable discretion that § 524(g)'s channeling injunction does not fit the circumstances of the case, so the debtor cannot enjoin and channel future asbestos claims.  Debtors may also wish to "pass through" their future asbestos claims if insurance will cover them.  *See*, *e.g.*, *In re Kaiser Gypsum Co.*, 135 F.4th

23

185, 190 (4th Cir. 2025) (approving a plan that authorized the debtor to pass through insured asbestos claims into the tort system). The "may" language preserves that discretion.

These specific asbestos provisions override the more general discharge provisions in the Bankruptcy Code. "It is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up). The Supreme Court applied this canon to the Bankruptcy Code in *RadLAX*, explaining that, when "a general authorization and a more limited, specific authorization exist side-by-side," the more specific authorization controls. *Id.* "That is particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (citation omitted).

Just so here. Section 524(g) creates a "comprehensive scheme" that "deliberately targeted" a "specific problem[]" (future asbestos liability) with a "specific solution[]" (codification of the *Manville* plan). *Id.* Congress tailored § 524(g) narrowly, permitting its use only for "a debtor which . . . has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos." 11 U.S.C. § 524(g)(2)(B)(i)(I). Put differently, it aims at "unique challenges" that "[c]ompanies filing for bankruptcy because of asbestos liability

24

face," including their "unknown future liability." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 273 (2024). This section operates specifically "[f]or asbestos-related bankruptcies—and only for such bankruptcies," and thus marks "a notable exception to the code's general rules." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 222 (2024).

By contrast, the general discharge provision covers a "broad" scope of "provisions for the discharge of debts." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018); *see also* 11 U.S.C. § 524(a) ("A discharge in a case under [the bankruptcy code] . . . voids any judgment at any time obtained" for debts "discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived").

Section 524(g), then, implicates the rule that "[g]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *RadLAX*, 566 U.S. at 646 (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)). Although the Code contains a general provision for discharge of claims, future asbestos claims are "specifically dealt with" just down the page "in another part of the same enactment." *Id.* Under the general/specific canon, the more specific section controls.

The general/specific canon also helps avoid creating "the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'" *Id.* at 645 (quoting *D. Ginsberg & Sons*, 285 U.S. at 208). To read the statute as allowing the general discharge provisions to apply to future asbestos liability would "render part of the statute entirely superfluous, something [courts] are loath to do." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004). "There is no reason why Congress would bother to specify conditions under which a person may [discharge future asbestos claims], and at the same time allow [discharge] absent those conditions." *Id.* This Court should not read the statute to create such an implausible result.

### 2. Section 524(g)'s presence in the Code's discharge provision establishes its exclusivity

The broader context of the Code's general discharge provisions underscores § 524(g)'s role—to detail how the discharge scheme handles known future asbestos liability. Congress included § 524(g) as part of § 524—the section of the Code that addresses discharge generally. Like chapter 11 more broadly, § 524 strikes "a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate." *Truck Ins. Exch.*, 602 U.S. at 272 (quoting *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51 (2008)).

26

The codification of the *Manville* plan at § 524(g) advanced those same two purposes. From the beginning, the *Manville* plan served to "provide a means of satisfying Manville's ongoing personal injury liability while allowing Manville to maximize its value by continuing as an ongoing concern." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 640 (2d Cir. 1988). To accomplish those goals on an "ongoing" basis, the plan—and, today, § 524(g)—helps ensure future claimants are "treated identically to the present claimants," creating parity among the creditors and fairness between the creditors and debtor. *Id.* By adopting the *Manville* plan, Congress endorsed and codified a particular balance of those interests by creating a specific statutory scheme, placed within the broader discharge scheme. To bypass that mechanism and enjoin these future claims without taking their owners' interests into account would upset Congress's careful balance and undermine the overall goals of *both* the broader discharge provisions in § 524 *and* the more specific asbestos channeling injunction provisions at § 524(g).

Against this backdrop, § 524(g)'s use of the word "may" is best understood to confer optionality on bankruptcy courts—not debtors. After all, "the use of the word 'may' is not 'necessarily conclusive of congressional intent to provide for a permissive or discretionary authority.'" *Yoo v. United States*, 43 F.4th 64, 73 (2d Cir. 2022) (quoting *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198 (2000)); *see also Chicken Ranch Rancheria of Me-Wuk Indians v.*

27

*California*, 42 F.4th 1024, 1034 (9th Cir. 2022) (noting that "'may' is not necessarily a fully permissive term—it does not always mean one 'may' do *anything*, or that everything following the 'may' is merely by way of suggestion. Depending on the context, 'may' can be limiting, meaning '*may only*.'").  The ordinary permissive use of the word "may" in a statute "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U.S. 677, 706 (1983).

In *Cooper*, for instance, the Court concluded that a statute's use of the word "may" meant that a party was allowed to seek contribution from another party after meeting certain conditions, but could *not* seek contribution if those conditions went unmet.  *See* 543 U.S. at 166.  "The natural meaning of this sentence," it reasoned, "is that contribution may only be sought subject to the specified conditions" in the provision.  *Id.*  Like with § 524(g), "a party must satisfy the conditions of" a statute before it can make use of the statute's benefits.  *Id.* at 167.

The Supreme Court applied the same logic to a statute governing national banks, which explained actions against bank associations "may be had . . . in any State . . . court in the county . . . in which said association is located." *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 35-36 (1977) (quoting 12 U.S.C. § 94).  As the Court explained, "despite the presence of what might be regarded as permissive

28

language, [it] is not permissive, but mandatory." *Id.* at 38 (citation omitted). A litigant "may . . . sue[]" a bank association in the state "where the banks are located," or she may choose not to sue. *Id.* But the statute's "may" does not license her to sue in some other state court entirely.

The same is true here. A debtor may take or leave § 524(g), but it may not pick and choose from among its benefits and requirements. The "may" language does not render § 524(g) optional in the sense that a defendant may opt in to its allowance for enjoining future asbestos liability while opting out of its strict requirements. Rather, the "may" language only limits the circumstances when a court can grant such relief. Just as the litigants in *Cooper* and *Citizens* "may" seek contribution or "may" sue a bank association after meeting certain statutory requirements, a court *may* grant an injunction channeling future asbestos claims only after a debtor meets the specified conditions in § 524(g).

Indeed, sometimes debtors consciously eschew § 524(g)'s protections, accounting for future asbestos liabilities in other ways. For example, courts have crafted pass-through plans allowing creditors to pursue insured claims in the tort system rather than recovering from a trust. *See*, *e.g.*, *In re Dana Corp.*, 2008 WL 11404248, at *4 (S.D.N.Y. Sept. 30, 2008) (affirming legality of a plan that "does not create a trust," and neither were "the Asbestos Personal Injury Claims channeled in any way"). In that case, where "[a]sbestos claimants [we]re the only

29

unsecured claims who may look to the almost $1.5 billion in insurance assets" the debtor possessed, a § 524(g) plan was unnecessary. *Id.* Instead, "the asbestos claims were reinstituted against a viable Dana." *Id.* That solution is acceptable too—the "may" in § 524(g) preserves courts' flexibility to tailor a bespoke plan to suit the debtor's unique circumstances.

It also comes as no surprise that a provision of the Bankruptcy Code would use the word "may" when providing for a supplemental authority to the Code's general discharge provisions. "It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). Section 524(g) itself arose from a bankruptcy court's creative solution to an intractable problem. The text of § 524(g), therefore, retains a court's discretion to craft remedies tailored to the specific circumstances of the case within due process and statutory limits.[9] Congress's decision to preserve bankruptcy courts' equitable discretion does not mean parties remain free to ignore the requirements of § 524(g) and still reap its benefits.

---

[9] For example, courts have exercised discretion to allow debtors to discharge asbestos liability when § 524(g) was outright unavailable because the debtor had not yet "been named as a defendant" in an asbestos case. *See, e.g.*, *In re Placid Oil Co.*, 753 F.3d 151, 158 (5th Cir. 2014) (debtor unaware of any asbestos-related claims against it prior to confirmation); *In re Chateaugay Corp.*, 2009 WL 367490, at *5 (Bankr. S.D.N.Y. Jan. 14, 2009) ("[n]o asbestos claims had been brought against [the debtor]" prior to its chapter 11 cases).

### 3. Section 524(h) confirms § 524(g)'s role as the exclusive discharge provision for future asbestos claims

Section 524(h)—the companion provision to § 524(g)—confirms this reading. Section 524(h) retroactively blessed *Manville*-like asbestos bankruptcies, but *only* if those bankruptcies adhered to certain procedural safeguards like those in § 524(g). *See* 11 U.S.C. § 524(h)(1)(B) (conditions include "appoint[ing] a legal representative for the purpose of protecting the rights of persons that might subsequently assert [future] demands"). The provision thus reflected a congressional recognition that the bankruptcy law under which the *Manville* court had ruled may not have supported the court's approach. Section 524(h) addressed Congress's concern by specifically delineating a court's statutory authority to discharge future asbestos liability outside of (or before the enactment of) § 524(g).

### B. Congress Intended § 524(g) To Govern The Discharge Of Future Asbestos Claims

The legislative history surrounding the enactment of § 524(g) makes clear that Congress enacted it as the exclusive mechanism to satisfy future asbestos claims. Congress crafted § 524(g) as a "creative solution to help protect . . . future asbestos claimants." *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 359 (3d Cir. 2012) (quoting H.R. Rep. No. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3348, in the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111, 108 Stat. 4106, 4113-17 (codified at 11 U.S.C. § 524(g)-(h))).

31

Congress intended it to enable "corporations saddled with asbestos liability to obtain the 'fresh start' promised by bankruptcy." *Id.* (citing H.R. Rep. No. 103-835, at 40).

Legislative history confirms that Congress intended to allow release of future asbestos liability only if a bankruptcy uses "trust/injunction mechanisms that meet the same kind of high standards with respect to regard for the rights of claimants, present and future, as displayed in" *Manville.* H.R. Rep. No. 103-835, at 41. The House Report emphasized that, "[i]n order for future claimants to be bound by a trust/injunction," the reorganization must include a trust that "operate[s] in a structure and manner necessary to give reasonable assurance that the trust will value, and be able to pay, similar present and future claims in substantially the same manner." *Id.* Bankruptcies that do not satisfy these "high standards" do not suffice to bind future claimants.

The legislative history of § 524(g) also confirms that Congress sought specifically to compensate for due process concerns resulting from the discharge of future claims arising from prepetition exposures. The House Report noted the "long latency period" for asbestos-related injuries, explaining that the "central" concern for these debtors was "how to deal with future claimants—those who were not yet before the court, *because their disease had not yet manifested itself*." *Id.* at 40 (emphasis added).

32

Section 524(g) therefore arose from Congress's concern "that full consideration be accorded to the interests of future claimants, who, by definition, do not have their own voice." *Id.* By way of a solution, Congress crafted "a mechanism to address equitably the debtor's liability to all creditors, including mass tort claims—both those whose injuries are manifest and those who, although already exposed, will not manifest any injury until sometime in the future." 140 Cong. Rec. S4523 (daily ed. Apr. 20, 1994) (statement of Sen. Heflin).

### C. Congress Intended § 524(g) To Advance Important Policy Objectives In Protecting Future Claimants

Chapter 11 of the Bankruptcy Code advances complementary purposes. First, the Code "aims, in the main, to secure equal distribution among creditors." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006). Second, chapter 11 "embodies the general Code policy of maximizing the value of the bankruptcy estate." *Toibb v. Radloff*, 501 U.S. 157, 163-64 (1991). Revlon's end run around § 524(g) vitiates both.

As courts have long recognized, these two fundamental bankruptcy principles break down in the asbestos context. "[A] reorganization plan that failed to account for future asbestos liabilities would be of limited utility to the debtor, and likewise, a reorganization plan that did not address future claimants would fail to provide adequately for all parties with an interest in the debtor's assets." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 366 (3d Cir. 2022).

33

Section 524(g) charts a path for debtors facing overwhelming future asbestos liabilities to address them in a manner consistent with these twin goals. For equitable distribution among creditors, § 524(g) serves an essential purpose—it applies only where pursuing remedies "outside the procedures prescribed by [the] plan is likely to threaten the plan's purpose to deal equitably with claims and future demands." 11 U.S.C. § 524(g)(2)(B)(ii)(III). By requiring the appointment of a future claims representative and insisting on supermajority support of current creditors for the Plan, § 524(g) ensures that the plan treats future claimants fairly with respect to their co-creditors. *Id.* § 524(g)(2)(B)(i)(III)(bb), (g)(4)(B)(i).

Compliance with § 524(g) and the *Manville* structure also "ensure[s] that health claims can be asserted only against the Trust." *Kane*, 843 F.2d at 640; *see also Truck Ins. Exch.*, 602 U.S. at 274. Consistent with that goal, the Manville trusts "were created . . . for the purpose of maximizing assets and paying claimants." *In re Johns-Manville Corp.*, 2019 WL 5965205, at *1 (S.D.N.Y. Nov. 13, 2019). Section 524(g) serves both goals.

According to the Bankruptcy Court, the prescribed steps were unnecessary. But Revlon's Plan did not treat future and current claimants equitably. It did not maximize the value of the assets available to the *whole* group of creditors, which includes future claimants. As to future claimants, the Plan served the exclusive

34

interests of Revlon. This Court should not reward that maneuver and open the door to future companies wishing to sidestep the requirements of § 524(g).

Nor can Revlon defend the Bankruptcy Court's opinion by leaning on the support of those talc asbestos claimants who did go along with the Plan. The interests of *present* asbestos claimants under the *Revlon* plan diverged from those of future asbestos claimants. Present claimants were paid. Future claimants were not.

### D.     The Bankruptcy Court Misinterpreted § 524(g)

Applying those legal principles to this case's facts compels reversal. In enforcing the injunction against Claimants, the Bankruptcy Court concluded that the ordinary discharge provisions of the Bankruptcy Code were sufficient to bind them. Bankruptcy Decision at 8-9 (SA8-9). Its explanations failed entirely to reckon with the specifics of § 524(g); instead, it relied on the Code's generic provisions. Revlon's purported compliance with those provisions does not suffice to enjoin Claimants.

#### 1.     The word "may" empowers courts, not debtors

The Bankruptcy Court's holding depends on the mistaken notion that the word "may" renders § 524(g) optional for debtors wishing to discharge known future asbestos liability. The Bankruptcy Court held that "nothing in the statute's text terms the provision the exclusive or mandatory way debtors must treat claims

that stem from asbestos exposure." Bankruptcy Decision at 11 (SA11). That point aims at a straw man. No one argues that § 524(g) marks the "exclusive or mandatory way debtors must treat claims" of this kind *outside* a chapter 11 bankruptcy reorganization. Debtors are free to completely retain their future asbestos liabilities after a bankruptcy. Section 524(g)'s use of the word "may" reinforces bankruptcy courts' discretion in their gatekeeping role. It does not cede that discretion to the debtor—after all, the general discharge provisions in the Bankruptcy Code cannot be used "to achieve a result not contemplated by the more specific provisions of § 524(g)." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 & n.50 (3d Cir. 2004).[10]

The Bankruptcy Court made much of § 524(g)'s reference "to itself as available 'to *supplement* the injunctive effect of a discharge under this section.'"

---

[10] In *In re Energy Future Holdings Corp.*, 949 F.3d 806, 811 (3d Cir. 2020), the Third Circuit similarly explained that discharges without § 524(g) are permissible only if "the claimants receive an opportunity to reinstate their claims after the debtor's reorganization that comports with due process." It is far from clear, however, that the remedy of allowing a creditor to file a late proof of claim under Bankruptcy Rule 3003(c)(3) could adequately provide for future claimants where the trust established for paying asbestos claims is of only limited duration and is not funded adequately for paying such future claims. The court further labeled the case a "cautionary tale for debtors attempting to circumvent § 524(g)." *Id.* at 825. Notably, *Energy Future Holdings* did not reach the issue of whether a § 524(g) trust is required to enjoin future asbestos claimants because it determined that it was statutorily barred from granting such relief. *Id.* at 821 ("We are therefore barred by § 363(m) from reaching Appellants' argument that they were entitled to pre-confirmation process.").

Bankruptcy Decision at 11 (SA11) (quoting 11 U.S.C. § 524(g)(1)(A)) (emphasis added). It therefore concluded that the "additional relief that Section 524(g) authorizes" does not "disturb[] or eliminat[e]" what § 524(a) provides. But this "supplement" language cuts against Revlon. If the general discharge provisions work as Revlon says, § 524(g) is no "supplement" at all—it is a nullity. For § 524(g) to "supplement" the injunction available in general to debtors through § 524(a), it must provide something more than § 524(a) already provides. That "something more" is the channeling injunction for known future asbestos claims. The "supplement" language in § 524(g) must have some effect, rather than be pure superfluity—and for that to be true, § 524(a)'s general discharge provisions must not supply the future discharge of known asbestos claims encompassed within § 524(g)'s exclusive remit.

In holding otherwise on this point, the Bankruptcy Court discussed injunctions that run in favor of third parties, deciding that "one main purpose of [§] 524(g) is to extend the protection of a plan injunction to non-debtors in the narrow context of asbestos-related cases." Bankruptcy Decision at 11-12 (SA11-12). But the third-party release is not the "supplement" that § 524(g) provides; it represents only an optional component to § 524(g)'s two-pronged trust and channeling injunction structure covering derivative liability for third parties making adequate contributions to the § 524(g) trust. 11 U.S.C. § 524(g)(4)(B)(ii)

(noting injunctions may be granted "in light of the benefits provided . . . to such trust on behalf of . . . such third party"). The Bankruptcy Court's centering of the third-party release misses the point; the injunction channeling future asbestos claims to a trust, not the third-party release, is what "supplement[s]" the Code's ordinary discharge provisions.

### 2. Section 524(a) confers additional discharge authority not present in the general discharge provisions

The Bankruptcy Court further erred by observing that "no part of Section 1141(d) carves out any exception to discharge for asbestos claims," and from there concluding the general provisions suffice for such a discharge. Bankruptcy Decision at 11 (SA11). This conclusion ignores the general/specific canon. According to the Bankruptcy Court, a statute must include explicit language saying that a specific section of a statute controls to address the specific problem contemplated by that section. But the general/specific canon "applies wherever an act contains general provisions and also special ones upon a subject, which, standing alone, the *general provisions would include*." *United States v. Chase*, 135 U.S. 255, 260 (1890) (emphasis added). The Bankruptcy Court turns that law on its head by opining that the general provisions must *exclude* the specific situation for the canon to function.

The Bankruptcy Court also misinterpreted the Supreme Court's explanation that it did not read "§ 524(g) to 'impair' or 'modify' authority previously available

to courts in bankruptcy." Bankruptcy Decision at 13 (SA13) (quoting *Harrington*, 603 U.S. at 222 n.5). But to say that Claimants' reading of § 524(g) would "impair" previously available authority begs the question and assumes that courts possessed this authority before § 524(g)'s enactment. They did not. And in context, *Harrington* bolsters that conclusion—the Supreme Court read § 524(g) to "confer upon bankruptcy courts a novel and extraordinary power." 603 U.S. at 222 n.5. But that "novel and extraordinary" tool that bankruptcy courts previously lacked would serve no purpose if a debtor could simply avoid using it and still obtain its benefits.

## II. Due Process Requires A Mechanism To Protect Future Claimants' Rights Beyond The General Discharge Provisions

Revlon's plan to circumvent § 524(g) violates the due process rights of future claimants. Revlon's reorganization would dispose of Claimant's property interests in their claims—eliminating their choses in action—without an opportunity to be heard. The Due Process Clause therefore separately bars the injunction's effect against Claimants.

### A. Future Claimants Have A Due Process Right To Vindicate Their Claims

Under the Fifth Amendment, the government cannot deprive a person of property without due process of law. U.S. Const. amend. V. That protection extends to choses in action, which the Supreme Court has recognized as a form of

property.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982) ("The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts[.]"); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (identifying causes of action as protected property interests).

Latent tort claims arising from prepetition exposure—such as those in asbestos cases—present no exception.  While these claims may not have fully liquidated or manifested at the time of bankruptcy, they nonetheless represent interests rooted in pre-bankruptcy conduct.  *See In re Chateaugay Corp.*, 944 F.2d 997, 1003-05 (2d Cir. 1991).  For unknown future claimants, due process requires more than the mechanical application of statutory discharge.  Because these individuals cannot assert or defend their rights at the time of the bankruptcy, Congress crafted specialized safeguards in Section 524(g):  among others, the future claims representative, the supermajority voting requirement, and the requirement that the injunction's operation be "fair and equitable with respect to the persons that might subsequently assert" claims.  § 524(g)(4)(B)(ii).

Because latent asbestos claims qualify as constitutionally protected property, a bankruptcy court may channel or discharge them only through procedures (like those in § 524(g)) that afford a meaningful substitute for notice to future claimants

40

and an opportunity for them to be heard.  Anything less produces an

unconstitutional deprivation without due process.

### B.  General Discharge Provisions Do Not Satisfy Due Process For Future Claimants

Future creditors like Claimants pose a serious challenge for due process in

bankruptcy.  Even outside of § 524(g), courts have raised the alarm about the

significant problem of binding future claimants unaware of their diseases—and

that challenge "arise[s] starkly in the situation presented by persons with asbestos

injuries that are not manifested until years or even decades after exposure."  *In re*

*Grossman's, Inc.*, 607 F.3d 114, 126 (3d Cir. 2010) (en banc).  But notice to future

asbestos claimants whose disease has not manifested is impossible.  That remains

true whether or not the claimants are "unknown."  Even if it were otherwise, any

notice program would need to make extraordinary efforts to apprise such claimants

that, if they ever do get sick, they might have a claim based on exposure to the

relevant asbestos-containing products.  (For much the same reason, in fact, the

discharge Revlon envisions would also cut off the jury trial right of personal injury

claimants.  The law forbids that outcome.[11])

---

[11] *See* 28 U.S.C. § 1411(a) ("Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.").

Though courts have not squarely addressed notice to latent asbestos claimants in the bankruptcy context, the Supreme Court has confronted this issue in class-action settlements. In *Amchem Products, Inc. v. Windsor*, the Supreme Court considered the certification of a class action that included individuals who—like Claimants, as of the Bar Date—had suffered exposure to asbestos without having yet manifested symptoms. 521 U.S. 591, 597, 602-03 (1997). The Supreme Court recognized severe "[i]mpediments to the provision of adequate notice" for those claimants who have "no perceptible asbestos-related disease." *Id.* at 628 (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996) ("Problems in adequately notifying and informing exposure-only [claimants] of what is at stake . . . may be insurmountable.")).

*Amchem*'s issue, arising out of Federal Rule of Civil Procedure 23, centered on opt-out notice for a putative class of asbestos victims. As for those notices, the Supreme Court underscored that—even if an unmanifested asbestos claimant were to read and "fully appreciate the significance" of the notice—a claimant not yet diagnosed with an asbestos-related illness would lack "information or foresight" necessary to make an intelligent decision about her claim. "Many persons in the exposure-only category," the Court reasoned, "may not even know of their exposure, or realize the extent of the harm they may incur." *Id.* Picking up on the *Amchem* thread, the Second Circuit has similarly acknowledged that effective

42

notice is likely an impossibility for unmanifested future claimants. *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 261 n.8 (2d Cir. 2001) ("*Amchem* indicates that effective notice could likely not ever be given to exposure-only class members."), *aff'd in relevant part, rev'd in part*, 539 U.S. 111 (2003).

Section 524(g) solves that problem by incorporating safeguards to protect the interests of future claimants. The court must appoint a legal representative for future claimants, § 524(g)(4)(B)(i); must ensure that the plan is approved by a 75 percent supermajority vote of current claimants, § 524(g)(2)(B)(ii)(IV)(bb); and must verify that the plan includes mechanisms to ensure that similar future claims will obtain substantially similar recoveries to current claims, § 524(g)(2)(B)(ii)(V). Each of these provisions—and especially the combined apparatus—is "specifically tailored to protect the due process rights of future claimants." *Combustion Eng'g*, 391 F.3d at 234 n.45. "Without the appointment of . . . [a future claims representative] to provide adequate representation to the absent future claim holders, it is doubtful that the injunction provisions binding them would be found to comply with the due process clause." *In re Johns-Manville Corp.*, 551 B.R. 104, 114 (S.D.N.Y. 2016) (quoting 4 *Collier on Bankruptcy* ¶ 524.07 (16th ed. 2025)). This case confirms the correctness of that concern.

Finally, while the Bankruptcy Court contends that "the Second Circuit has rejected the argument that the lack of a future claims representative . . . amount[s]

to a denial of due process," Bankruptcy Decision at 13 (SA13), the case law does not bear that out. The Bankruptcy Court's sole authority on this point is *In re Johns-Manville Corp.*, 2022 WL 4487889 (2d Cir. Sept. 28, 2022) (summary order). But that case's holding rested on different grounds. There, the claimant advanced asbestos claims against Johns-Manville many years after its bankruptcy inspired § 524(g). He argued in part that the timing of the *Manville* bankruptcy had meant the claim had not benefited from a future claims representative's input. But that court reasoned that the claimant "was indeed represented by a [future claims representative] in the Manville bankruptcy proceedings," which supplied the backdrop for that case. *Id.* at *3. That *Manville* bankruptcy, after all, was the model Revlon failed to follow. Just the opposite occurred here, where no future claims representative existed.

## III. Even If Revlon Could Discharge Future Asbestos Liability Without § 524(g), Revlon's Notice Program Did Not Satisfy Due Process

Even if Revlon could somehow discharge its known future asbestos liability through the Code's general discharge provisions, it did not satisfy the fundamental requirements for such a discharge. Due process requires debtors to provide adequate notice of a bankruptcy to both known and unknown creditors. *See Mullane*, 339 U.S. at 315. Revlon's notice program did not satisfy due process requirements as to future asbestos claimants.

### A.    Due Process Requires Adequate Notice To All Creditors

To bind a party before the deprivation of their rights requires adequate

notice.  *Mullane*, 339 U.S. at 314.  That means "notice reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections."  *Id.*  On the flip

side, "process which is a mere gesture is not due process."  *Id.* at 315.  Instead, the

notice must be "such as one desirous of actually informing the absentee might

reasonably adopt to accomplish it."  *Id.*  When a debtor fails to provide adequate

notice, the penalty is that it receives no discharge as to such claimants.  *See DPWN*

*Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014)

("[A] claim cannot be discharged if the claimant is denied due process because of

lack of adequate notice.");  *Jones v. Chemetron Corp.*, 212 F.3d 199, 209 (3d Cir.

2000) ("[I]f a potential claimant lacks sufficient notice of a bankruptcy proceeding,

due process considerations dictate that his or her claim cannot be discharged by a

confirmation order.").

This analysis boils down to a dichotomy:  the analysis differs depending on

the creditor's status as "known" (that is, their identity is known or reasonably

ascertainable to the debtor) or "unknown."  *In re J.A. Jones, Inc.*, 492 F.3d 242,

249 (4th Cir. 2007).  For unknown creditors, publication notice may sometimes

suffice.  *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346, 349 (3d Cir. 1995)

("[f]or unknown claimants, notification by publication will *generally* suffice," but the court must still ensure that the "publication notice [is] reasonably designed to reach all interested parties") (emphasis added). This Court, for example, considers notice protocols a "mere gesture" and inadequate when a party publishes just one notice in one newspaper for one day. *Hecht v. United Collection Bur., Inc.*, 691 F.3d 218, 224 (2d Cir. 2012). At bottom, the content of the notice must suffice to put the claimant on actual notice. *Mullane*, 339 U.S. 314 ("The notice must be of such nature as reasonably to *convey the required information*[.]") (emphasis added).

In line with that rule, a vague notice that does not describe the nature of claims set for discharge fails due process standards. *In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010) (per curiam) (holding that a claimant-insurer could not be bound by bankruptcy court's orders where, "even if [the insurer] received the Notice document, it could not have anticipated . . . that its . . . claims . . . would be enjoined"). Similarly, "notice" to a party unaware of any claim against the debtor is constitutionally suspect. Courts remain rightly suspect that an individual "could be deemed to have relinquished substantive rights when, even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected." *In re Waterman*

*S.S. Corp.*, 141 B.R. 552, 559 (Bankr. S.D.N.Y. 1992), *vacated and remanded on other grounds, aff'd in relevant part*, 157 B.R. 220 (S.D.N.Y. 1993).

### B. Revlon's Notice To Future Asbestos Claimants Was Insufficient

Revlon's notice to future asbestos claimants falls short of these standards. To begin with, the Notice ***does not mention talc products at all***. It does not mention asbestos. It does not mention the brands Revlon knew were associated with those asbestos-contaminated talc claims, such as Jean Nate.[12] The generic Notice provided only in general terms that "ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES" faced the bar order. *Revlon* ECF No. 758 (JA211-22). The Notice therefore provided no notice for a user of a Revlon talc product—particularly one with no diagnosed disease—to have any idea the bankruptcy threatened any rights they might hold.

Due process calls for an analysis of the notice program "under all the circumstances" of the case. *Mullane*, 339 U.S. at 314. Future asbestos creditors like Claimants received only token notice in the form of a barebones, nondescript general bankruptcy notice without mentioning talc nor the products containing it.

---

[12] The lack of brand names presented additional problems because many future talc claimants would not associate the brands with Revlon. Jean Nate, for example, a line of fragranced body powder, often did not contain any reference to Revlon, because, up until 1987, other firms owned the brand. Denise Gellene, *Revlon Buys Several Fragrance Brands*, L.A. Times (June 17, 1987).

The Bankruptcy Court deemed that as sufficient warning that (1) Revlon's products may have given talc claimants mesothelioma or other latent asbestos-related injuries and (2) their right to seek redress was to be barred. These notices, far from prominently displayed, appeared for one day in each newspaper in obscure locations: at the very back of either the business section or the news section.[13]

Yet Revlon knew how to give proper notice in other circumstances. It did so for the hair relaxer claimants, for whom news of the bankruptcy arrived through a notice program translated into several languages, with easy-to-read graphics, a list of relevant products, and social media dissemination. This notice ultimately managed to reach at least 17,000 targeted people in territories like Puerto Rico alone—to say nothing of the notice program's mainland reach. *In re RML, LLC*, 657 B.R. 709, 722 (Bankr. S.D.N.Y. 2023).

By comparison, Revlon's notice program for their talc and asbestos claimants represents precisely the sort of "mere gesture" that the Supreme Court cautioned against in *Mullane*. 339 U.S. at 315. This Court should not condone Revlon's inadequate notice program for future asbestos victims.

---

[13] *See* Ex. B to Cls.' Opp., Bankr. ECF No. 1051 at 7, 9 & 13.

## **CONCLUSION**

Accordingly, this Court should reverse the Bankruptcy Court's Enforcement

Order.

Dated:  September 26, 2025

Respectfully submitted,

/s/ *David C. Frederick*

| | |
|---|---|
| Kevin C. Maclay | David C. Frederick |
| James P. Wehner | Kathleen W. Hickey |
| Todd E. Phillips | Jared M. Stehle |
| Lucas H. Self | KELLOGG, HANSEN, TODD, FIGEL |
| Ariel K. Hayes | & FREDERICK, P.L.L.C. |
| CAPLIN & DRYSDALE, CHARTERED | 1615 M Street, N.W., Suite 400 |
| 1200 New Hampshire Ave., N.W. | Washington, D.C. 20036 |
| 8th Floor | (202) 326-7900 |
| Washington, D.C. 20036 | dfrederick@kellogghansen.com |
| (202) 862-5000 | khickey@kellogghansen.com |
| kmaclay@capdale.com | jstehle@kellogghansen.com |
| jwehner@capdale.com | |
| tphillips@capdale.com | |
| lself@capdale.com | |
| ahayes@capdale.com | |

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32 and Local Rule 32.1 because it contains 11,231 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5), (6) because it has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

/s/ *David C. Frederick*
David C. Frederick

September 26, 2025

# SPECIAL APPENDIX

# <u>TABLE OF CONTENTS</u>

Page

Decision on Reorganized Debtors' Second Omnibus Motion to
Enforce the Plan Injunction (Aug. 12, 2024) (Bankr. ECF
No. 1107).............................................................................................SA1

Order Granting Reorganized Debtors' Second Omnibus Motion to
Enforce Plan Injunction and Confirmation Order (Aug. 14, 2024)
(Bankr. ECF No. 1110) ........................................................................SA24

**UNITED STATES BANKRUPTCY COURT**　　　　　<u>FOR PUBLICATION</u>
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| RML, LLC[1] | ) |
| | ) Case No. 22-10784 (DSJ) |
| Reorganized Debtor. | ) |
| | ) |
| Tax I.D. No. N/A | ) |
| | ) |

### DECISION ON REORGANIZED DEBTORS' SECOND OMNIBUS MOTION TO ENFORCE THE PLAN INJUNCTION

　　　　The motion before the Court arises from the Chapter 11 bankruptcy of Revlon and many affiliated companies ("Revlon"). Revlon describes itself as a world leader in the beauty industry. Before, during, and after its bankruptcy, Revlon made and sold innumerable consumer products, some of which contained talc. As is typical, during the course of the bankruptcy case, this Court imposed a bar date requiring anyone seeking compensation on account of a pre-petition claim against the debtors to file a proof of claim by a certain date. After that date passed, Revlon sought and obtained confirmation of a plan of reorganization that specified the treatment of allowed claims while discharging all associated debts and enjoining further efforts to collect on any claims other than through the distribution process established by the confirmed plan. Revlon's plan is now effective, and Revlon and its associated debtor entities are now termed the Reorganized Debtors, called simply "Revlon" or the "Debtors" in this opinion.

---

[1] On May 30, 2023, the Court entered the *Order (I) Consolidating the Administration of the Remaining Matters at the Remaining Case, (II) Entering a Final Decree Closing the Affiliate Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief, In re Revlon, Inc.*, No. 22-10760 (Bankr. S.D.N.Y. May 30, 2023), ECF No. 1920, closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in this case.

Despite the plan's discharge and injunction provisions barring continuing efforts to pursue compensation outside the bankruptcy on account of pre-petition claims, Revlon finds itself a defendant in forty-two lawsuits by individuals (termed "Talc Claimants" by this decision)[2] asserting entitlement to compensation for injury or illness allegedly caused by asbestos-contaminated talc in Revlon products. As explained below, although almost all the claimants at issue report that they were diagnosed after Debtors' plan was confirmed, it nevertheless is undisputed that the claims all arise from pre-bankruptcy exposure to Revlon products that allegedly contained asbestos. The law is clear that, as a result of the pre-bankruptcy alleged causation of the Talc Claimants' asserted injuries, these claims all accrued or arose before Revlon filed its bankruptcy petition.

The Debtors have moved for an order enforcing the discharge and injunction provisions of their plan of reorganization against the Talc Claimants' continuation of their lawsuits against Revlon. The Debtors argue that their Third Amended Joint Plan of Reorganization (the "Plan"), which this Court confirmed on April 3, 2023, extinguished the underlying claims and enjoined any action to collect on them outside of the bankruptcy case.

Certain threshold issues are not in serious dispute but are necessary to the motion's resolution: the Talc Claimants hold claims as that term is defined under the Bankruptcy Code, and, under both the Code and Revlon's Plan, unless some exception exists as to to a particular claim, the Plan and the order confirming it discharged those claims and enjoined all non-

---

[2] Caplin & Drysdale, Chartered represents forty Talc Claimants. List of Certain Post-Bankruptcy Talc Claimants, ECF No. 1051-1. There are two additional Talc Claimants. *See* Notice of Obj. to Mot. to Enforce Plan Inj., ECF No. 1052.

bankruptcy collection efforts. Thus, the Talc Claimants can prevail only if they establish some reason that they are not subject to the generally applicable discharge and injunction of the Plan.

The Talc Claimants raise two main contentions in opposition, both of which the Court rejects for reasons discussed below. First, they contend that the Bankruptcy Code requires debtors to employ and satisfy the asbestos-specific provisions of 11 U.S.C. § 524(g) to discharge asbestos-based products liability claims. Second, they contend that the discharge does not bar their pursuit of a recovery from the Debtors because the Debtors failed to provide sufficient notice of the bankruptcy case and/or the claim bar date to satisfy the Constitution's requirement of due process.

In brief, the Court rejects the Talc Claimants' arguments based on Section 524(g) because those arguments clash with well-established case law and, most fundamentally, with the statute's plain language, which is permissive and allows but does not require use of certain mechanisms for dealing with latent asbestos-related injuries. The Court rejects the Talc Claimants' notice-based arguments because the Debtors provided notice that meets the recognized requirements of due process, which among other things authorizes the use of publication notice as to creditors whose identities are "unknown" to the debtor. The Court accordingly grants Revlon's motion.

<u>BACKGROUND</u>

**A.    Revlon's Bankruptcy, Bar Date, and Confirmed Plan Including Claim Discharge and Injunction Provisions**

The Debtors filed a voluntary Chapter 11 bankruptcy petition on June 15, 2022. *In re Revlon, Inc.*, No. 22-10760 (Bankr. S.D.N.Y. June 15, 2022) (the "Main Case"), Petition 4, ECF No. 1. In papers accompanying the petition, Revlon, which carried substantial corporate debt,

**SA3**

attributed its need for financial relief primarily to an inability to meet its financing costs due to business challenges including decreased sales associated with the COVID-19 pandemic followed by supply chain challenges that hindered Revlon's ability to achieve its full sales and revenue potential. Main Case, Declaration of Robert M. Caruso ¶ 9, ECF No. 30. While not characterizing tort or product liability exposure as driving their need to file for bankruptcy, on their schedules and statements of financial affairs the Debtors listed certain pre-petition court cases in which plaintiffs claimed the Debtors' products tortiously injured them by exposing them to asbestos. *See, e.g.*, Main Case, Revlon, Inc. Stmt. of Fin. Affairs 35, ECF No. 426 (listing, among other cases, *Chamberlain v. Avon Prods., Inc.* and *Kendrick v. Avon Prods. Inc.*); Complaint ¶ 75, *Chamberlain v. Avon Prods., Inc.*, No. GD-22-5532 (Pa. C.P. Allegheny Cnty. May 5, 2022); Complaint ¶¶ 27-28, *Kendrick v. Avon Prods., Inc.*, No. CACE-21-014417 (Fla. Cir. Ct. 17th July 19, 2021).

The Debtors promptly retained Kroll Restructuring Administration LLC as their claims and noticing agent and provided notice of their bankruptcy filing by a number of methods, including notices sent by Kroll to Revlon's lenders, its major unsecured creditors, the U.S. Trustee, and numerous government agencies. Main Case, Order Appointing Kroll Restructuring Administration LLC, ECF No. 66; Main Case, Aff. of Service of Notice of Commencement Ex. A, ECF No. 54. In addition, the Debtors published notice of their bankruptcy case in the *New York Times*. Main Case, Certificate of Publication, June 27, 2022, ECF No. 128.

On August 23, 2022, the Debtors moved for entry of an order "(a) establishing deadlines for creditors to submit (i) proofs of claim and . . . (b) approving the form, manner, and notice thereof." Main Case, Appl. For Entry of an Order Establishing Last Day to File Proofs of Claim 2, ECF No. 536 (the "Bar Date Application"). Those deadlines are the "Bar Dates." *Id.* ¶ 9(d).

In the Bar Date Application, the Debtors stated, "Given the size and scope of the Debtors' businesses, the Debtors have determined that it would be in the best interest of their estates to give notice by publication to certain creditors, including: (i) those creditors to whom no other notice was sent and who are unknown or not reasonably ascertainable by the Debtors, (ii) known creditors with addresses unknown by the Debtors, and (iii) potential creditors with Claims unknown by the Debtors." *Id.* ¶ 25. To that end, the Bar Date Application proposed "to publish notice of the Bar Dates in substantially the form as [an exhibit to the Bar Date Application] in the national editions of the *New York Times* and *USA Today*, and the national edition of the *Globe and Mail* in Canada by no later than September 27, 2022" because "[i]n the Debtors' judgment, publication in widely read national newspapers is likely to reach the largest possible audience of creditors that may not otherwise have notice of these Chapter 11 Cases." *Id.* ¶ 26.

On September 12, 2022, this Court approved the Bar Date Application. Main Case, Order (I) Establishing Deadlines for (A) Submitting Proofs of Claim and (B) Reqs. for Payment Under Bankruptcy Code Section 503(b)(9), (II) Approving the Form, Manner, and Notice Thereof, and (III) Granting Related Relief, ECF No. 688 (the "Bar Date Order"). The Bar Date Order set October 24, 2022 as the "General Bar Date" but also stated the Court would deem timely claims from claimants asserting "a personal injury claim arising from a disease allegedly caused by the exposure to cosmetic talc allegedly contained in the Debtors' products" filed before the date of confirmation of the Debtors' bankruptcy plan if "such disease was diagnosed by a licensed medical doctor for the first time after the Petition Date." *Id.* ¶¶ 4, 6 ("Any such Talc PI Claim filed after the General Bar Date but prior to the confirmation date of a bankruptcy plan, without leave of the Court, shall be deemed timely filed as an unsecured, unliquidated claim."). In the Bar Date Order, the Court approved a form of publication notice (the "Publication Notice") and

"the manner of providing notice of the Bar Dates as described in the [Bar Date] Application." *Id.*
¶¶ 2, 28, Ex. 3 (showing the Publication Notice).

The Publication Notice made no explicit mention of talc or asbestos claimants but did
state that the Bar Date applied to "each person . . . that holds or seeks to assert a claim (as
defined in section 101(5) of the Bankruptcy Code) that arose, or is deemed to have arisen, prior
to the Petition Date . . . no matter how remote or contingent . . . including claims for potential
unmatured injuries." *Id.* Ex. 3. Review of the claims register shows no claimants with names
matching those of the Talc Claimants. The Debtors published the Publication Notice on
September 22, 2022, in *USA Today* and the *New York Times*; they published it the next day in the
*Globe and Mail*. Main Case, Certificate of Publication, Sept. 27, 2022, ECF No. 758.

As the bankruptcy case progressed, the Debtors proposed and sought confirmation of a
plan of reorganization. In their disclosure statement accompanying their proposed plan, the
Debtors explained that, although they believed all future liability claims that may ultimately be
asserted for prepetition use of Revlon talc products were properly dischargeable, they could face
future liability claims on account of talc use and those claims could be "adverse and material" to
the Reorganized Debtors. Main Case, Solicitation Version of Disclosure Statement 179 (Part
XII.A.18), ECF No. 1511. Revlon further explained that it would retain its liability insurance
coverage including with respect to Talc Personal Injury Claims. *Id.* 48 (Part § V.R).

On April 3, 2023, this Court entered an order confirming the Plan. Main Case, Findings
of Fact, Conclusions of Law, and Order Confirming the Third Am. Joint Plan of Reorganization
of Revlon, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, ECF
No. 1746 (the "Confirmation Order"). Under the Confirmation Order, "the distributions, rights,
and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and

6

**SA6**

release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever . . . whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties," *id.* ¶ 140, and the Confirmation Order enjoined any action to collect on any claims discharged by the Plan, *id.* ¶ 145.

As is undisputed, the Plan does not attempt to employ or satisfy the requirements of 11 U.S.C. § 524(g), which, as discussed below, establishes one available means of providing for and satisfying the entitlements of individuals asserting claims based on pre-petition exposure to asbestos. Among other things, the Plan did not appoint a future claims representative, win approval of 75% of the Talc Personal Injury Claim claimants with respect to each debtor, or create a trust compliant with 11 U.S.C. § 524(g)(4)(B) or 11 U.S.C. § 524(g)(5).

The motion now before the Court presents the key issue of whether the Debtors' decision not to provide for asbestos-related claims using the means established by Section 524(g) limits the effect of the Plan's discharge and injunction on the Talc Claimants.

### B.    The Talc Claimants' Lawsuits and This Motion

After entry of the Confirmation Order, the Talc Claimants sued the Debtors in various courts alleging that the Debtors injured them by exposing them to asbestos-containing talc in the Debtors' products. Second Omnibus Mot. to Enforce Plan Inj. and Confirmation Order (the "Motion") Ex. B, Annex 1, ECF No. 960 (annex titled Table of Noncompliant Pending Actions). The Talc Claimants generally state that they were diagnosed after the confirmation date with illnesses that they assert were caused by pre-petition use of Revlon talc products.

The Debtors have moved for an order enforcing the Plan's injunction against the Talc Claimants, arguing that their lawsuits are impermissible actions to collect on claims that were both discharged by the Plan and subject to the Plan's injunction. *Id.* ¶ 5. The Talc Claimants opposed, contending that the Bar Date Order and Plan injunction do not preclude their suits for two broad reasons: first, that the Debtors' decision not to provide for asbestos-related claims in keeping with 11 U.S.C. § 524(g) renders the discharge and injunction inapplicable to individuals like the Talc Claimants who seek compensation for prepetition exposure to asbestos; and second, that the Debtors provided insufficient notice of the Bar Date such that the Bar Date and subsequent Plan discharge and injunction provisions cannot permissibly apply to the Talc Claimants. *See, e.g.*, Opp'n to Mot., ECF No. 1051 (the "Caplin Opposition").

The Court heard argument on June 27, 2024, and reserved decision. A transcript of the argument appears at ECF No. 1081 (the "Talc Hr'g Tr.").

## **DISCUSSION**

It is undisputed that "[e]ach of the [Talc Claimants' lawsuits] asserts a claim for alleged damages arising from the use of or exposure to the Debtors' talc products on or prior to June 15, 2022." Motion 20 (Edward P. Abbot Decl. ¶ 5).

In brief and as the parties agree, the Bar Date Order in this case is typical of orders issued in most Chapter 11 cases as a means to permit debtors to identify, challenge or quantify, and plan for the satisfaction of all allowed claims against them. This is a key means of achieving the Bankruptcy Code's objectives of ensuring the orderly and just treatment of creditors while facilitating the reorganization of debtors' affairs.

The Bankruptcy Code further authorizes debtors to propose and courts to confirm plans of reorganization, which must provide for the treatment of claims, 11 U.S.C. § 1123(a), may

provide for the discharge of claims, 11 U.S.C. § 1123(b)(1), and may enjoin all current or future

enforcement or collection efforts on account of claims that are subject to the Plan, *id.* "[T]he

confirmation of a plan discharges the debtor from any debt that arose before the date of such

confirmation . . . whether or not- (i) a proof of the claim based on such debt is filed or deemed

filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan." 11 U.S.C.A. § 1141(d)(1)(A) (West).

Furthermore, "A discharge in a case under this title (1) voids any judgment at any time obtained,

to the extent that such judgment is a determination of the personal liability of the debtor with

respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title,

whether or not discharge of such debt is waived; [and] (2) operates as an injunction against the

commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor, whether or not discharge of

such debt is waived." 11 U.S.C.A. § 524(a) (West).

A threshold question here, then, is whether under the Bankruptcy Code the Talc

Claimants held prepetition "claims" against the Debtors. They did. The Bankruptcy Code defines

a "claim" to include any "right to payment, whether or not such right is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured." 11 U.S.C.A. § 101(5)(A) (West). Consistent with this broad

definition, "[i]n the context of future asbestos claimants, courts have repeatedly found that

prepetition exposure to asbestos giving rise to a post-petition injury manifesting constitutes a

prepetition claim in bankruptcy." *In re Johns-Manville Corp.*, 552 B.R. 221, 237 (Bankr.

S.D.N.Y. 2016) (citing cases), *aff'd sub nom. Berry v. Graphic Packaging Int'l, Inc. (In re Johns-*

*Manville Corp.)*, 623 B.R. 242 (S.D.N.Y. 2020), *aff'd sub nom. Berry v. Graphic Packaging Int'l*

*(In re Johns-Manville Corp.)*, No. 20-3693-BK, 2022 WL 4487889 (2d Cir. Sept. 28, 2022). Per the Declaration of Edward P. Abbot, which the Talc Claimants have not challenged, all the Talc Claimants bring claims "arising from the use of or exposure to the Debtors' talc products on or prior to June 15, 2022 [the petition date]," Motion 20 (Edward P. Abbot Decl. ¶ 5), making them prepetition claimants. To the questionable extent the Talc Claimants assert otherwise (they have not mounted a serious argument on this point), the Court rejects their argument as inconsistent with the evidence presented in support of the motion, the plain statutory language quoted immediately above, and case law including *Johns-Manville*.

Thus, the Court turns to the Talc Claimants' two main arguments, which are, respectively, that the Plan cannot discharge or bar their claims because the Plan does not provide for the treatment of their claims in keeping with 11 U.S.C. § 524(g), and that their claims are not extinguished because they received insufficient notice and therefore cannot be bound by the discharge and injunction consistent with the constitutional requirements of due process.

**Issue 1: 11 U.S.C. § 524(g)**

"[I]nterpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (internal quotations omitted).

Congress added Subsection (g) to Section 524 of the Bankruptcy Code in 1994. Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 111, 108 Stat. 4106 (codified at 11 U.S.C. § 524(g)). The opening text of this subsection reads, "After notice and hearing, a court that enters an order confirming a plan of reorganization under chapter 11 **may issue**, in connection with such order, an injunction in accordance with this subsection **to supplement the**

**injunctive effect of a discharge under this section**." 11 U.S.C.A. § 524(g)(1)(A) (West)
(emphasis added). As noted above, Section 524(a) already enjoins any act to collect on a debt
discharged under Section 1141. Section 524(g) goes further and includes a detailed scheme that
meets the special needs of bankruptcy cases in which the debtor faces extensive liability on
account of asbestos-related claims. Such cases often involve an insolvent debtor seeking to
provide for an enormous number of claimants whose illnesses may not manifest for many years;
they also frequently involve claimants' simultaneous and continuing efforts to recover from
solvent non-debtor parties, including insurers. *See, e.g.*, *Parra v. Marsh USA, Inc. (In re Johns-
Manville Corp.)*, 551 B.R. 104, 107-13 (S.D.N.Y. 2016).

Section 524(g) uses unmistakably permissive or optional language – *e.g.*, a plan "may"
include such provisions – and nothing in the statute's text terms the provision the exclusive or
mandatory way debtors must treat claims that stem from asbestos exposure. To the extent that
alone were not dispositive, reading Section 524(g) in context with the generally applicable
discharge provisions of Bankruptcy Code Section 1141(d) confirms that Section 524(g) is not the
exclusive means of dealing with asbestos claims for at least two reasons. First, Section 524(g)
refers to itself as available "to supplement the injunctive effect of a discharge under this section,"
11 U.S.C. § 524(g)(1)(A), thus suggesting that the Code's separate discharge provisions remain
applicable and are "supplemented" – not disturbed or eliminated – by the additional relief that
Section 524(g) authorizes. Second, no part of Section 1141(d) carves out any exception to
discharge for asbestos claims or refers to Section § 524(g) as an exclusive or required method of
accomplishing a discharge of asbestos-exposure liability. *See* 11 U.S.C. § 1141(d).

Further, as recently explained by the Supreme Court, at least one main purpose of 11
U.S.C. § 524(g) is to extend the protection of a plan injunction to non-debtors in the narrow

context of asbestos-related cases: "For asbestos-related bankruptcies—and only for such

bankruptcies—Congress has provided that, '[n]otwithstanding' the usual rule that a debtor's

discharge does not affect the liabilities of others on that same debt, [11 U.S.C.] § 524(e), courts

may issue 'an injunction ... bar[ring] any action directed against a third party' under certain

statutorily specified circumstances." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2085

(2024) (quoting 11 U.S.C. § 524(g)).

    In keeping with the statute's permissive and non-mandatory text, none of the cases cited

by the Talc Claimants hold the use of 11 U.S.C. § 524(g) to be mandatory for debtors to obtain

the discharge of prepetition asbestos claims against them. One decision refers to itself as "a

cautionary tale for debtors attempting to circumvent § 524(g)," but nowhere holds that the debtor

needed to structure its bankruptcy plan using Section 524(g) to discharge asbestos claims. *In re

Energy Future Holdings Corp*, 949 F.3d 806, 825 (3d Cir. 2020). Another does not rule on an

asbestos-related claim at all, rendering its remarks on Section 524(g) dicta. *See Morgan Olson

L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 697-99 (S.D.N.Y. 2012).

    The remaining cases cited by the Talc Claimants address whether third parties who did

not file for bankruptcy nevertheless may secure non-consensual releases from a bankruptcy case

in which they were not a debtor. *See Parra*, 551 B.R. at 120-124 (S.D.N.Y. 2016); *Deutsche

Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d

136, 142-43 (2d Cir. 2005); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 & n.50 (3d Cir.

2004), *as amended* (Feb. 23, 2005). By contrast, the Talc Claimants now before this Court assert

claims against the Debtors in this case, not against non-debtor parties who never filed for

bankruptcy. The third-party release cases that the Talc Claimants cite do not rule or even shed

light on the question of whether *debtors* must use the provisions of 11 U.S.C. § 524(g) if they wish to obtain a discharge of *their own* asbestos-related liabilities.

Meanwhile, the Debtors point out that the Second Circuit has rejected the argument that the lack of a future claims representative, which the Talc Claimants assert the Bankruptcy Code and due process require, amounted to a denial of due process as to a claimant who brought an asbestos-liability claim against a debtor that had gone through bankruptcy. *See Berry*, 2022 WL 4487889, at *3 ("Mr. Berry argues that because the MFP bankruptcy lacked a Future Claims Representative ("FCR"), Mrs. Berry was denied due process. But he is unable to cite any binding decision in which a court has held that a FCR is *necessary* to comport with constitutional due process. . . . We thus conclude that Mrs. Berry received constitutionally adequate due process.").

Having reviewed the unmistakably non-mandatory and discretion-conferring text of 11 U.S.C. § 524(g) along with its express provision for channeling injunctions protecting non-debtor parties as a means of resolving potentially sweeping asbestos-related claims, and having studied relevant case law including that cited by the parties, the Court concludes that that Section 524(g) does not affect the ability of a debtor in bankruptcy to obtain a discharge from asbestos-related liability through a plan that does not employ the means established by Section 524(g). Rather, that provision supplements other available relief, including by authorizing resolution of asbestos liability that extends to non-debtor third parties in ways that the Code otherwise would not allow. This conclusion is reinforced by the Supreme Court's recent *Purdue Pharma* decision: "We do not read § 524(g) to 'impair' or 'modify' authority previously available to courts in bankruptcy." 144 S. Ct. at 2085 n.5. Thus, Section 524(g) does not override or defeat a debtor's ability to secure a discharge of asbestos-related liabilities *as against the debtor* under the more general provisions of 11 U.S.C. §§ 1141(d)(1)(A), 524(a).

**Issue 2: Notice**

The Talc Claimants further argue that ineffective notice deprives the Plan of the power to discharge their claims. *See* Caplin Opposition ¶ 24 ("[T]he Debtors' notice program was wholly insufficient. Accordingly, enforcement of a discharge against those claimants would be unconstitutional.").

There is no real factual dispute about what steps the Debtors took to provide notice of the relevant bar date, which the parties appear to agree was, for purposes of this motion, the key event for which notice was required. Having obtained Court approval to do so, the Debtors published their general bar date notice in national editions of the *New York Times*, *USA Today*, and Canada's *Globe and Mail*. Main Case, Certificate of Publication, Sept. 27, 2022, ECF No. 758. That notice stated that all persons holding claims "no matter how remote or contingent such right to payment or equitable remedy may be (including claims for potential unmatured injuries), with certain limited exceptions as set forth in the Bar Date Order, **MUST FILE A PROOF OF CLAIM** on or before 5:00 p.m., prevailing Eastern Time, on October 24, 2022 (the 'General Bar Date')." Bar Date Order Ex. 3 (emphasis in original). It further advised that "**ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM: (A) ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR ESTATES . . . .**" *Id.* (emphasis in original). As the Debtors acknowledge, the Publication Notice did not include or specifically reference the words "asbestos" or "talc," and it did not include any more detailed information or guidance directed specifically to talc or asbestos claimants. *See id.*

14

**SA14**

The Debtors also published notice of their confirmation hearing in the *New York Times*, *USA Today*, and Canada's *Globe and Mail*. Main Case, Certificate of Publication, Mar. 14, 2023, ECF No. 1601. That notice stated that "[i]f confirmed, the Plan shall bind all Holders of Claims" but that Talc Personal Injury Claims against non-debtors would remain unaffected. *See id.*

As a general rule, to bind any holder of a claim against a debtor, a debtor's bankruptcy plan must provide that creditor with "notice sufficient to satisfy due process," *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02 CIV. 9629 (NRB), 2003 WL 21355214, at *3 (S.D.N.Y. June 11, 2003)*, and a discharge and plan injunction enforcing a bar date do not extinguish the claim of a creditor who did not receive sufficient notice. *Grant v. U.S. Home Corp. (In re U.S.H. Corp. of N.Y.)*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)* ("Thus, if a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged."). As a general matter, due process requirements are met when a debtor provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 157 B.R. 220, 221 (S.D.N.Y. 1993)* (quoting *Mullane v. Central Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950)).

"[W]hat constitutes 'reasonable notice' principally depends on the status of the parties and whether the creditor is a 'known' creditor or an 'unknown' creditor. While actual notice is required if the creditor is a 'known' creditor, constructive notice is sufficient where a creditor is 'unknown.'" *DePippo v. Kmart Corp.*, 335 B.R. 290, 295–96 (S.D.N.Y. 2005)* (further citations omitted). "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more

adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950) (further citations omitted); *see also, e.g.*, *DePippo*, 335 B.R. at 296 (quoting *id.*).

Extensive case law defines "known" and "unknown" creditors in the bankruptcy context. A "'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *DePippo*, 335 B.R. at 296 (citing *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" *Id.* (quoting *Grant*, 223 B.R. at 659). "Reasonable diligence does not require 'impracticable and extended searches . . . in the name of due process.'" *Grant*, 223 B.R. at 659 (quoting *Mullane,* 339 U.S. at 317-18). "The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." *Id.*

The burden of proving inadequate notice lies with the party contending that a plan's discharge or injunction does not apply – here, the Talc Claimants. *In re Chemtura Corp.*, No. 09-11233 (JLG), 2016 WL 11651714, at *8 (Bankr. S.D.N.Y. Nov. 23, 2016) ("As the parties challenging enforcement of the Discharge Injunction, the Benzene Claimants bear the burden of proving that it does not bar their actions." (citing *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 200 B.R. 770, 774-75 (Bankr. S.D.N.Y. 1996))). None of the Talc Claimants filed their lawsuits against the Debtors before the Debtors filed bankruptcy, and the Talc Claimants admit they are unknown creditors for purposes of due process. *See* Motion Ex. B, Annex 1; Talc

Hr'g Tr. 44:4-7. The Talc Claimants also do not dispute that they at most had the right to

publication notice. Talc Hr'g Tr. 44:19-20.

The Talc Claimants argue, however, that the published notices the Debtors gave failed to

satisfy due process requirements, largely because the bar date notice did not mention talc at all.

*See* Caplin Opposition ¶¶ 26-29, 35.[3] The Talc Claimants point out that cases cited by the

Debtors in which debtors exerted themselves to provide notice to specific groups of potential

toxic-tort plaintiffs provide little support to the Debtors in this case, because the Debtors made

no such effort with respect to the Talc Claimants and persons in their position. *Compare* Bar Date

Application ¶¶ 25-26 *and* Bar Date Order ¶ 2 *and id.* Ex. 3 (nowhere mentioning talc or asbestos)

*with* In re Energy Future Holdings Corp*, 949 F.3d 806, 823 (3d Cir. 2020)* (discussing extensive

efforts to give notice to potential asbestos claimants) *and* Transcript of Hearing at 26:21-28:20,

*In re Chemtura Corp.*, No. 09-11233 (JLG) (Bankr. S.D.N.Y. Jan. 31, 2013) (ECF No. 5818).

However, those cases did not hold that due process required such exertions. *See* In re Energy

Future Holdings Corp*, 949 F.3d at 822–23* (holding debtors' extensive noticing program

sufficient to satisfy due process, but nowhere holding a program of such extent necessary);

Gabauer v. Chemtura Corp. (In re Chemtura Corp.)*, 505 B.R. 427, 431 (S.D.N.Y. 2014)* (same).

Furthermore, as a practical matter, it is unclear what sort of targeted or more-focused messaging

the Debtors could have achieved with respect to the Talc Claimants and persons in their position,

and the Talc Claimants have suggested no method for doing so. Further, well-reasoned precedent

---

[3] It is unclear to the Court whether the Talc Claimants assert that they were given insufficient notice of the
bankruptcy case itself, as opposed to the bar date. Any claim of insufficient notice of the bankruptcy case would fail.
As noted, the Debtors served a large group of creditors with specific notice of the bankruptcy case and provided
publication notice of the bankruptcy case. Main Case, Aff. of Service of Notice of Commencement Ex. A, ECF No.
54; Main Case, Certificate of Publication, June 27, 2022, ECF No. 128. The acknowledged reality that the Talc
Claimants were unknown creditors means that publication notice of the bankruptcy case is all that was required, and,
for the same reasons discussed as to the bar date notice, the publication notice provided here met all applicable
requirements as to notice of the case itself, including those of due process.

from outside this circuit explicitly holds such efforts unnecessary. _Williams v. Placid Oil Co. (In re Placid Oil Co.)_, 753 F.3d 151, 158 (5th Cir. 2014) ("We have never required bar date notices to contain information about specific potential claims. To the contrary, we have determined that publication in the national edition of the _Wall Street Journal_ discharges the pre-confirmation claims of unknown creditors."); _Chemetron Corp. v. Jones_, 72 F.3d 341, 348 (3d Cir. 1995) ("It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.") (internal quotations omitted).

Meanwhile, of the numerous cases that the parties cite, the Court concludes that _In re Chemtura Corp._, No. 09-11233 (JLG), 2016 WL 11651714 (Bankr. S.D.N.Y. Nov. 23, 2016), presents facts most like those here. That case involved claims brought by unknown creditors who suffered from prepetition exposure to benzene in the debtors' products. _In re Chemtura Corp._, 2016 WL 11651714, at *5-7. In that case, the claimants argued that lack of notice prevented the confirmed bankruptcy plan from discharging their claims because, among other things, the debtors' published bar date notice did not mention benzene. _Id._ at *14. Furthermore, in that case, the debtors' publication process made no effort to target users of the debtors' products, although it did target localities where the debtors had faced environmental contamination and workplace-exposure toxic tort claims. _Id._ at *3, *14. The debtors published their general bar date notice in the _New York Times_ and _USA Today_, stating that "[a]cts or omissions that occurred before March 18, 2009 may give rise to Claims that are subject to the Bar Date, even if the Claims _may not have become known or fixed or liquidated until after March 18, 2009_." _Id._ at *15 (quoting _In re Chemtura Corp._, No. 09-11233 (Bankr. S.D.N.Y. Aug. 21, 2009) (order granting motion to approve setting a bar date)) (emphasis in text of quoted decision). That notice also "advised unknown creditors that the failure to file a proof of claim by the Bar Date would result in the

claim being 'FOREVER BARRED.'" *Id.* (quoting *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. Aug. 21, 2009) (order granting motion to approve setting a bar date) (capitalized text in internally quoted notice)).

In such circumstances, which are much like those here, the *Chemtura* court ruled that "The Bar Date notice contained more than adequate information and language that placed parties on notice of the opportunity to assert claims (and even potential claims) against the Debtors (including the Debtors' predecessors) by the Bar Date, and was disseminated to different geographical regions of the country intended to maximize the reach of unknown creditors, such as the Benzene Claimants." *Id.* So the Court concludes here: the bar date notice did not specify talc claimants as among its intended audience, but it described the claims covered in broad terms that clearly encompassed the Talc Claimants, stating that all persons holding claims "no matter how remote or contingent such right to payment or equitable remedy may be (including claims for potential unmatured injuries)" were obliged to file a timely claim or be forever barred from collecting from the Debtors. Bar Date Order Ex. 3. Effective and sufficient notice required nothing more.

Other cases cited by the Talc Claimants do not better support their position. They cite one case that observed that "[a] creditor who is notified of the bankruptcy but not of his claim is in the same position as a creditor who has notice of his claim, but not of the bankruptcy." *Acevedo v. Van Dorn Plastic Mach. Co.*, 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986) (allowing claim to proceed). However, in *Acevedo*, a non-debtor worker sued a non-debtor manufacturer for a products-liability tort arising from an injury caused by a machine in the plaintiff's workplace, and the defendant asserted a claim against the plaintiff-worker's employer, the reorganized debtor, for indemnity and contribution. *Id.* at 496–97. As the injury occurred prepetition and on

19

**SA19**

the premises of the future debtor, for whom the plaintiff worked as an employee, *see id.*, a diligent search of the debtor's books and records would be much more likely to have revealed that accident and any potential claims exposure the debtor would have faced than a search of Revlon's books and records would have been to reveal the Talc Claimants, who were mere consumers of Revlon products and whose apparently still-latent injuries were not practicably identifiable by Revlon. The toxic-products-exposure facts of *Chemtura* fit this case better than the workplace-injury situation in *Acevedo*.

The Talc Claimants also argue that if a claimant could not have predicted the effect of a notice when they received it, the notice cannot satisfy due process. *See Johns-Manville Corp. v. Chubb Indem. Ins. (In re Johns-Manville Corp.)*, 600 F.3d 135, 157 (2d Cir. 2010) ("In order to comprehend that the contemplated channeling injunction would bar Chubb's *in personam*, non-derivative claims against Travelers, the recipient of this Notice would have to predict that the bankruptcy court would exceed its *in rem* jurisdiction in entering the 1986 Orders. Such a recipient would also have to be presumed to know—or to be able to discern from the 1984 Notice document—the factual extent of Travelers' relationship with Manville, which ultimately served as the lynchpin of the bankruptcy court's 2004 interpretation of the 1986 Orders."). In that case, the Second Circuit concluded that Chubb, an insurer of the bankrupt Johns-Manville Corporation, lacked notice that 1986 orders of the bankruptcy court barred Chubb from bringing contribution and indemnity claims against co-insurer Travelers Insurance with respect to "statutory direct actions" and "common law direct actions" asserted by asbestos claimants against Chubb when no asbestos claimants had raised those two theories of liability at the time of the entry of the 1986 orders. *Id.*; *see also id.* at 158 (describing Chubb's claims against Travelers as "unimaginable" at the time of the entry of the 1986 orders). By contrast, here, the plain

language of the Publication Notice explained that all claims against the Debtors, "no matter how remote or contingent . . . including claims for potential unmatured injuries," needed to be filed by the appropriate bar date. Bar Date Order Ex. 3. The Publication Notice thus precisely describes the Talc Claimants' claims against Revlon, which amount to typical asbestos-exposure claims that either had or had not manifested in illness and that flowed from use of Revlon products. This reality negates any comparison with the logical leap Chubb would have needed to make to comprehend the notice at issue in *In re Johns-Manville Corp.*

Two opinions in the Waterman Steamship Corporation bankruptcy case also do not tip the balance in favor of the Talc Claimants. The Bankruptcy Court held that "no future Asbestosis Claimant could be deemed to have relinquished substantive rights when, even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected." *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.), 141 B.R. 552, 558 (Bankr. S.D.N.Y. 1992)*, *vacated* 157 B.R. 220 (S.D.N.Y. 1993). The District Court vacated the Bankruptcy Court's holding but stated that the Bankruptcy Court's logic should stand as to claimants who had not manifested symptoms of asbestos-related diseases at the time of notice. *Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.), 157 B.R. 220, 222 (S.D.N.Y. 1993)*. However, the Bankruptcy Court ruled for the claimants in that case on the basis that the claimants counted as known creditors. *Waterman S.S. Corp., 141 B.R. at 558* ("Of the 'tens of thousands' of Waterman employees, Waterman knew other employees were exposed to asbestos, yet never listed them on its schedules, or amended its schedules to include this contingent class of claimants. We find that Waterman knew other non-settling former employees had contingent claims in the form of unmanifested asbestos-related diseases prior to confirmation. Thus, Asbestosis Claimants were known creditors entitled to actual notice."). The

**SA21**

decisions in *In re Waterman S.S. Corp.* had some reason to classify the asbestos claimants as known claimants or otherwise conclude that the debtor had some higher duty towards them, because, despite lacking records of them, the debtor had employed each one of them and presumably understood that its workforce constituted a high-risk group. *See id.* at 554, 558. By contrast, and contrary to the express finding of *Waterman S.S. Corp.*, in the case now before the Court the Talc Claimants' counsel conceded at hearing that the Talc Claimants belong to the set of Revlon's unknown creditors. Talc Hr'g Tr. 44:4-20. Furthermore, the Talc Claimants do not allege, and nothing in the record suggests, that the Debtors could have known about either the claimants' identities or the extent of asbestos exposure the Talc Claimants faced from the Debtors' products to the same degree that the *Waterman S.S. Corp.* debtors knew about the exposure of their workforce to asbestos on their ships. For these reasons, the *In re Waterman S.S. Corp.* cases are inapposite.

Lastly, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), is inapposite for two reasons. First, the Supreme Court in *Amchem* declined to rest its ruling on the question of notice. 521 U.S. at 628 ("Because we have concluded that the class in this case cannot satisfy the requirements of common issue predominance and adequacy of representation, we need not rule, definitively, on the notice given here."). Second, *Amchem* is a class-action case, not a bankruptcy case, which affects the notice analysis a court performs. *See In re Chemtura Corp.*, 2016 WL 11651714, at *14 ("However, *Amchem* was a class action case, not a bankruptcy case. . . . [I]t is inappropriate to apply the subjective notice standards under class action law in evaluating the adequacy of a bar date notice in a bankruptcy case."); *In re Johns-Manville Corp.*, 552 B.R. 221, 244 (Bankr. S.D.N.Y. 2016) ("Notice in a bankruptcy case is not for the purpose of allowing a creditor to retain the right to sue the debtor at a later time. The discharge created by the

Bankruptcy Code permanently enjoins any right to sue on a prepetition claim. The reasoning in *Amchem* simply does not apply here."), *aff'd sub nom. Berry v. Graphic Packaging Int'l, Inc. (In re Johns-Manville Corp.)*, 623 B.R. 242 (S.D.N.Y. 2020), *aff'd sub nom. Berry v. Graphic Packaging Int'l (In re Johns-Manville Corp.)*, No. 20-3693-BK, 2022 WL 4487889 (2d Cir. Sept. 28, 2022). *Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001), is inapposite for the same reasons. As the Second Circuit has recognized, *in rem* proceedings conducted by bankruptcy courts have due process standards different from those in *in personam* class action proceedings. *Johns-Manville Corp. v. Chubb Indem. Ins. (In re Johns-Manville Corp.)*, 600 F.3d 135, 154 (2d Cir. 2010) ("But, because the 1986 Orders purport to bind Chubb's *in personam* claims, the better due process analogy in terms of notice and representation principles is to class action settlements, not *in rem* bankruptcy proceedings.").

The Court thus concludes that the weight of the law favors the Debtors and that the Talc Claimants have failed to carry their burden of showing the Debtors provided inadequate notice.

## CONCLUSION

For the reasons stated above, the Court grants the Second Omnibus Motion to Enforce the Plan Injunction and Confirmation Order. The Debtors shall submit an appropriate proposed order to effectuate this ruling. The Talc Claimants' time to appeal will run from entry of that order. It is so ordered.

Dated: New York, New York
   August 12, 2024

          _____*s/ David S. Jones*_____
          Honorable David S. Jones
          United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RML, LLC[1] | Case No. 22-10784 (DSJ) |
| Reorganized Debtor. | |
| Tax I.D. No. N/A | |

## ORDER GRANTING REORGANIZED DEBTORS' SECOND OMNIBUS MOTION TO ENFORCE PLAN INJUCTION AND CONFIRMATION ORDER

Upon the motion (the "Motion")[2] of the above-captioned reorganized debtors (before the

effective date of their chapter 11 plan of reorganization, the "Debtors" and after the effective date

of their plan of reorganization, the "Reorganized Debtors") for entry of an order (this "Order")

enforcing the discharge and injunction provisions of the Plan and Confirmation Order and pursuant

to sections 105(d), 524, and 1141 of the Bankruptcy Code, Bankruptcy Rules 1015(c), 3020(d)

and 9007, Articles X.B and X.G of the Plan, and paragraphs 140 and 145 of the Confirmation

Order, all as more fully set forth in the Motion; and upon the Abbot Declaration; and this Court

having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference from the United States District Court for the Southern*

*District of New York*, dated January 31, 2012; and this Court having found that it may enter a final

---

[1]   On May 30, 2023, the Court entered the *Order (I) Consolidating the Administration of the Remaining Matters at the Remaining Case, (II) Entering a Final Decree Closing the Affiliate Cases, (III) Changing the Case Caption of the Remaining Case, and (IV) Granting Related Relief, In re Revlon, Inc., et al.*, No. 22-10760 (DSJ) [Docket No. 1920], closing the affiliated chapter 11 cases and directing that all motions, notices, and other pleadings related to any of the affiliated debtors be filed in this case. Items filed on the docket of *In re RML, LLC*, shall be identified as "RML Docket No. [●]." The location of RML, LLC's service address for purposes of these Chapter 11 Cases is:  55 Water St., 43rd Floor, New York, NY 10041-0004.

[2]   Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Motion.

order consistent with Article III of the United States Constitution; and this Court having found that

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b);

and this Court having found that the relief requested in the Motion is in the best interests of the

Reorganized Debtors, their estates, their creditors, and other parties in interest; and this Court

having found that the Reorganized Debtors' notice of the Motion and opportunity for a hearing on

the Motion were appropriate under the circumstances and no other notice need be provided; and

this Court having reviewed the Motion and having heard the statements in support of and against

the relief requested therein at a hearing before this Court on June 27, 2024 (the "Hearing"); and

this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and this Court having overruled all

objections to the relief requested in the Motion for the reasons set forth in the *Decision on

Reorganized Debtors' Second Omnibus Motion to Enforce the Plan Injunction* [Docket No. 1107]

(the "Decision"); and upon all of the proceedings had before this Court; and after due deliberation

and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein for the reasons set forth in the Decision.

2.      No later than fourteen days after the Reorganized Debtors have filed an

Enforcement Order Notice in such Plaintiff's Noncompliant Pending Action, each Plaintiff listed

in **Annex 1** attached hereto shall take all appropriate actions to dismiss their Noncompliant

Pending Actions against the Debtors and/or Reorganized Debtors within such fourteen-day period.

The Reorganized Debtors shall provide each Plaintiff listed in **Annex 1** attached hereto with a

proposed form of notice of dismissal, stipulation of dismissal, or other documentation or pleadings

sufficient for each such Plaintiff to customize, as applicable, and dismiss their complaint, along

with directions explaining the steps Plaintiffs must take to customize and file such documentation or pleadings or otherwise effectuate a dismissal of their complaint in compliance with this Order.

3.      If a Plaintiff fails to take all appropriate actions to dismiss their Noncompliant Pending Action against the Debtors and/or Reorganized Debtors within such fourteen-day period, this Court, upon further motion of the Reorganized Debtors, to which any affected individual may object or otherwise respond, may issue an order holding such Plaintiff in contempt of the Court for violating the terms of this Order and the Plan Injunction by virtue of such Plaintiff's actions in violation of the Plan and Confirmation Order.

4.      In connection with any contempt proceeding against a Plaintiff, the Reorganized Debtors shall be permitted to seek sanctions upon further motion in this Court for reasonable fees and costs incurred by the Reorganized Debtors after the date of this Order in connection with this matter.

5.      The Reorganized Debtors are authorized to take any and all actions reasonably necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion, including authorization to file a notice in a form substantially similar to that attached hereto as **Annex 2** (the "Enforcement Order Notice") in each Noncompliant Pending Action, which notice shall include a description of this Order, the applicable Noncompliant Pending Action subject to this Order that remains pending, and the Reorganized Debtors' ability to seek sanctions in the event that a Plaintiff in a Noncompliant Pending Action fails to dismiss the Debtors and/or Reorganized Debtors as defendants in the Noncompliant Pending Action within fourteen days of filing of the Enforcement Order Notice.

3

**SA26**

6.      ~~Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.~~ **[DSJ 8/14/2024]**

7.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: New York, New York
       August 14, 2024

                              _____*s/ David S. Jones*_____
                              HONORABLE DAVID S. JONES
                              UNITED STATES BANKRUPTCY JUDGE

4

**SA27**

## Annex 1

**Table of Noncompliant Pending Actions**

22-10784-dsj    Doc 1110    Filed 08/14/24    Entered 08/14/24 15:32:43    Main Document
Pg 6 of 15

**Noncompliant Pending Actions**

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Adams | Sheri | The Lanier Law Firm PLLC | Sheri Adams v. Alberto-Culver USA Inc., et al. | New York County Supreme Court, New York | 190233/2023 | 9/20/2023 | 9/29/2023 |
| Alarcon | Carmen | Kazan, McClain, Satterley & Greenwood | Carmen Alarcon and Francisco Alarcon v. Vanderbilt Minerals, LLC, sued individually, as alter-ego of, and as successor-in-interest to R.T. Vanderbilt Company, Inc. and International Talc Company, Inc., et al. | Superior Court of the State of California – County of Alameda | 24CV064411 | 2/16/2024 | 3/12/2024 |
| Annerosa | Elaine | Maune Raichle Hartley French & Mudd, LLC | Elaine M. Annerosa v. Annerlure Inc., et al | Oneida County Supreme Court, New York | EFCA2023-002100 | 8/21/2023 | 10/3/2023 |
| Andoe | Howard G. | Maune Raichle Hartley French & Mudd, LLC | Margaret J. Andoe, etc., Todd Andoe and Eric Andoe vs. Avon Products, Inc., Clark Construction Group LLC, etc., et al. | Superior Court of the State of California – County of Alameda | 24CV073820 | 4/30/2024 | 5/9/2024 |
| Bell | Judy Kay (Est) | Meirowitz & Wasserberg, LLP | Scott Bell, as Personal Representative for the Estate of Judy Kay Bell vs. Almay, Inc., et al. | New York County Supreme Court, New York | 190090/2024 | 3/25/2024 | 4/3/2024 |
| Betts | Susan | Simon Greenstone Panatier, P.C. | Susan Betts vs. Christian Dior, Inc., et al. | New York County Supreme Court, New York | 190119/2024 | 4/18/2024 | 4/23/2024 |
| Buitrago | Agatha | Meirowitz & Wasserberg, LLP | Agatha Buitrago and Antonio Buitrago v. ACME Markets, Inc., et al. | New York County Supreme Court, New York | 190279/2023 | 10/19/2023 | 10/24/2023 |

22-10784-dsj    Doc 1110    Filed 08/14/24    Entered 08/14/24 15:32:43    Main Document
Pg 7 of 15

2

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Clawson | Linda | Meirowitz & Wasserberg, LLP | Linda Clawson and Billy Clawson v. Avon Products, Inc., et al. | New York County Supreme Court, New York | 190157/2023 | 5/26/2023 | 7/11/2023 |
| Cline | Susan | Dean Omar Branham Shirley, LLP | Susan Cline and Patrick Cline vs. Acme Markets, Inc., et al. | Court of Common Pleas of Allegheny County, Pennsylvania | 23-012897 | 11/30/2023 | 12/1/2023 |
| Craft | Cherie | Dean Omar Branham Shirley, LLP - Brown Kiely LLP | Cherie A. Craft v. Ahold Delhaize USA, Inc., et al. | Baltimore City Circuit Court, Maryland | 24-X-24-000005 | 3/15/2024 | 4/3/2024 |
| Daher | Joyce (Dec) | Karst & von Oiste, LLP - Menges Law Firm | Michael R. Peacock, etc. v. Avon Products, Inc., et al. | City of St Louis 22nd Judicial Circuit Court, Missouri | 2322-CC00162 | 8/25/2023 | 9/11/2023 |
| Delgado | Ana | Karst & von Oiste, LLP - Menges Law Firm | Ana M. Delgado v. Avon Products, et al. | Circuit Court of St. Clair County, Illinois | 24-LA-0282 | 2/20/2024 | 3/6/2024 |
| Dobbs | Sheryl | Weitz & Luxenberg, P.C. | Sheryl Dobbs v. Avon Products, Inc., et al. | Middlesex County Superior Court, New Jersey | MID-L-2426-24 AS | 4/23/2024 | 4/26/2024 |
| Elacqua | Ann Marie | Simmons Hanly Conroy | Ann Marie Elacqua and, Michael Joseph Kaminsky, her husband v. Avon Products, Inc., et al | New York Supreme Court, County of Rensselaer | EF2023-275144 | 10/13/2023 | 10/19/2023 |
| Evans | Dolores | Kazan, McClain, Satterley & Greenwood | Chrystal Evans-Bowman, individually and as successor-in-interest to Dolores Evans v. Johnson & Johnson, et. al. | Superior Court of the State of California – County of Alameda | 23CV043499 | 11/8/2023 | 11/16/2023 |

3

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Ferris | Julie | Meirowitz & Wasserberg, LLP | Julie Ferris vs. Avon Products, Inc., et al. | New York County Supreme Court, New York | 190008/2024 | 2/5/2024 | 3/8/2024 |
| Fisler | Cynthia | Rebecca Vinocur, P.A. | Cynthia Fisler, et al. vs. American International Industries Individually and as successor in interest to Pinaud, Inc. etc., et al | Broward County 17th Judicial Circuit Court, Florida | 24-0005907 CA27 | 4/26/2024 | 5/22/2024 |
| Forslund | Carla | Simon Greenstone Panatier, P.C. | Carla Forslund and Blake Forslund vs. Charles B. Chrystal Company, Inc., et al. | New York County Supreme Court, New York | 190137/2024 | 5/7/2024 | 5/16/2024 |
| Getken | Anna Marie | Dean Omar Branham Shirley, LLP & Kassel McEvey | Andrew T. Getken, individually and as Personal Representative of the Estate of Anna Marie L. Getken, deceased. v. Avon Products, Inc., et al. | Richland County Fifth Judicial Circuit Common Pleas Court, South Carolina | 2023CP40061 11 | 11/15/2023 | 12/1/2023 |
| Giroir | Glenda T. | Dean Omar Branham Shirley, LLP - Landry & Swan LLC | Glenda T. Giroir and Dale Giroir v. Anco Insulations, Inc., et al. | Parish of Orleans Civil District Court, Louisiana | C-745104 "32" | 3/7/2024 | 3/28/2024 |
| Goode-Evans | Dorothy | Dean Omar Branham Shirley, LLP- Thornton Law Firm | Dorothy Goode-Evans and Hebert Evans v. Avon Products, Inc., et al. | Commonwealth of Massachusetts Superior Court | 23-2-731 | 9/29/2023 | 10/12/2023 |
| Greenage | William | Meirowitz & Wasserberg, LLP | William Greenage v. Avon Products, Inc., et al. | New York County Supreme Court, New York | 190093/2023 | 6/22/2023 | 9/20/2023 |
| Haney | Verda | Dobs & Farinas, LLP | Verda Haney vs. Advance Stores Company Incorporated, et al. | Marion County Superior Court No. 13, Indiana | 49D13-2404-CT-019200 | 4/26/2024 | 5/17/2024 |

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Hatcher | Kimberly | Simmons Hanly Conroy | Kimberly Hatcher v. Albertson's LLC, et al. | Superior Court of the State of California – County of Alameda | 22CV021209 | 7/31/2023 | 8/30/2023 |
| Heard | Marlane | Simon Greenstone Panatier, P.C. | Marlane Heard vs. Charles B. Crystal Company, Inc., et al. | New York County Supreme Court, New York | 190123/2024 | 4/19/2024 | 4/23/2024 |
| How | Karen | Maune Raichle Hartley French & Mudd, LLC | Karen R. How and Peter M. How vs. Chanel, Inc., et al. | Cook County Circuit Court, Illinois | 24 L 3974 | 4/12/2024 | 4/22/2024 |
| Huxley | Aleksandra | Simon Greenstone Panatier, P.C. | Aleksandra Huxley and Howard Huxley vs. Conopco, Inc., et al. | New York County Supreme Court, New York | 190116/2024 | 4/17/2024 | 4/22/2024 |
| Jack | Mary | Maune Raichle Hartley French & Mudd, LLC | Mary L. Jack and David L. Dayden vs. Breuntag Specialties, Inc. f/k/a Mineral And Pigment Solutions, Inc., et al. | New York County Supreme Court, New York | 190035/2024 | 4/18/2024 | 5/8/2024 |
| Kershner | Barbara (Dec) | Weitz & Luxenberg, P.C. | Christa Ruth Machado, Individually and as Personal Representative of the Estate of Barbara Kershner, Deceased vs. Avon Products, Inc., et al. | Middlesex County Superior Court, New Jersey | MID-L-7200-23 AS | 12/22/2023 | 12/28/2023 |
| Mcracken King | Martha | Maune Raichle Hartley French & Mudd, LLC | Martha Mcracken King and Justin W. King vs. Alticor Inc. f/k/a Amway Corporation, for its Artistry cosmetics line of products, et al. | Broward County 17th Judicial Circuit Court, Florida | CACE-24-005989 | 5/1/2024 | 5/16/2024 |

4

22-10784-dsj   Doc 1110   Filed 08/14/24   Entered 08/14/24 15:32:43   Main Document
Pg 10 of 15

5

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Klar | Ilona | Simmons Hanly Conroy | Ilona Klar and Ronald Gaiser, her husband v. American International Industries, et al | Middlesex County Superior Court, New Jersey | MID-L-00017-6-24 | 1/9/2024 | 1/11/2024 |
| Latterell-Rice | Rebecca | Karst & von Oiste, LLP | Rebecca Latterell-Rice and Clair Brian Rice, her husband, v. Allicor, Inc. f/k/a Amway, et al. | Ramsey County Second Judicial District Court, Minnesota | 62-cv-24-545 | 1/25/2024 | 2/9/2024 |
| Macron | Marilyn | Simon Greenstone Panatier, P.C. | Marilyn Macron v. Revlon Group Holdings LLC, | New York County Supreme Court, New York | 190182/2023 | 8/30/2023 | 9/27/2023 |
| Mager | Jennifer | Frost Law Firm, P.C. | Jenifer Mager, et al. v. American International Industries, et al., | Los Angeles County Superior Court, California | 23STCV09956 | 5/3/2023 | 7/26/2023 |
| Matthews | Karol | Maune Raichle Hartley French & Mudd, LLC | Karol A. Matthews v. Avon Products, et. al. | Superior Court of the State of California – County of Alameda | 23CV045781 | 9/27/2023 | 10/20/2023 |
| Milford | Louise | Simon Greenstone Panatier, P.C. | Louise Milford and Christopher Milford vs. Chanel, Inc., et al. | New York County Supreme Court, New York | 190128/2024 | 4/22/2024 | 4/25/2024 |
| Navaretta | Josephine | Simon Greenstone Panatier, P.C. | Josephine Navaretta and John Navaretta vs. Christian Dior, Inc., et al. | New York County Supreme Court, New York | 190117/2024 | 4/17/2024 | 4/23/2024 |
| Ortiz | Johanna | Simmons Hanly Conroy | Johanna Ortiz, et al. v. Albertson's LLC, et al., | Los Angeles County Superior Court, California | 23STCV14552 | 6/22/2023 | 7/26/2023 |
| Flagg Perez | Rene | Phillips & Paolicelli, LLP | Rene Flagg Perez v. Avon Products, Inc. et al. | New York County Supreme Court, New York | 190111/2024 | 4/22/2024 | 5/8/2024 |

22-10784-dsj    Doc 1110    Filed 08/14/24    Entered 08/14/24 15:32:43    Main Document
Pg 11 of 15

6

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Perkins | Barbara | Frost Law Firm, P.C. | Barbara Perkins v. Barretts Minerals, Inc., et al | Superior Court of the State of California for the County of San Francisco | CGC-23-277164 | 9/29/2023 | 12/6/2023 |
| Perkins | Lorraine | Maune Raichle Hartley French & Mudd, LLC | Lorraine A. Perkins and Julia A. Knox vs. Avon Products, Inc., et al. | Cook County Circuit Court, Illinois | 24-L-3861 | 4/11/2024 | 4/16/2024 |
| Rand | Charlene | Weitz & Luxenberg, P.C. | Charlene Rand and Jason Rand, h/w vs. Block Drug Company, Inc., et al. | Middlesex County Superior Court, New Jersey | MID-L-7180-23 AS | 12/22/2023 | 12/28/2023 |
| Raso | Angelina (Dec) | Belluck & Fox, LLP | Teresa J. Raso and Fran C. Raso, as Co-Executor of the Estate of Angelina Raso, deceased vs. 84 Lumber Company, et al. | Supreme Court of the State of New York, County of Albany | 907336-23 | 4/11/2024 | 4/23/2024 |
| Reed | Wesley | Lipsitz Ponterio / Simon Greenstone Panatier, P.C. | Wesley Reed and Judy Reed vs. Sumitomo Corporation of Americas, et al. | New York Supreme Court, County of Onondaga | 004170/2024 | 4/22/2024 | 4/24/2024 |
| Ross | Robyn | Maune Raichle Hartley French & Mudd, LLC | Robyn E. Ross vs. Brenntag Specialties, LLC, f/k/a Mineral and Pigment Solutions, Inc., individually as a successor-in-interest to Whittaker, Clark & Daniels, Inc., et al. | Middlesex County Superior Court, New Jersey | MID-L-002873-24 | 5/14/2024 | 5/16/2024 |

**SA34**

22-10784-dsj    Doc 1110    Filed 08/14/24    Entered 08/14/24 15:32:43    Main Document
Pg 12 of 15

7

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Rosas | Silvia | Frost Law Firm, P.C. | Silvia V. Rosas, individually and as Successor-in-Interest to Otilia R. Rosas, Deceased, et al. v. Avon Products, Inc., Individually and as Successor-in-Interest to Georgio Beverly Hills Henry Company LLC, et al. | Superior Court of the State of California, County of Santa Barbara | 23STCV21311 | 9/5/2023 | 9/27/2023 |
| Schleicher | Elaine (Dec) | Dean Omar Branham Shirley, LLP | Myron Schleicher, individually and as Administrator of the Estate of Elaine Schleicher, Deceased vs. Bayer Consumer Care Holdings LLC, f/k/a MSD Consumer Care, Inc.; et al. | Court of Common Pleas of Allegheny County, Pennsylvania | 24-003216 | 3/29/2024 | 4/3/2024 |
| Scott | Betty | Maune Raichle Hartley French & Mudd, LLC | Betty M. Scott and Lawrence R. Scott vs. Charles B. Chrystal Company, Inc.; et al. | Middlesex County Superior Court, New Jersey | MID-L-001269-24AS | 2/26/2024 | 3/8/2024 |
| Seal | Maureen | Simon Greenstone Panatier, P.C. | Maureen Seal vs. Sumitomo Christian Dior, Inc.; et al. | New York County Supreme Court, New York | 190129/2024 | 4/22/2024 | 4/26/2024 |
| Smithers | Cynthia Lou | Simmons Hanly Conroy | Cynthia Lou Smithers v. Johnson & Johnson, et al. | Middlesex County Superior Court, New Jersey | MID-L-005778-23 | 2/21/2024 | 2/23/2024 |
| Soares | Susan | Early, Lucarelli, Sweeney & Meisenkothen | Susan Soares and Brian Soares vs. Avon Products, Inc., et al. | Providence County, Rhode Island – Superior Court | PC-2024-0163l | 3/25/2024 | 4/16/2024 |

SA35

22-10784-dsj   Doc 1110   Filed 08/14/24   Entered 08/14/24 15:32:43   Main Document
Pg 13 of 15

8

| Last Name of Plaintiff | First Name of Plaintiff | Counsel of Record | Case Caption | Court | Case Number | Date of Complaint or Amended Complaint adding Revlon | Date of Correspondence Requesting Dismissal |
|---|---|---|---|---|---|---|---|
| Tantillo | Dianne | Dean Omar Branham Shirley, LLP - Landry & Swarr LLC | Dianne Tantillo v. Avon Products, Inc., et al. | Parish of Orleans Civil District Court, Louisiana | 2024-01705 | 2/26/2024 | 3/14/2024 |
| Torrence | Cora Dean | Meirowitz & Wasserberg, LLP | Cora Dean Torrence v. Avon Products, Inc., et al | New York County Supreme Court, New York | 190170/2023 | 6/16/2023 | 9/11/2023 |
| Valley | Jody | Weitz & Luxenberg, P.C. | Jody Valley and Elaine Thomason v. Block Drug Company, et al. | Middlesex County Superior Court, New Jersey | MID-L-2212-24 AS | 4/11/2024 | 4/23/2024 |
| Vessia-Ayoubi | Angelina | Simon Greenstone Panatier, P.C. | Angelina Vessia-Ayoubi and Sam Ayoubi v. Sumitomo Corporation of Americas, et al. | New York County Supreme Court, New York | 190088/2024 | 3/22/2024 | 3/25/2024 |
| Wandsneider | John | Maune Raichle Hartley French & Mudd, LLC | John K. Wandsneider and Joanne C. Wandsneider vs. Avon Products, et al. | Madison County Third Judicial Circuit Court, Illinois | 24-L-A-444 | 4/1/2024 | 4/10/2024 |
| Welch | Kathleen (Dec) | Dean Omar Branham Shirley, LLP | Edward L. Welch, Jr. individually and as Administrator of the Estate of Kathleen Marie Welch, Deceased, vs. Avon Products, Inc., individually and as successor-in-interest to Parfums Stern Inc., et al | Court of Common Pleas of Allegheny County, Pennsylvania | 23-013392 | 11/22/2023 | 12/13/2023 |

### **Annex 2**

**Enforcement Order Notice**

**[Caption]**

**NOTICE OF BANKRUPTCY COURT ORDER**

[Reorganized Debtor Entity] and its affiliates, by and through its undersigned counsel, respectfully submits this Notice of Bankruptcy Court Order, and states as follows:

1.    On June 15 and 16, 2022 (the "Petition Date"), Revlon, Inc. and its debtor affiliates, including [Entity] (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' chapter 11 cases (the "Bankruptcy Cases") were jointly administered, indexed at case number 22-10760 (DSJ) and, as of May 30, 2023, case number 22-10784.

2.    On April 3, 2023, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Third Amended Joint Plan of Reorganization of Revlon, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") (ECF No. 1746) approving the terms of the chapter 11 plan (ECF No. 1860) (with all supplements and exhibits thereto, as it has been and may be amended, altered, modified, revised, or supplemented from time to time, the "Plan").[1] The effective date under the Plan occurred on May 2, 2023 (the "Effective Date"). *See* ECF No. 1869.

3.    The Plan contains a permanent injunction (the "Injunction") that specifically prohibits Holders of Claims from prosecuting against the Debtors any Claims, and in each case including attorney's fees related thereto, that arose prior to the Effective Date.

4.    On [Date], the Bankruptcy Court entered the attached *Order Granting Reorganized Debtors' Second Omnibus Motion to Enforce the Plan Injunction and Confirmation Order* (the "Enforcement Order") which (i) orders the plaintiffs listed on Annex 1 to the Enforcement Order to take all appropriate actions within fourteen days of entry of the filing of this notice in the applicable action, *i.e.*, [Date] to dismiss the actions listed on Annex 1 to the Enforcement Order, and (ii) in the event that parties listed on Annex 1 to the Enforcement Order do not comply with the terms of the Enforcement Order, permits the Reorganized Debtors to (a) request an order from the Bankruptcy Court holding such noncomplying parties in contempt of the Bankruptcy Court for violating the terms of the Enforcement Order, the Plan Injunction, and the Confirmation Order, and (b) seek sanctions upon further motion.

Respectfully submitted this day of _____, 202_.

---

[1]    Capitalized terms used herein but not otherwise defined shall have the meanings given to such terms in the Plan.

**SA38**

# STATUTORY ADDENDUM

**11 U.S.C. § 524 (excerpt)**

## 11 U.S.C § 524

**11 U.S.C. § 524 – Effect of discharge**

**(a)** A discharge in a case under this title—

**(1)** voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

**(2)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

**(3)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1192, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

\* \* \* \* \*

**(g)**

**(1)**

**(A)** After notice and hearing, a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section.

**(B)** An injunction may be issued under subparagraph (A) to enjoin entities from taking legal action for the purpose of directly or indirectly collecting,

recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust described in paragraph (2)(B)(i), except such legal actions as are expressly allowed by the injunction, the confirmation order, or the plan of reorganization.

**(2)**

**(A)** Subject to subsection (h), if the requirements of subparagraph (B) are met at the time an injunction described in paragraph (1) is entered, then after entry of such injunction, any proceeding that involves the validity, application, construction, or modification of such injunction, or of this subsection with respect to such injunction, may be commenced only in the district court in which such injunction was entered, and such court shall have exclusive jurisdiction over any such proceeding without regard to the amount in controversy.

**(B)** The requirements of this subparagraph are that—

**(i)** the injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization—

**(I)** is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

**(II)** is to be funded in whole or in part by the securities of 1 or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends;

**(III)** is to own, or by the exercise of rights granted under such plan would be entitled to own if specified contingencies occur, a majority of the voting shares of—

**(aa)** each such debtor;

**(bb)** the parent corporation of each such debtor; or

**(cc)** a subsidiary of each such debtor that is also a debtor; and

**(IV)** is to use its assets or income to pay claims and demands; and

**(ii)** subject to subsection (h), the court determines that—

**(I)** the debtor is likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims that are addressed by the injunction;

**(II)** the actual amounts, numbers, and timing of such future demands cannot be determined;

**(III)** pursuit of such demands outside the procedures prescribed by such plan is likely to threaten the plan's purpose to deal equitably with claims and future demands;

**(IV)** as part of the process of seeking confirmation of such plan—

**(aa)** the terms of the injunction proposed to be issued under paragraph (1)(A), including any provisions barring actions against third parties pursuant to paragraph (4)(A), are set out in such plan and in any disclosure statement supporting the plan; and

**(bb)** a separate class or classes of the claimants whose claims are to be addressed by a trust described in clause (i) is established and votes, by at least 75 percent of those voting, in favor of the plan; and

**(V)** subject to subsection (h), pursuant to court orders or otherwise, the trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms, that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner.

**(3)**

**(A)** If the requirements of paragraph (2)(B) are met and the order confirming the plan of reorganization was issued or affirmed by the district court that has jurisdiction over the reorganization case, then after the time for appeal of the order that issues or affirms the plan—

**(i)** the injunction shall be valid and enforceable and may not be revoked or modified by any court except through appeal in accordance with paragraph (6);

**(ii)** no entity that pursuant to such plan or thereafter becomes a direct or indirect transferee of, or successor to any assets of, a debtor or trust that is the subject of the injunction shall be liable with respect to any claim or demand made against such entity by reason of its becoming such a transferee or successor; and

**(iii)** no entity that pursuant to such plan or thereafter makes a loan to such a debtor or trust or to such a successor or transferee shall, by reason of making the loan, be liable with respect to any claim or demand made against such entity, nor shall any pledge of assets made in connection with such a loan be upset or impaired for that reason;

**(B)** Subparagraph (A) shall not be construed to—

**(i)** imply that an entity described in subparagraph (A)(ii) or (iii) would, if this paragraph were not applicable, necessarily be liable to any entity by reason of any of the acts described in subparagraph (A);

**(ii)** relieve any such entity of the duty to comply with, or of liability under, any Federal or State law regarding the making of a fraudulent conveyance in a transaction described in subparagraph (A)(ii) or (iii); or

**(iii)** relieve a debtor of the debtor's obligation to comply with the terms of the plan of reorganization, or affect the power of the court to exercise its authority under sections 1141 and 1142 to compel the debtor to do so.

**(4)**

**(A)**

**(i)** Subject to subparagraph (B), an injunction described in paragraph (1) shall be valid and enforceable against all entities that it addresses.

**(ii)** Notwithstanding the provisions of section 524(e), such an injunction may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arises by reason of—

**(I)** the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor;

**(II)** the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party;

**(III)** the third party's provision of insurance to the debtor or a related party; or

**(IV)** the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to—

**(aa)** involvement in providing financing (debt or equity), or advice to an entity involved in such a transaction; or

**(bb)** acquiring or selling a financial interest in an entity as part of such a transaction.

**(iii)** As used in this subparagraph, the term "related party" means—

**(I)** a past or present affiliate of the debtor;

**(II)** a predecessor in interest of the debtor; or

**(III)** any entity that owned a financial interest in—

**(aa)** the debtor;

**(bb)** a past or present affiliate of the debtor; or

**(cc)** a predecessor in interest of the debtor.

**(B)** Subject to subsection (h), if, under a plan of reorganization, a kind of demand described in such plan is to be paid in whole or in part by a trust described in paragraph (2)(B)(i) in connection with which an injunction described in paragraph (1) is to be implemented, then such injunction shall be valid and enforceable with respect to a demand of such kind made, after such plan is confirmed, against the debtor or debtors involved, or against a third party described in subparagraph (A)(ii), if—

**(i)** as part of the proceedings leading to issuance of such injunction, the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands of such kind, and

**(ii)** the court determines, before entering the order confirming such plan, that identifying such debtor or debtors, or such third party (by name or as part of an identifiable group), in such injunction with respect to such demands for purposes of this subparagraph is fair and equitable with respect to the persons that might subsequently assert such demands, in light of the benefits provided, or to be provided, to such trust on behalf of such debtor or debtors or such third party.

\* \* \* \* \*