# 25-263

## United States Court of Appeals
### for the
### Second Circuit

In Re: RML, LLC,

*Debtor.*

*(caption continued on inside cover)*

On Appeal from the Bankruptcy Court for the Southern District of New York
No. 1:22-bk-10784 (Hon. David S. Jones)

### [FINAL] REPLY BRIEF FOR APPELLANTS

Kevin C. Maclay
James P. Wehner
Todd E. Phillips
Lucas H. Self
Ariel K. Hayes
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Ave., N.W.
8th Floor
Washington, D.C. 20036
(202) 862-5000

David C. Frederick
Matthew N. Drecun
Jared M. Stehle
KELLOGG, HANSEN, TODD, FIGEL
 & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Appellants*

September 26, 2025

AGATHA BUITRAGO; ANGELINA RASO; CHERIE A. CRAFT; CYNTHIA FISHER; ANNA MARIE GERKEN; GLENDA THERESA GIROIR; DOROTHY GOODE-EVANS; VERDA HANEY; ELAINE SCHLECHTER; DIANNE TANTILLO; SUSAN SOARES; ANA DELGADO; REBECCA LATTERELL-RICE; CARMEN ALARCON; HOWARD G. ANDOE; KAREN HOW; MARTHA MCCRACKEN KING; LORRAINE PERKINS; ROBYN ROSS; BETTY SCOTT; JOHN WANDSNEIDER; JUDY KAY BELL; RENEE FLAGG PEREZ; ILONA KLAR; CYNTHIA SMITHERS; WESLEY REED; SUSAN BETTS; CARLA FORSLUND; MARLANE HEARD; ALEKSANDRA HUXLEY; MARILYN MACRON; LOUISE MILFORD; JOSEPHINE NAVARETTA; MAUREEN SEAL; ANGELINA VESSIA-AYOUBI; SHERI ADAMS; SHERYL DOBBS; CHRISTA RUTH MACHADO, Estate Representative of ESTATE OF BARBARA J. KERSHNER; CHARLENE E. RAND; JODY VALLEY,

*Appellants*,

– v. –

RML, LLC; REVLON GROUP HOLDINGS LLC; ELIZABETH ARDEN USC, LLC; BRANDCO ALMAY 2020 LLC; ELIZABETH ARDEN, INC.; BRANDCO CHARLIE 2020 LLC; FD MANAGEMENT, INC.; REVLON CONSUMER PRODUCTS LLC; BRANDCO CND 2020 LLC; NORTH AMERICA REVSALE INC.; OPP PRODUCTS, INC.; ALMAY, INC.; BRANDCO CURVE 2020 LLC; RDEN MANAGEMENT, INC.; BRANDCO ELIZABETH ARDEN 2020 LLC; ART & SCIENCE, LTD.; REALISTIC ROUX PROFESSIONAL PRODUCTS INC.; ROUX LABORATORIES, INC.; BRANDCO GIORGIO BEVERLY HILLS 2020 LLC; REVLON DEVELOPMENT CORP.; ROUX PROPERTIES JACKSONVILLE, LLC; BRANDCO HALSTON 2020 LLC; REVLON GOVERNMENT SALES, INC.; SINFULCOLORS INC.; BRANDCO JEAN NATE 2020 LLC; REVLON INTERNATIONAL CORPORATION; BARI COSMETICS, LTD.; PPI TWO CORPORATION; RIROS GROUP INC.; BEAUTYGE BRANDS USA, INC.; ELIZABETH ARDEN (CANADA) LIMITED; BRANDCO PS 2020 LLC; BRANDCO WHITE SHOULDERS 2020 LLC; REVLON CANADA INC.; BEAUTYGE USA, INC.; CHARLES REVSON INC.; BEAUTYGE II, LLC; CREATIVE NAIL DESIGN, INC.; CUTEX, INC.; DF ENTERPRISES, INC.; ELIZABETH ARDEN (FINANCING), INC.; ELIZABETH ARDEN INVESTMENTS, LLC; ELIZABETH ARDEN NM, LLC; ELIZABETH ARDEN TRAVEL RETAIL, INC.; REVLON PROFESSIONAL HOLDING COMPANY LLC; BRANDCO MITCHUM 2020 LLC; REVLON (PUERTO RICO) INC.; RIROS CORPORATION; ELIZABETH ARDEN (UK) LTD.; BRANDCO MULTICULTURAL GROUP 2020 LLC,

*Debtors-Appellees.*

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ....................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

ARGUMENT ....................................................................... 3

I.    Revlon Cannot Circumvent § 524(g) To Discharge Claimants' Claims ..................................................................... 3

    A.    Section 524(g)'s Text Demonstrates It Is The Exclusive Mechanism To Discharge Future Asbestos Liability ........................... 4

    B.    Section 524(g)'s History And Purpose Confirm It Is The Exclusive Mechanism To Discharge Future Asbestos Liability ............................................................ 7

    C.    Revlon Mischaracterizes § 524(g)'s Scope And Function ................ 10

    D.    Revlon's Textual Arguments Lack Merit ........................... 13

II.    Discharging Claimants' Claims With Minimal Notice And No Safeguards Violated Due Process ........................................ 16

    A.    The Code's General Discharge Provisions Do Not Satisfy Due Process For Future Asbestos Claimants ....................... 17

    B.    Revlon's Perfunctory Notice Did Not Satisfy Due Process ........................................................... 22

    C.    Revlon's Excusable-Neglect Option Would Not Satisfy Due Process ........................................................ 27

CONCLUSION ..................................................................... 31

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

Page

**CASES**

*Amatex, In re*, 755 F.2d 1034 (3d Cir. 1985) ............................................................11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................17

*AT&T Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214 (1998) ..........................................15

*Ben Nye Co., In re*, 2025 WL 1693661 (B.A.P. 9th Cir. June 17, 2025) ..........25, 26

*Brooks Fashion Stores, Inc., In re*, 124 B.R. 436 (Bankr. S.D.N.Y. 1991) ............................................................................................................26

*Castleman v. Liquidating Tr.*, 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007) .......................................................................................... 21-22

*Chateaugay Corp., In re*, 2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009) ..............................................................................................20, 22

*Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995) ..........................................12

*Chemtura Corp., In re*, 2016 WL 11651714 (Bankr. S.D.N.Y. Nov. 23, 2016) .......................................................................................................20

*Combustion Eng'g, Inc., In re*, 391 F.3d 190 (3d Cir. 2004) .....................11, 18, 31

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004) .......... 4-5, 13, 14, 15

*Covey v. Town of Somers*, 351 U.S. 141 (1956) ......................................................23

*D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204 (1932)....................................6, 7

*Dahlin v. Lyondell Chem. Co.*, 881 F.3d 599 (8th Cir. 2018) ................................20

*Ditech Holding Corp., In re*, 2025 WL 783639 (2d Cir. Mar. 12, 2025)...............25

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014)...............................................................................................28

*Energy Future Holdings Corp.*, *In re*:

    949 F.3d 806 (3d Cir. 2020) ...................................................18, 25, 27, 28, 29

    619 B.R. 99 (Bankr. D. Del. 2020)..........................................................29, 30

*Enron Corp.*, *In re*, 419 F.3d 115 (2d Cir. 2005) ..............................................28, 30

*Fairfield Sentry Ltd.*, *In re*, 690 F. App'x 761 (2d Cir. 2017)..................................6

*G-I Holdings, Inc.*, *In re*, 323 B.R. 583 (Bankr. D.N.J. 2005) ..................................5

*Grossman's, Inc.*, *In re*, 607 F.3d 114 (3d Cir. 2010) .......................7, 8, 11, 18, 24

*Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) ...............................15, 16

*Hecht v. United Collection Bur., Inc.*, 691 F.3d 218 (2d Cir. 2012) ................24, 25

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ...............................9

*Indu Craft Inc.*, *In re*, 580 F. App'x 33 (2d Cir. 2014)...........................................27

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987)...................................................15

*Johns-Manville Corp.*, *In re*:

    36 B.R. 743 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940
    (S.D.N.Y. 1985)..............................................................................7, 8, 10, 11

    600 F.3d 135 (2d Cir. 2010) ..........................................................................23

    552 B.R. 221 (Bankr. S.D.N.Y. 2016) ................................................. 9-10, 21

    2022 WL 4487889 (2d Cir. Sept. 28, 2022)...........................................21, 27

*Jones v. Chemetron Corp.*, 212 F.3d 199 (3d Cir. 2000) ........................................29

*Kaiser Gypsum Co.*, *In re*, 135 F.4th 185 (4th Cir. 2025)........................................5

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988)........................1, 4, 26

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)...........................................17

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89
(2d Cir. 1988)......................................................................13

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ...................................15

*Motors Liquidation Co., In re*, 829 F.3d 135 (2d Cir. 2016)............................20, 28

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306
(1950).................................................................16, 23, 24, 25, 26

*Penn Cent. Transp. Co., In re*, 771 F.2d 762 (3d Cir. 1985)...................................12

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993)..........................................................30

*Placid Oil Co., In re*, 753 F.3d 151 (5th Cir. 2014) ........................................20, 26

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639
(2012)...................................................................... 5, 6-7

*Rudisill v. McDonough*, 601 U.S. 294 (2024) .........................................................14

*Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001),
*aff'd in part, rev'd in part*, 539 U.S. 111 (2003).....................................17, 22

*Stoltz, In re*, 315 F.3d 80 (2d Cir. 2002).....................................................................5

*SVB Fin. Grp., In re*, 660 B.R. 60 (Bankr. S.D.N.Y. 2024) ....................................26

*Tronox, Inc., In re*, 626 B.R. 688 (Bankr. S.D.N.Y. 2021) ...............................29, 30

*Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024) ..................................4

*United States v. Rodgers*, 461 U.S. 677 (1983) ......................................................13

*UNR Indus., Inc., In re*, 725 F.2d 1111 (7th Cir. 1984)..............................11, 17, 23

*Vancouver Women's Health Collective Soc'y v. A.H. Robins Co.*,
820 F.2d 1359 (4th Cir. 1987) .......................................................12

*W.R. Grace & Co., In re*, 729 F.3d 311 (3d Cir. 2013) ..................................8, 9, 19

*Waterman S.S. Corp.*, *In re*, 141 B.R. 552 (Bankr. S.D.N.Y. 1992),
  *aff'd in part*, 157 B.R. 220 (S.D.N.Y. 1993) ...................................................22

*Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012) .........................................18

## STATUTES AND REGULATIONS

Bankruptcy Code, 11 U.S.C. §§ 101-1330:

§ 524 ................................................................................................................15

§ 524 note ................................................................................................10, 14

§ 524(g) ...................................................................................................*passim*

§ 524(g)(1)(A) ......................................................................................................4

§ 524(g)(2)(B) ......................................................................................................4

§ 524(g)(2)(B)(i)-(ii) .......................................................................................4, 7

§ 524(g)(2)(B)(i)(I) ..............................................................................................4

§ 524(g)(2)(B)(ii)(I) .............................................................................................4

§ 524(g)(4)(B)(i) ..............................................................................................4, 8

§ 524(g)(4)(B)(ii) .................................................................................................4

§ 524(h) ..............................................................................................................11

§ 1127(b) ............................................................................................................27

§ 1129(b)(2)(A) ....................................................................................................6

28 U.S.C. § 158(d)(2)(A)(i) .....................................................................................9

38 U.S.C. § 3327(a) ...............................................................................................14

Bankr. R. 3003 ................................................................................3, 17

Bankr. R. 3003(c)(3) .............................................................................27

## LEGISLATIVE MATERIALS

H.R. Rep. No. 103-835, *reprinted in* 1994 U.S.C.C.A.N. 3340
    (1994).............................................................................8, 11, 12

## INTRODUCTION AND SUMMARY OF ARGUMENT

For decades, asbestos liability has posed special problems for debtors and claimants in bankruptcy. Asbestos's "unusually long latency period" means that a person "might not become ill from an asbestos-related disease until as long as forty years after initial exposure." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir. 1988). Thus, people can continue to develop asbestos injuries and bring suit long after a company stops using asbestos. And a person cannot prevent injury by avoiding further asbestos exposure because exposure long ago may have caused latent injury yet to manifest. This is asbestos's latency dilemma. Debtors know they face future liability but not how much, while claimants do not know they face injury until it manifests. Debtors cannot attain financial certainty, while notice of bankruptcy proceedings means nothing to future claimants with no reason to know that the proceedings will affect them.

Congress enacted a solution to this dilemma, 11 U.S.C. § 524(g), derived from the trust mechanism that resolved the Manville bankruptcy. "[F]uture asbestos-related liability was the *raison d'etre* of the Manville reorganization," particularly claimants "exposed to Manville's asbestos" who "had not yet shown any signs of disease." *Kane*, 843 F.2d at 639. Inspired by the Manville trust, § 524(g) provides representation for future claimants, a trust to pay both current and future claims, and an injunction channeling future claims to the trust so the

debtor can move on. These features protect debtors, current claimants, and future claimants with latent injuries who realistically cannot be put on notice of a proceeding not yet material to them.

Revlon now advances an audacious view: none of that was necessary. Manville could have given one day of newspaper notice, crafted a plan with no provision for future claimants, and discharged the thousands of future claimants whose injuries had not yet emerged. In Revlon's thinking, Manville could have saved itself billions.

Revlon casts its novel strategy as run-of-the-mill by citing cases where § 524(g) was off the table because the debtor never had used asbestos or been sued for it. But as Congress recognized in passing § 524(g), Revlon's approach would deeply disserve the interests of future asbestos claimants. Revlon's view invites debtors with future asbestos liabilities to move through bankruptcy quickly enough that future claimants are left behind. Section 524(g) bars that path. It provides the one way consistent with due process for debtors to discharge future asbestos liability in a Chapter 11 reorganization. Because Revlon bypassed it, its reorganization plan could not lawfully discharge Claimants' claims.

The Bankruptcy Court made three erroneous holdings when it confronted these issues: that debtors can discharge future asbestos liability without following § 524(g); that due process for Claimants required nothing more than publication

2

notice; and that Revlon provided that notice adequately. Each holding requires reversal. A debtor can choose not to use § 524(g), but only if it declines to discharge its future asbestos liabilities. It cannot accept that central benefit of the statute while rejecting the obligations Congress imposed to protect future claimants. At minimum, bankruptcy proceedings for a debtor with future asbestos liability must provide representation to future claimants and account for them in the confirmed plan. Revlon's proceedings did neither. Even if publication notice alone sufficed, Revlon's opaque one-day newspaper notice fell short. Revlon's resort to post-confirmation motions for relief under Bankruptcy Rule 3003 does not cure these ills. This Court should reverse.

## ARGUMENT

### I.  Revlon Cannot Circumvent § 524(g) To Discharge Claimants' Claims

Revlon argues (at 21) that "Section 524(g) provides a debtor in bankruptcy proceedings with a choice." That is right: a Chapter 11 asbestos debtor can choose to discharge future liability through § 524(g), or it can forgo the discharge. But it cannot obtain that discharge while avoiding the protective mechanisms Congress crafted to safeguard future claimants. Revlon contends (at 20-21) that the advantages of § 524(g) are the rights to discharge non-debtors and the sliver of "demands" that are not yet "claims." That ignores the problem § 524(g) exists to solve in Chapter 11 reorganizations: fairly discharging asbestos claimants exposed

3

but not yet injured when the bankruptcy began.  The text and history of § 524(g) make clear that it is the sole route to such a discharge.

**A.    Section 524(g)'s Text Demonstrates It Is The Exclusive Mechanism To Discharge Future Asbestos Liability**

Section 524(g) is Congress's solution to the problems that latent asbestos liability causes both debtors and claimants.  It applies in a Chapter 11 reorganization when debtors already have been sued for asbestos-related conduct and will face "substantial future demands for payment arising out of the same or similar conduct."  11 U.S.C. § 524(g)(2)(B)(i)(I), (ii)(I).  It provides that a bankruptcy court "may issue . . . an injunction in accordance with this subsection to supplement the injunctive effect of a discharge" of other claims.  *Id.* § 524(g)(1)(A).  But extensive "requirements" must be met first, *id.* § 524(g)(2)(B), including numerous protections for future claimants:  appointing a representative for them, *id.* § 524(g)(4)(B)(i); creating a well-funded trust, *id.* § 524(g)(2)(B)(i)-(ii); and ensuring the trust is "fair and equitable" to them, *id.* § 524(g)(4)(B)(ii).  Congress imposed these requirements to "ensure[] that 'future claimants' are 'treated identically to the present claimants.'"  *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 274 (2024) (quoting *Kane*, 843 F.2d at 640).

Though § 524(g) provides that courts "may" issue injunctions under its terms, its text constrains courts and debtors by limiting § 524(g)'s extraordinary relief to bankruptcies meeting its specific conditions.  *See Cooper Indus., Inc. v.*

4

*Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004) (concluding "the natural meaning of 'may'" in statute was to authorize actions "that satisfy the subsequent specified condition—and no others"). To the extent the text preserves discretion, it does so in two ways. A court may supplement the effect of an ordinary discharge if future claimants are adequately protected, or it may decide that § 524(g) does not fit the case. *Cf. In re G-I Holdings, Inc.*, 323 B.R. 583, 621-23 (Bankr. D.N.J. 2005) (noting that "the treatment of future [asbestos] demand holders" was "[a] significant issue," but declining to "mandate the imposition of a § 524(g) trust"). Debtors also may wish to "pass through" their future asbestos claims to tort litigation in the court system. Opening Br. 23-24, 29-30; *see, e.g.*, *In re Kaiser Gypsum Co.*, 135 F.4th 185, 190-91 (4th Cir. 2025) (upholding plan passing future asbestos claims to tort system). Thus, debtors can opt not to seek discharge of future claims at all.

When "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions," as in § 524(g), those solutions control over the statute's general provisions. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation omitted). This conclusion flows from the "commonplace of statutory construction that the specific governs the general." *Id.*; *see, e.g.*, *In re Stoltz*, 315 F.3d 80, 93 (2d Cir. 2002) (using

canon to construe overlapping Code provisions); *In re Fairfield Sentry Ltd.*, 690

F. App'x 761, 768 (2d Cir. 2017) (summary order) (same).

Revlon argues (at 17) that § 524(g) supplies only "optional" authority that

"supplement[s]" the Code's general discharge provisions. But the general/specific

canon "has full application" to statutes "in which a general authorization and a

more limited, specific authorization exist side-by-side," avoiding "the superfluity

of a specific provision that is swallowed by the general one." *RadLAX*, 566 U.S. at

645. *RadLAX* concerned a Code provision giving three options for addressing

secured claims in a Chapter 11 plan; the Supreme Court ruled that the third option,

though broadly worded, did not permit circumventing the second option's

prerequisites. *Id.* (construing 11 U.S.C. § 1129(b)(2)(A)). Allowing the general

provision to swallow the specific would be "contrary to common sense." *Id.*

Likewise, construing the Bankruptcy Act of 1898, the Court determined that a

bankruptcy court's general authority to make such orders "as may be necessary"

did not permit sidestepping the prerequisites established elsewhere for arresting

and detaining a debtor. *See D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204,

206-08 (1932).

These decisions demonstrate that "[g]eneral language of a statutory

provision, although broad enough to include it, will not be held to apply to a matter

specifically dealt with in another part of the same enactment." *RadLAX*, 566 U.S.

6

at 645-46 (quoting *D. Ginsberg & Sons*, 285 U.S. at 208). Section 524(g)'s

detailed scheme thus governs the discharge of claims for unmanifested asbestos-

related injuries.

### B. Section 524(g)'s History And Purpose Confirm It Is The Exclusive Mechanism To Discharge Future Asbestos Liability

Section 524(g) reflects Congress's adoption of the *Johns-Manville* solution

to asbestos's latency dilemma: granting representation to future claimants and

channeling both present and future claims to a court-supervised trust. *See In re*

*Grossman's Inc.*, 607 F.3d 114, 126 (3d Cir. 2010) (en banc) ("The Manville Trust

was the basis for Congress' effort to deal with the problem of asbestos claims on a

national basis, which it did by enacting § 524(g)").

The Manville bankruptcy's problems therefore illuminate § 524(g)'s scope

and function. The "central focus" was achieving "a resolution of the interests of

future claimants," who were situated just like Claimants here. *In re Johns-*

*Manville Corp.*, 36 B.R. 743, 746 (Bankr. S.D.N.Y. 1984). "[T]he very purpose of

the initiation of these proceedings [was] to deal in some fashion with claimants

exposed to the ravages of asbestos dust who ha[d] not as of the filing date

manifested symptoms of asbestos disease." *Id.* at 745. This explains § 524(g)'s

backward-looking focus on debtors whose asbestos-related conduct already has

drawn lawsuits and will continue to generate "substantial future demands for

payment" arising from the same conduct. 11 U.S.C. § 524(g)(2)(B)(i)-(ii).

Revlon mistakenly suggests (at 20) that § 524(g) exists to address "future 'demands' from those first exposed to asbestos *after* the bankruptcy proceedings." But when Congress enacted § 524(g), such future demands were not clearly subject to discharge in bankruptcy. *See Grossman's*, 607 F.3d at 120 (describing then-existing circuit precedent that "claims arose for bankruptcy purposes when the underlying state law cause of action accrued"). Moreover, the expected "proliferation of claims in the next 30 years by those *previously exposed* who will manifest these diseases" was what brought Manville to bankruptcy and inspired the novel appointment of a future claims representative, which Congress incorporated into § 524(g). *See Johns-Manville*, 36 B.R. at 745 (emphasis added); 11 U.S.C. § 524(g)(4)(B)(i); H.R. Rep. No. 103-835, at 40, *reprinted in* 1994 U.S.C.C.A.N. 3340 (1994) (citing *Johns-Manville*'s "special representative for the future claimants"). Although asbestos use fell and safety measures spread in the 1970s, that came "too late to have any effect on those who had previously been exposed." *Johns-Manville*, 36 B.R. at 745.

To portray § 524(g) as focused on post-bankruptcy exposure, Revlon cites (at 20) *In re W.R. Grace & Co.*, 729 F.3d 311 (3d Cir. 2013), but it rebuts Revlon's position. *Grace* held that "claims" and "demands" are not mutually exclusive. *Id.* at 322. The two terms "overlap[ ]," which "evinces an intent to include *all* potential asbestos-related liability of a debtor, regardless of when such liability

8

arose." *Id.* Also, "Grace's relevant activities all occurred long before its bankruptcy filing." *Id.* Grace ceased operating its asbestos mine in 1990, well before entering bankruptcy in 2001. *Id.* at 314-15. And unlike Revlon, Grace's § 524(g) trust provided due process to "future claimants, many of whom might have had no notice at all of the bankruptcy." *Id.* at 323.

Claimants are thus the exact kind of litigant Congress passed § 524(g) to protect. Like Manville's and Grace's future claimants, Claimants were exposed to asbestos in Revlon's contaminated products before Revlon's bankruptcy petition but had no diagnoses yet.[1] Even if "no statute 'pursues its stated purpose at all costs,'" Revlon Br. 28 (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)), Revlon's interpretation ignores the principal problem Congress designed § 524(g) to address, leaving Congress's intended beneficiaries with nothing.

Indeed, Revlon's misconception that § 524(g) is focused on post-bankruptcy exposure would render § 524(g) nearly useless. Asbestos use has dropped dramatically since the 1970s. *See In re Johns-Manville Corp.*, 552 B.R. 221, 238

---

[1] Revlon improperly suggests (at 11, 45) Claimants had relevant symptoms before Revlon's bankruptcy plan took effect. This appeal is limited to questions of law. *See* 28 U.S.C. § 158(d)(2)(A)(i); Bankr. ECF No. 1155 at 3-6 (JA1572-75). The Bankruptcy Court based its decision on the understanding that Claimants "were diagnosed after the confirmation date" of Revlon's plan. Bankr. ECF No. 1107 at 7 (SA7).

9

(Bankr. S.D.N.Y. 2016). Revlon's position that § 524(g) principally manages post-bankruptcy exposure would leave the statute little work to do.

### C. Revlon Mischaracterizes § 524(g)'s Scope And Function

Revlon casts § 524(g) as optional and non-exclusive by arguing (at 22-23) that bankruptcy courts could always "use the general discharge provisions to discharge asbestos-related 'claims'" with or without § 524(g). It relies (at 18) on the broadly worded note to 11 U.S.C. § 524 that Congress did not intend it to "modify, impair, or supersede [the] authority the court has to issue injunctions in connection with an order confirming a plan of reorganization." This argument overlooks courts' longstanding recognition that debtors who knew they faced future asbestos liability could not discharge it without creating serious due process concerns.

Courts handling asbestos bankruptcies before § 524(g) were clear-eyed about those constitutional problems. The *Johns-Manville* court appointed a representative for future claimants to ensure "that due process has been achieved in binding unknown putative claimants to a plan of which they may or may not have had notice." 36 B.R. at 754. In the contemporaneous UNR Industries bankruptcy, Judge Posner noted the "formidable, and possibly insurmountable," "practical difficulties of identifying, giving constitutionally adequate notice to, and attempting to estimate the damages of the thousands upon thousands of people who

have been exposed to asbestos sold by UNR but have not yet developed asbestosis." *In re UNR Indus., Inc.*, 725 F.2d 1111, 1119 (7th Cir. 1984). He proposed that bankruptcy courts "prevent the liquidation or discharge of the bankrupt before provision is made" for future claimants—which Revlon did not do here. *Id.*; *see also In re Amatex*, 755 F.2d 1034, 1043 (3d Cir. 1985) (citing *UNR* and holding that "future claimants require their own representative").

These due process concerns motivated the future-claims trust solution that Congress adopted in § 524(g). *See Grossman's*, 607 F.3d at 126; *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n.45 (3d Cir. 2004) ("There are many statutory prerequisites imposed by § 524(g) . . . specifically tailored to protect the due process rights of future claimants."); H.R. Rep. No. 103-835, at 40-41 (expressing Congress's "concern[] that full consideration be accorded to the interests of future claimants, who, by definition, do not have their own voice," and citing *Johns-Manville* and *UNR* as "pioneering cases").

Section 524(h) underscores "the perceived legal uncertainty" that surrounded discharges of future asbestos claims. H.R. Rep. No. 103-835, at 41. Section 524(h) ratified existing discharge injunctions with the same extensive claimant protections that Congress codified in § 524(g), offering "certitude to other asbestos trust/injunction mechanisms that meet the same kind of high standards," like the Manville and UNR injunctions. *Id.* Revlon insists (at 24-25) it was the

Manville injunction's third-party releases that Congress found suspect and that Congress did not "doubt[] the authority of bankruptcy courts to enjoin ordinary 'claims' against the debtors themselves," including future claims. Nothing supports that reading. Congress's principal concern, as noted, was "the interests of future claimants, who, by definition, do not have their own voice." H.R. Rep. No. 103-835, at 40. Hence, Congress's adoption of "explicit requirements simulating those met in the Manville case." *Id.* at 41.

Revlon does not engage with the pre-524(g) history of future asbestos claimants in bankruptcy. Its citations regarding pre-524(g) discharge authority all come from different, non-asbestos contexts. *See*, *e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995) (toxic landfill, which plaintiffs knew about before bankruptcy); *Vancouver Women's Health Collective Soc'y v. A.H. Robins Co.*, 820 F.2d 1359, 1360 (4th Cir. 1987) (Dalkon Shield); *In re Penn Cent. Transp. Co.*, 771 F.2d 762, 763 (3d Cir. 1985) (railroad reorganization under pre-1978 Bankruptcy Act).

To the extent Congress was concerned about third-party releases, as Revlon suggests (at 20-21), that mechanism was bound up with the discharge of future claims. After all, this Court upheld the third-party releases in *Johns-Manville* because they "were necessary to effectuate the Court's channeling authority,"

12

without which the future-claims trust would not work. *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93-94 (2d Cir. 1988).

There is no meaningful limit to Revlon's argument (at 22-23) that it can use the Code's general discharge provisions to "discharge asbestos-related 'claims,' unless some statute creates an 'exception' to those provisions." Debtors could discharge future asbestos claims without any of the safeguards Congress deemed so important to § 524(g). Over the years, dozens of debtors have put billions of dollars into § 524(g) trusts to deal with future asbestos liabilities. *See* Opening Br. 12. Under Revlon's argument, any of them could have dealt only with current claimants and discharged every future asbestos claimant who did not catch a one-day newspaper notice, leaving those future claimants with nothing.

### D. Revlon's Textual Arguments Lack Merit

Misunderstanding § 524(g)'s function and history, Revlon relies on indeterminate aspects of its text. Revlon emphasizes (at 17) that § 524(g) says courts in Chapter 11 reorganizations "*may* issue" injunctions under its provisions. The word "may" can grant discretion or constrain it, ensuring authority is used only once prerequisites are satisfied. *See* Opening Br. 27-28; *supra* pp. 4-5. The permissive reading "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute," as it is here. *United States v. Rodgers*, 461 U.S. 677, 706 (1983); *see, e.g., Cooper,*

13

543 U.S. at 166 (reading statute's use of "may" as restrictive).[2]  To the extent "may" grants discretion, it is only to indicate that debtors may decide not to seek discharge of future claims and instead let the tort system handle them.  *See supra* p. 5.  Revlon does not answer this point.

Revlon also misreads (at 18, 27) the saving clause providing that § 524(g) and (h) should not be construed to modify or impair existing injunctive authority. *See* 11 U.S.C. § 524 note.  As explained, courts had grave constitutional doubts about discharging future asbestos liability without protections for future claimants. *See supra* pp. 10-11.  Thus, the authority Revlon asserts—to discharge future asbestos claims with no protection beyond minimal publication notice—was dubious when Congress enacted this language.

Revlon's overreading of the saving clause would render the asbestos-specific § 524(g) superfluous by allowing a debtor to achieve § 524(g)'s central benefit— the discharge of future asbestos liability—without satisfying its claimant-protective prerequisites.  This contradicts the Supreme Court's consistent holding that the specific controls the general even when a saving clause states that the specific provision does not disturb existing authority.  *See*, *e.g.*, *Cooper*, 543 U.S. at 166-67

---

[2] *Rudisill v. McDonough*, 601 U.S. 294 (2024), does not require otherwise.  Revlon Br. 17.  The GI Bill statutes there—providing that a veteran "may elect" between different benefits—did not implicate the general/specific canon.  *See* 38 U.S.C. § 3327(a).  That language indicated permissive choice, unlike § 524(g)'s specific authority versus the Code's general discharge authority.

("the saving clause[] does not change our conclusion"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385 (1992) (refusing to "believe Congress intended to undermine [a] carefully drawn statute through a general saving clause") (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)). Likewise, these cases avoid superfluity, following "the settled rule that we must, if possible, construe a statute to give every word some operative effect." *Cooper*, 543 U.S. at 167.

To permit discharge of future asbestos liability without satisfying § 524(g), Revlon would have a generally worded rule of construction trump § 524(g)'s specific grant of power. That would invite debtors to seek discharges of future asbestos liability while turning down § 524(g)'s obligations. With little incentive for debtors to use § 524(g), the statute would become obsolete. The law rejects such overbroad readings of savings clauses. *See AT&T Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214, 227-28 (1998) ("[T]he act cannot be held to destroy itself.") (citation omitted).

Moreover, Revlon's reading of § 524's saving clause tracks the dissenting view in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). The Code expressly authorizes non-debtor releases only in § 524(g). Just as Revlon reads the saving clause to permit discharging future asbestos liability without satisfying § 524(g)'s prerequisites, the *Harrington* dissenters read the saving clause to mean that non-debtor releases are permissible in non-asbestos contexts not covered by

§ 524(g). *Id.* at 269-70 (Kavanaugh, J., dissenting). That argument fails today for the same reasons it failed then. Rather than modify or impair existing powers, § 524(g) "illustrate[s] how Congress might proceed if it intended to confer upon bankruptcy courts a novel and extraordinary power," namely, to discharge future asbestos claims. *Id.* at 222 n.5. Congress would (and did) erect guardrails to protect future claimants—the same guardrails Revlon would eviscerate here.

## II. Discharging Claimants' Claims With Minimal Notice And No Safeguards Violated Due Process

Due process does not permit Revlon to discharge future asbestos claims by providing nothing more than perfunctory publication notice. When a debtor knows future asbestos claimants are coming, it must protect their interests, including appointing a future claims representative and ensuring the plan can pay future claims, not just current ones.

Even if publication notice alone sufficed, Revlon provided only brief, opaque newspaper notice that no future claimant was likely to see, much less understand. It did not employ the kind of notice that "one desirous of actually informing the absentee might reasonably adopt." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). Other asbestos debtors have done much more. Revlon itself did so for hair-relaxer claims. Thus, even on Revlon's premise that notice alone is enough, it falls short.

16

Revlon resorts to post-confirmation motions for relief under Bankruptcy Rule 3003's excusable-neglect standard, but that post hoc solution is unlikely to offer effective relief. At best, Rule 3003 motions here would burden the court with deciding when to allow access to a confirmed plan that did not make any provision to pay future claimants anyway. That is a meager substitute for § 524(g)'s robust protections.

### A. The Code's General Discharge Provisions Do Not Satisfy Due Process For Future Asbestos Claimants

1.     "[T]he Due Process Clauses protect civil litigants who seek recourse in the courts," including "plaintiffs attempting to redress grievances." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982). Asbestos claims present unique due process challenges because "those without current afflictions may not have the information or foresight needed to decide, intelligently," whether or how to engage with the bankruptcy system at the bar date. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628 (1997); *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 261 n.8 (2d Cir. 2001) ("*Amchem* indicates that effective notice could likely not ever be given to exposure-only class members."), *aff'd in relevant part, rev'd in part*, 539 U.S. 111 (2003); *UNR*, 725 F.2d at 1119 (describing "possibly insurmountable" notice difficulties with future asbestos claimants).

That notice problem is why courts—including those Revlon itself cites for other propositions—have recognized the "due process implications of discharging

17

future claims of individuals whose injuries were not manifest at the time of the bankruptcy petition." *Grossman's*, 607 F.3d at 127. It is also why courts repeatedly have recognized § 524(g)'s role in protecting future claimants' due process rights. *See supra* pp. 7-9. A debtor "attempting to circumvent § 524(g)" does so at its own peril, inviting arguments that its plan "would not comply with due process." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824-25 (3d Cir. 2020).

When Revlon filed its bankruptcy petition, it already faced significant asbestos litigation. *See* Opening Br. 12-13. It estimated existing liability at up to $150 million, and it acknowledged the likelihood of future claims. *Id.* at 13, 16. Yet, even short of § 524(g)'s prerequisites, Revlon's bankruptcy proceedings provided no procedural safeguards for future claimants other than deficient publication notice. *See infra* Part II.B.

"In the resolution of future asbestos liability, under bankruptcy or otherwise, future claimants must be adequately represented throughout the process." *Combustion Eng'g*, 391 F.3d at 245; *see also Wright v. Owens Corning*, 679 F.3d 101, 108 n.7 (3d Cir. 2012) ("[I]n some bankruptcy proceedings a future claims representative is appointed . . . to address the broader issue of whether discharging unknown future claims comports with due process."). But no representative was appointed to represent future claimants' interests here. Opening Br. 15-16.

18

Revlon's plan made no provision for future claimants either, nor did it guarantee that current and future claimants obtain comparable recoveries. *Contra* Revlon Br. 28 (claiming its plan provides "the same treatment" for asbestos-related claims). Rather than an evergreen trust, Revlon created a small fund for current claimants that "shall automatically dissolve as soon as practicable" once it pays claims filed by the bar date. Opening Br. 15-16; *Revlon* ECF No. 1865 § 6.2(b) (JA1076).

Revlon contends that the fund can "pay adequate compensation *to those entitled to it*," Revlon Br. 41 (emphasis added), but that limitation begs the question. The trust's procedures contemplate "only a single distribution to all or substantially all holders of eligible Talc Claims." *Revlon* ECF No. 1865 § 2.2 (JA1093); Bankr. ECF No. 1311 at 7 (JA1582) (trustee anticipating "a second and final round of distributions" before fund "winds down"). The qualifying "Talc Claims" are only "Class 9(a) Talc Personal Injury Claims," *Revlon* ECF No. 1865 (JA1042)—that is, claimants who filed before the bar date. These limitations are in stark contrast to the plans of other asbestos debtors. *See*, *e.g.*, *W.R. Grace*, 729 F.3d at 316-17 (describing Grace trust, designed by future claims representative, which received "more than 3 billion dollars" in funding, including annual cash payments for two decades).

**2.** Revlon's principal response (at 30-31, 39) is that due process requires nothing more than publication notice for one day in several newspapers because

Claimants were "unknown creditors." Revlon likens this case (at 40) to garden-variety bankruptcies where claimants "have their claims discharged even where they never actually read . . . notice of the bankruptcy proceedings."

Revlon's authority for this position is inapt. It relies on cases in which debtors never faced asbestos litigation before bankruptcy, so they had no reason to take precautions for future asbestos claimants. Revlon repeatedly cites (at 23, 32, 33-35, 39) *In re Placid Oil Co.*, 753 F.3d 151 (5th Cir. 2014), and wrongly claims (at 33) that Placid "had reason to know of potential claims." "[N]o asbestos-related claims had ever been filed against Placid" before plan confirmation, and even afterward, it had never lost or settled an asbestos case. *Placid Oil*, 753 F.3d at 153; *see also In re Chateaugay Corp.*, 2009 WL 367490, at *5 (Bankr. S.D.N.Y. Jan. 14, 2009) (rejecting post-confirmation plaintiffs' due process argument because "[n]o asbestos claims had been brought against" debtor or its affiliates "prior to [their] chapter 11 cases"). Revlon also relies on non-asbestos cases, which did not involve the same problems, precedent, or statutory solutions associated with asbestos in bankruptcy. *See Dahlin v. Lyondell Chem. Co.*, 881 F.3d 599 (8th Cir. 2018) (benzene); *In re Motors Liquidation Co.*, 829 F.3d 135, 143 (2d Cir. 2016) (automotive defect); *In re Chemtura Corp.*, 2016 WL 11651714 (Bankr. S.D.N.Y. Nov. 23, 2016) (diacetyl and benzene).

Revlon also mischaracterizes (at 43) the asbestos bankruptcy decision, *In re Johns-Manville Corp.*, 2022 WL 4487889 (2d Cir. Sept. 28, 2022) (summary order), which concerned a woman who developed fatal mesothelioma through exposure to asbestos that her husband brought home from work at a Manville mill. *Id.* at *1. Unlike Claimants here, she had actual notice of the Manville bankruptcy, because her husband himself recovered from the Manville trust. *See Johns-Manville*, 552 B.R. at 243. She also received constitutionally adequate process: a future claims representative in the Manville bankruptcy and the "right to seek payment" from the Manville Trust. 2022 WL 4487889, at *3; *Johns-Manville*, 552 B.R. at 244. This Court acknowledged, however, that without proper due process, her claim could not have been discharged. 2022 WL 4487889, at *3 n.5. That rule applies to Claimants here, who benefited neither from representation nor a trust in the Revlon bankruptcy.

Revlon denies (at 33-34) that a debtor's awareness of future claims has any bearing on its due process obligations, but courts holding that unknown claimants were discharged due to bar date orders have refuted that very point. For instance, where plaintiffs brought asbestos claims against a former debtor that faced no asbestos liability in the 15 years before bankruptcy, appointment of a future claims representative was "not feasible" because it was "not known that there [was] a class of unknown future claimants." *Castleman v. Liquidating Tr.*, 2007 WL

21

2492792, at *10 (N.D.N.Y. Aug. 28, 2007). But if "a debtor knows it is facing significant tort liability resulting from asbestos exposure, it may be reasonable and appropriate to assume that future claims will arise out of that exposure and, therefore, appoint a future claims representative." *Id.*; *see also Chateaugay*, 2009 WL 367490, at *5-6 (agreeing with *Castleman* that future claims representatives may be appropriate when debtors have "awareness of a potential class of asbestos claimants"); *In re Waterman S.S. Corp.*, 141 B.R. 552, 557-58 (Bankr. S.D.N.Y. 1992) (faulting asbestos debtor that had "ample evidence" it faced "an amorphous class of unmanifested asbestosis claimants" but chose to "sandbag" them "through publication notice"), *aff'd in relevant part*, 157 B.R. 220 (S.D.N.Y. 1993).

Because Revlon was aware it faced future asbestos claimants, the cases it cites are inapposite. At minimum, protecting future claimants here meant appointing a future claims representative and providing resources for future claimants once their injuries manifest. Revlon's failure to take these measures means that Claimants' claims could not be discharged lawfully.

## B.    Revlon's Perfunctory Notice Did Not Satisfy Due Process

Even if due process for Claimants required only publication notice, Revlon's noticing program did not pass muster. In the class context, this Court has observed that "effective notice could likely not ever be given to exposure-only class members," *Stephenson*, 273 F.3d at 261 n.8, and the same is true for claimants

whose exposure has not yet resulted in disease. *See UNR*, 725 F.2d at 1119. Due process does not permit discharge of claims where the claimant "could not have anticipated" that its "inchoate" claims "would be enjoined." *In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010) (per curiam). Claimants' unmanifested asbestos injuries at least call for a careful approach to noticing, lest a debtor give the sort of "mere gesture" that violates due process. *Mullane*, 339 U.S. at 315; *cf. Covey v. Town of Somers*, 351 U.S. 141, 146 (1956) (requiring heightened notice for "a person known to be an incompetent who is without the protection of a guardian"). But even as Revlon gave conscientious notice to other claimants, it dealt with future asbestos claims through a generic notice drafted in legalese.

Notice complies with due process only if it is "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. Revlon's position is that it sufficed to inform future asbestos claimants about their rights to recover for unmanifested diseases as follows:

> Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be (including claims for damages that are unmatured), with certain limited exceptions as set

23

forth in the Bar Date Order, **MUST FILE A PROOF OF CLAIM**
. . . .

*Revlon* ECF No. 758 (JA218).  In fact, that sentence proceeds for another 159
words.  *Id.*  Yet as Revlon itself admits (at 36), overly "legalistic" language can
hamper notice by confusing readers.

The notice also refers opaquely to persons who hold claims "that arose . . .
prior to the Petition Date."  *Revlon* ECF No. 758 (JA218).  When a "claim" arises
is a legal question not obvious to untrained readers, whose intuition more likely is
that someone whose injury is not manifest has no lawsuit.  Worse:  courts disagree
on its answer.  *See Grossman's*, 607 F.3d at 123-25 (contrasting circuit courts'
"claim" tests).  Revlon accounted for these nuances only with the caveat "no
matter how remote or contingent."  Such indirect allusion to unmanifested injuries
is a "mere gesture."  *Mullane*, 339 U.S. at 315.  "[T]o hold that this notice satisfied
due process would rob the words of the Supreme Court of their meaning."  *Hecht
v. United Collection Bureau, Inc.*, 691 F.3d 218, 225 (2d Cir. 2012).

Revlon contends (at 40) that "claimants who knew that they used debtors'
products . . . would [not] fail to appreciate the significance of these notices."  Yet
Revlon's notice did not mention the "Jean Nate" brand that consumers might
associate with their past talc use and asbestos exposure.  Opening Br. 12.  Revlon
did not even own Jean Nate before 1987.  *Id.* at 47 & n.12.  The notice mentions
the brand name "Revlon," but only because Revlon, Inc. is a debtor.  It is doubtful

that claimants would connect a brand they used decades ago with the corporate name of its eventual acquiror.

Revlon's token notice pales in comparison to other asbestos debtors. One debtor "employed a noticing expert" and "published notice in seven consumer magazines, 226 local newspapers, three national newspapers, forty-three Spanish-language newspapers, eleven union publications, and five Internet outlets." *Energy Future Holdings*, 949 F.3d at 823. Another, "a small, family-owned business" producing costume makeup, published in five outlets, including industry-specific choices, and "posted a link to the bar date notice on its website and its Instagram page." *In re Ben Nye Co.*, 2025 WL 1693661, at *2, *13 (B.A.P. 9th Cir. June 17, 2025). Revlon's elaborate hair-relaxer notice campaign shows what it can do when it is "desirous of actually informing" claimants. *See* Opening Br. 14-15, 48; *Mullane*, 339 U.S. at 315.

Revlon's only response (at 43) is that those noticing campaigns "went well beyond the constitutional minimum." Yet Revlon cannot establish that its efforts met the minimum. *See Hecht*, 691 F.3d at 224-25 (holding that one-time *USA Today* notice did not). Revlon cites (at 34-35) a few non-binding cases in arguing that notice in three publications for one day clears the constitutional bar, but none involved a debtor with future asbestos liabilities. *See In re Ditech Holding Corp.*, 2025 WL 783639, at *1 (2d Cir. Mar. 12, 2025) (summary order) (mortgage

servicer); *Placid Oil*, 753 F.3d at 153 (debtor that faced zero "asbestos-related claims" before plan confirmation); *In re SVB Fin. Grp.*, 660 B.R. 60 (Bankr. S.D.N.Y. 2024) (bank's parent company); *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436, 439 (Bankr. S.D.N.Y. 1991) (apparel chain).

Even if these debtors got away with doing fewer published notices than Revlon, notice must be "reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314 (emphasis added). Claimants here were people with unmanifested asbestos injuries, not sophisticated creditors. *Cf. SVB Fin. Grp.*, 660 B.R. at 68 (former executive of entity acquired by debtor); *Brooks Fashion Stores*, 124 B.R. at 439 (state taxing authority). Yet Revlon used generic, legalistic language to describe their claims. Its notice ran in just three print publications for one day, with no effort to reach people who consume information through other channels. *Cf.* Opening Br. 14-15 (Revlon's social-media campaign for hair-relaxer claims); *Kane*, 843 F.2d at 641 (Manville's "comprehensive multi-media notice campaign"). Revlon had the resources to make its notice more visible and comprehensible to asbestos claimants. *Cf. Ben Nye*, 2025 WL 1693661, at *1, *14 (describing better notice given by "small, family-owned business"). Its failure to do so violated due process.

## C.    Revlon's Excusable-Neglect Option Would Not Satisfy Due Process

Revlon argues (at 40) that Claimants received due process because they "have access to post-confirmation process." To give meaningful post-confirmation process, Revlon's plan could have combined its discharge with a future-claims trust assured of future funding. *See Johns-Manville*, 2022 WL 4487889, at *3 (rejecting estate's due process arguments because claim was channeled to trust).[3] Revlon instead suggests (at 40-43) that Claimants try to file claims after the bar date by showing "excusable neglect" under Bankruptcy Rules 3003(c)(3) and 9006(b)(1), citing *Energy Future Holdings*, 949 F.3d 806. In Revlon's view, the chance to establish excusable neglect after plan confirmation cures any deficiencies in pre-confirmation process.

Revlon's argument does not work legally or practically. Revlon overreads *Energy Future Holdings* (at 42) to hold "that the combination of pre-confirmation notice and post-confirmation process satisfied due process." The Third Circuit was statutorily barred from reviewing the main question here: whether the debtor had to create a § 524(g) trust. 949 F.3d at 821. The court held simply that Rule 3003(c)(3)'s post-confirmation process was not "categorically incapable of

---

[3] Revlon's plan cannot be modified now to channel future claims to the trust. Modification is possible only before "substantial consummation" of a plan. 11 U.S.C. § 1127(b); *see In re Indu Craft Inc.*, 580 F. App'x 33, 34 (2d Cir. 2014) (summary order).

affording due process to latent claimants." *Id.* at 823. The court "d[id] not foreclose an as-applied challenge by any latent claimant who contends"—as Claimants do now—"that he did not, in fact, receive due process." *Id.* at 823 n.10.[4]

Moreover, when pre-confirmation procedures violate due process, the result is that the discharge does not bind the affected claimants. *See Motors Liquidation*, 829 F.3d at 166 (reversing discharge of claimants whose due process rights were violated by inadequate notice); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014) ("[A] claim cannot be discharged if the claimant is denied due process because of lack of adequate notice."). Thus, the right cure here is holding Revlon's discharge inapplicable to Claimants. Otherwise, courts could handle any deficiency in pre-confirmation process this way, transforming due process violations that debtors should have to cure into potential "neglect" that creditors have to dispel.

Nor is the excusable-neglect option realistically open to Claimants. This Circuit "take[s] a hard line" on excusable neglect. *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005). "[B]elated *new* claims will ordinarily be denied, even absent prejudice, unless the reason for the delay is compelling." *Id.* at 133-34.

---

[4] Revlon notes (at 42) *Energy Future Holdings*' "skepticism" about greater "predeprivation process." *See* 949 F.3d at 821 n.9 (suggesting more front-end process was "impossible" because "unmanifested claimants were unknown"). Future claims representatives are the answer to that concern. *See supra* pp. 18-22.

Historically, asbestos claimants in other circumstances have not met that bar. *See*, *e.g.*, *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000). In fact, after remand in *Energy Future Holdings*, asbestos claimants pursued the excusable-neglect option Revlon recommends, but they lost, even though the Rule 3003 post-confirmation process was "built into EFH's proposed plan of reorganization," unlike here. *In re Energy Future Holdings Corp.*, 619 B.R. 99, 109 (Bankr. D. Del. 2020); *Energy Future Holdings*, 949 F.3d at 814.

Rule 3003 is unlikely to yield any recovery either. As noted, Revlon's fund for talc claimants will dissolve after paying out current claims. *See supra* p. 19. Even as Revlon asserts (at 41) that Claimants can vindicate their due process rights "through an as-applied challenge in the post-confirmation process," its plan renders that procedure worthless. A claimant who managed to run Revlon's gauntlet likely would get nothing in the end.

Revlon's position also would create huge administrative burdens to sort through hundreds or thousands of excusable-neglect motions in any substantial bankruptcy that left uncertain many future claims. For instance, in *In re Tronox, Inc.*, 626 B.R. 688 (Bankr. S.D.N.Y. 2021), more than 4,000 excusable-neglect motions were filed after fraudulent-transfer litigation obtained significant new funding for the bankruptcy's claims trust. *Id.* at 699. The "sheer number" made it

"impossible" to resolve them all without delays that caused "frustration" for claimants. *Id.*

Further, a large volume of excusable-neglect motions tips the scales under the excusable-neglect standard. *See Energy Future Holdings*, 619 B.R. at 112 (rejecting asbestos claimants' excusable-neglect motions because otherwise "the floodgates of additional claims would open"). The volume of motions affects multiple factors under the standard, including "the danger of prejudice to the debtor," "delay and its potential impact on judicial proceedings," and "the reason for the [movant's] delay." *Enron*, 419 F.3d at 122 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). In *Tronox*, allowing many late-filed claims "would have a severe effect on the distribution fund," so the prejudice factor "weigh[ed] strongly against the movants." 626 B.R. at 726. And the "huge administrative expenses" of processing thousands of claims "inevitably would delay distributions." *Id.* at 726-27. The court thus required claimants to show "something more than a mere actual lack of knowledge" to justify their delay, which "very few" movants could do. *Id.* at 731.

Consequently, Revlon's reliance on Rule 3003 likely gives future claimants no relief and saddles bankruptcy courts with countless post-confirmation motions. This outcome is a poor substitute for § 524(g) trusts, the only Chapter 11

mechanism "specifically tailored to protect the due process rights of future claimants." *Combustion Eng'g*, 391 F.3d at 234 n.45.

## CONCLUSION

This Court should reverse the Bankruptcy Court's Enforcement Order.

Dated: September 26, 2025

Respectfully submitted,

/s/ *David C. Frederick*

Kevin C. Maclay
James P. Wehner
Todd E. Phillips
Lucas H. Self
Ariel K. Hayes
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Ave., N.W.
8th Floor
Washington, D.C. 20036
(202) 862-5000
kmaclay@capdale.com
jwehner@capdale.com
tphillips@capdale.com
lself@capdale.com
ahayes@capdale.com

David C. Frederick
Matthew N. Drecun
Jared M. Stehle
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
mdrecun@kellogghansen.com
jstehle@kellogghansen.com

*Counsel for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32 and Local Rule 32.1 because it contains 6,995 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

<u>/s/ *David C. Frederick*   </u>
David C. Frederick

September 26, 2025